**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| BLOCK FINANCIAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  **01-1007-CV-W-3** |
| | ) | |
| v. | ) | Judge Ortrie D. Smith |
| | ) | |
| LENDINGTREE, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF BLOCK FINANCIAL CORPORATION'S MARKMAN BRIEF OF THE INTERPRETATION OF DISPUTED CLAIM LANGUAGE IN THE CLAIMS OF U.S. PATENT NO. 6,014,645

This matter arose from a September 14, 2001, complaint for infringement of U.S. Patent No. 6,014,645 ('645 patent.).  Exhibit A.  The parties have determined that certain claim terms within the '645 patent are in need of construction by this Court.  As a result, Plaintiff Block Financial Corporation (hereinafter "Block") submits its brief on the proposed definitions of disputed terms.

# TABLE OF CONTENTS

I.    HISTORY AND REEXAMINATION OF THE '645 PATENT ............................ 1

    A.    Parts of a Patent ........................................................................... 1

    B.    U.S. Patent 6,014,645 ................................................................... 2

    C.    The Reexamination of U.S. Patent 6,014,645 ............................... 2

II.   LEGAL STANDARD FOR CLAIM CONSTRUCTION ........................................ 3

    A.    Claim Terms are Generally Afforded Ordinary Meaning............................. 3

    B.    Claim Terms are to be Construed as Understood by One of Ordinary
        Skill in the Art at the Time of the Invention.................................... 4

    C.    Where the Intrinsic Evidence Unambiguously Describes the Scope
        of the Invention, Reliance on Extrinsic Evidence is Improper ...................... 4

    D.    Extrinsic Evidence May Be Considered Only When the Intrinsic
        Evidence is Insufficient to Unambiguously Describe the Scope
        Of the Invention .......................................................................... 5

    E.    It is Improper to Limit Claims Scope to the Description of the Preferred
        Embodiment or the Drawings ...................................................... 6

    F.    Claims Are Not Restricted by the Patentee Absent a Showing of Manifest
        Expression of Restriction.............................................................. 6

    G.    Means-Plus-Function Elements are to be Construed Under section 112,
        Paragraph 6 of Title 35 ................................................................ 7

III.  CLAIM TERM DEFINITIONS FOR THE '645 PATENT ..................................... 7

    A.    Block's Proposed Definitions ....................................................... 7

    B.    "financial card" ........................................................................... 10

    C.    "financial card terms" ................................................................. 11

    D.    "ratings associated with said financial card term data" ............................. 11

    E.    "a rating to said applicant"............................................................ 12

    F.    "an existing schedule assigned to said financial card term data" ................. 12

Case 4:01-cv-01007-ODS    Document 59    Filed 06/08/07    Page 2 of 32

G.      "financial card offers".................................................................... 13

H.      "financial risk rating"..................................................................... 13

I.       "grade and score combination"...................................................... 14

J.       'matrix'........................................................................................... 14

K.      "associating ratings with said financial card terms"...................... 15

L.      "defining a rating for a financial card applicant" ......................... 16

M.     "ratings associated with said financial card terms" ...................... 16

N.      "offers"............................................................................................ 17

O.      "ratings assigned to said financial card term data"....................... 17

P.      "assigned ratings provided by participating financial institutions" .............. 18

Q.      "rating for said financial card applicant" ...................................... 19

R.      "ratings assigned to said financial card terms" ............................. 19

S.      "financial application data"............................................................ 20

T.      "associating a first rating with said financial card term data" ...................... 20

U.      "associating a second rating with said applicant"......................... 21

V.      "a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions" is a means-plus-function format subject to 35 U.S.C. § 112(6) ...................................................................... 22

W.    "a processing means . . . for associating a second rating with said applicant" is a means-plus-function format subject to 35 U.S.C. § 112(6) ...................................................................... 22

X.      "a processing means . . . for comparing said first rating and said second rating" is a means-plus-function format subject to 35 U.S.C. § 112(6)......... 23

Y.      "a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions" is a means-plus-function format subject to 35 U.S.C. § 112(6)..................... 24

IV.      CONCLUSION......................................................................................... 25

**LIST OF EXHIBITS**

A.      U.S. Patent No. 6,014,645

B.      U.S. Patent Office issued a Reexamination Certificate for U.S. Patent No. 6,014,645

C.      Office Action in *Ex Parte* Reexamination dated April 30, 2003

D.      U.S. Pat. No. 5,878,403

E.      Office Action in *Ex Parte* Reexamination dated July 16, 2004

# TABLE OF AUTHORITIES

**Statutes and Regulations**

35 U.S.C. §112 ................................................................................................ 1, 7

35 U.S.C. §113 .................................................................................................. 1

37 CFR 1.71(b) .................................................................................................. 1

37 CFR 1.72(b) .................................................................................................. 1

37 CFR 1.73 ...................................................................................................... 1

37 CFR 1.74 ...................................................................................................... 1

37 CFR 1.75(a) .................................................................................................. 1

37 CFR 1.75(b) .................................................................................................. 1

**Cases**

*ACTV Inc. v. Walt Disney Co.*, 346 F.3d 1082 (Fed. Cir. 2003) ......................... 7

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
132 F.3d 706 (Fed. Cir. 1997) ............................................................................. 5

*Boehringer Ingelheim Vetmedica, Inc v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003) ........................................................................... 4

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995) ...... 3

*Helifix Ltd. v. k-Lok, Ltd.*, 208 F.3d 1339 (Fed. Cir. 2000) ............................... 5

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed. Cir. 1993) ...................... 6

*Interactive Gift Express v. CompuServe Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ..... 5

*Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709 (Fed. Cir. 1998) ................... 5

*Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855 (Fed. Cir. 1998) ...... 6

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) .......................... 3

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
2004 U.S. App. LEXIS 11248 (Fed. Cir., June 8, 2004) ...................................... 4

iv

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384 (Fed. Cir. 2002) ................. 5

*Moba v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003) ............................... 4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ................................................. 3, 4

*Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901 (Fed. Cir. 2005) ................ 6

*Prima Tek II, L.L.C. v. Polypap, S.A.R.I.*, 412 F.3d 1248 (Fed. Cir. 2005) ..................... 6

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) ............................. 6

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) ......................... 4, 5

# I.   HISTORY AND REEXAMINATION OF THE '645 PATENT

## A.   Parts of a Patent

A patent must include a specification as prescribed by 35 U.S.C. §112, and, where necessary, a drawing as prescribed by 35 U.S.C. §113.

Patents contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.  (35 U.S.C. §112, first paragraph; see also 37 CFR 1.71(b))  The specification also includes an abstract to enable one to determine quickly, from a cursory inspection, the nature and gist of the technical disclosure.  (37 CFR 1.72(b))

A brief summary of the invention indicating its nature and substance may also be provided.  The summary should be commensurate with the invention as claimed and any object recited should be that of the invention as claimed.  (37 CFR 1.73)

The specification concludes with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.  (35 U.S.C. §112, second paragraph; *see also* 37 CFR 1.75(a))  More than one claim may be presented provided they differ substantially from each other and are not unduly multiplied.  (37 CFR 1.75(b))

If there are drawings, there shall be a brief description of the several views of the drawings and the detailed description of the invention shall refer to the different view by specifying numbers of the figures and to the different parts by use of reference letters or numerals.  (37 CFR 1.74)

1

**B.      U.S. Patent 6,014,645**

The '645 Patent, entitled Real-Time Financial Card Application System, discloses a system for presenting financial offers to potential customers.  Applicant selection criteria and financial offer data are provided by participating financial institutions to a computer system.  An applicant interested in applying for a new loan or financial card accesses the system via the Internet/World Wide Web.  The applicant provides personal and financial data that are then analyzed in conjunction with data from outside sources (such as credit bureaus) to determine a financial risk rating for the applicant.  The rating is compared with the selection criteria from the participating financial institutions to locate financial offers appropriate for the applicant.  The applicant then peruses the offers and chooses one that meets his or her personal needs.  The applicant's data is then forwarded for processing to the participating financial institution that made the selected offer.

As an option, the '645 patent discloses a "grading system" which uses application data, as well as other data, as input to determine which  offers may be presented to an applicant.  The grading system assigns a grade/score to the applicant by using the application data and other information such as credit bureau data to derive a letter grade and a numerical score (*e.g*., A-760).

**C.      The Reexamination of U.S. Patent 6,014,645**

The '645 patent issued on January 7, 2000 with 33 claims.  In a request for reexamination, LendingTree asked that the U.S. Patent Office reconsider patentability of all of the claims in the issued patent in view of prior art not previously considered by the Examiner.

The reexamination of the '645 Patent concluded in 2006 and on November 7, 2006, the U.S. Patent Office issued a Reexamination Certificate for the '645 Patent.  Exhibit B.  As a result

of the reexamination, the patentability of claims 11-22, 26-31, and 33 was confirmed; claims 1-10 were canceled; claims 23 and 32 were determined to be patentable as amended; claims 24 and 25 which depend from amended claims were determined to be patentable; and new claims 34 and 35 were determined to be patentable.

In this matter, Block is asserting claims 11 – 35 against LendingTree.

## II.     LEGAL STANDARD FOR CLAIM CONSTRUCTION

### A.     Claim Terms are Generally Afforded Ordinary Meaning

The claims of a patent set forth the metes and bounds of the patentee's intellectual "property." When there is a genuine dispute as to the meaning of claim language, the Supreme Court has explained that construction of the disputed claim is a task best left to judges. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir 1995) (citations omitted).

"[T]he claims of the patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). "Because the patentee is required to 'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312 [quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)].

The words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313. However, the Federal Circuit has also emphasized the importance of the

Case 4:01-cv-01007-ODS   Document 59   Filed 06/08/07   Page 9 of 32

specification. "[T]the specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 [*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)]. A court is authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties. *Phillips*, 415 F.3d at 1317.

**B.   Claim Terms are to be Construed as Understood by
One of Ordinary Skill in the Art at the Time of the Invention**

A court must ascertain the meaning of the claim terms to one of ordinary skill in the art at the time of invention. *Moba v. Diamond Automation, Inc.*, 325 F.3d 1306, 1315 (Fed. Cir. 2003).

**C.   Where the Intrinsic Evidence Unambiguously Describes the
Scope of the Invention, Reliance on Extrinsic Evidence is Improper**

"When construing a patent claim, a court should consider: (1) the language of the claim; (2) the specification contained in the patent; and (3) the prosecution history." *Id*. The Court should start with the "intrinsic evidence", i.e., the claims, the specification, and the file history of the patent. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). As the Federal Circuit has noted, "in most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 2004 U.S. App. LEXIS 11248, *8 (Fed. Cir., June 8, 2004). In addition to providing contemporaneous technological context for defining claim terms, the patent applicant may also define a claim term in the specification "in a manner inconsistent with its ordinary meaning." *Id*. [citing *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1347 (Fed. Cir. 2003)]. Therefore, the primary aids to

4

supply the context for interpretation of disputed claim terms are in the intrinsic record. *Id*. at \*9 [citing *Vitronics*, 90 F.3d at 1582 (Fed. Cir. 1996)].

Additionally, during prosecution, a patent applicant's consistent usage of a term in the patent may limit or otherwise provide the definition of that term. *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

If the meaning of the claim limitations is apparent from the totality of the intrinsic evidence, then the claim has been construed. *Interactive Gift Express v. CompuServe Inc.*, 256 F.3d 1323 (Fed. Cir. 2001). "In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Vitronics*, 90 F.3d at 1583. If, however, a claim limitation is still not clear, we may look to extrinsic evidence to help resolve the lack of clarity.

### D. Extrinsic Evidence May Be Considered Only When the Intrinsic Evidence is Insufficient to Unambiguously Describe the Scope of the Invention

Relying on extrinsic evidence to construe a claim is "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence." *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997); *see also Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998); *Vitronics*, 90 F.3d at 1583-84. "Such instances will rarely, if ever, occur." *Vitronics*, 90 F.3d at 1585. In the present case, the intrinsic evidence consisting of the '645 patent, and portions of the reexamination file history unambiguously supports the claim construction set forth in this claim construction brief.

**E.    It is Improper to Limit Claim Scope to the Description of the Preferred Embodiment or the Drawings**

"[I]t is well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment," *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865, 9 U.S.P.Q.2d (BNA) 1289, 1299 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations."). Just as it is not proper to limit claims scope based upon the description provided in the preferred embodiment, it is likewise improper to limit claim scope to drawings in a patent. *Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005).

**F.    Claims Are Not Restricted by the Patentee Absent a Showing of Manifest Expression of Restriction**

The Federal Circuit Court of Appeals has consistently held that "[t]he claims of the patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Prima Tek II, L.L.C. v. Polypap, S.A.R.I.*, 412 F.3d 1284, 1289 (Fed. Cir. 2005) (citations omitted).

Furthermore, "[i]t is improper for a court to add 'extraneous' limitations to a claim, that is, limitations added wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim." *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 950, 28 U.S.P.Q.2D (BNA) 1936, 1938 (Fed. Cir. 1993); *see also Specialty Composites v. Cabot Corp.*, 845 F.2d 981, 987, 6 U.S.P.Q.2d (BNA) 1601, 1605 (Fed. Cir. 1988) ("Where a specification does not require a limitation, that limitation should not be read from the specification into the claims."). In this matter, there is no evidence that the patentee expressly limited or otherwise restricted the definitions of any claim terms.

6

**G.     Means-Plus-Function Elements are to be Construed Under Section 112, paragraph 6 of Title 35.**

Section 112, paragraph 6 of Title 35 provides that

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, para. 6 (1994) (hereinafter "§112, P6").

If §112, P6 applies, such a claim limitation is customarily referred to as a "'means-plus-function' claim limitation."   In construing a means-plus-function claim limitation, the recited function within that limitation must first be identified.  *ACTV Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1087 (Fed. Cir. 2003).  "Then, the written description must be examined to determine the structure that corresponds to and performs that function." Id."

In this matter with reference to the means-plus-function elements in claim 28, the parties have stipulated to the definition of the structures.  The parties dispute, however, the proper definitions of the functions.

## III.     CLAIM TERM DEFINITIONS FOR THE '645 PATENT

**A.     Block's Proposed Definitions**

Block's proposed definitions of the disputed claim terms are listed below.  Based on communications with counsel for LendingTree, Block understands that the remaining terms of the patent claims at issue do not require construction by the Court.  In the event that other claim

terms become disputed, Block reserves the right to request the opportunity to supplement this

brief.

| Claim Term | Proper Definition |
| --- | --- |
| "financial card" | a medium issued to a holder that provides access to financial benefits and resources |
| "financial card terms" | terms that relate to a financial card offer, e.g. type of offer, interest rate, fees, amounts, etc…. |
| "ratings associated with said financial card term data" | selection criteria associated with a financial card |
| "a rating to said applicant" | a value or measure assigned to an applicant |
| "an existing schedule assigned to said financial card term data" | an association of selection criteria with financial card term data |
| "financial card offers" | an invitation to accept a financial card |
| "financial risk rating" | a value or measure of a consumer's ability to fulfill obligations in the future |
| "grade and score combination" | a ranking and a tally used to search financial card term data for financial institutions |
| "matrix" | an association of data |
| "associating ratings with said financial card terms" | relating selection criteria to the terms of a financial card offer |
| "defining a rating for a financial card applicant" | associating a value or measure with an applicant |
| "ratings associated with said financial card terms" | a value or measure assigned to the terms of a financial card offer |
| "offers" | solicitations |
| "ratings assigned to said financial card term data" | a value or measure assigned to the term data of a financial card offer |
| "assigned ratings provided by participating financial institutions" | selection criteria of the various participating institutions |
| "rating for said financial card applicant" | a value or measure assigned to an applicant |
| "ratings assigned to said financial card terms" | selection criteria assigned to the terms of a financial card offer |
| "financial application data" | personal and financial information for an individual applicant such as name, telephone |

8

| Claim Term | Proper Definition |
|---|---|
|  | number, address, financial information, and social security number |
| "associating a first rating with said financial card term data" | relating selection criteria to a financial card offer |
| "associating a second rating with said applicant" | assigning a value or measure to an applicant |
| "a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions" is a means-plus-function format subject to 35 U.S.C. § 112(6) | Function:<br>performing the operation of relating selection criteria to the financial card term data<br><br>Stipulated Structure:<br>a network of communicating web servers, card services servers, and database servers |
| "a processing means . . . for associating a second rating with said applicant" is a means-plus-function format subject to 35 U.S.C. § 112(6) | Function:<br>performing the operation of relating a value or measure to the applicant<br><br>Stipulated Structure:<br>a network of communicating web servers, card services servers, and database servers |
| "a processing means . . . for comparing said first rating and said second rating" is a means-plus-function format subject to 35 U.S.C. § 112(6) | Function:<br>performing the operation of comparing the selection criteria against value or measure associated with the applicant<br><br>Stipulated Structure:<br>a network of communicating web servers, card services servers, and database servers |
| "a processing means . . . for presenting to said applicant via said client computer financial card term data for which said second rating is at least equal to said first rating" is a means-plus-function format subject to 35 U.S.C. § 112(6) | Function:<br>performing the operation of communicating financial card offers to applicants that meet the given selection criteria<br><br>Stipulated Structure:<br>a network of communicating web servers, card services servers, and database servers |

Case 4:01-cv-01007-ODS   Document 59   Filed 06/08/07   Page 15 of 32

**B.     "financial card"**

Block asserts that the proper definition for "financial card," as that term is used within the context of the claims of the '645 patent, is any "medium issued to a holder that provides access to financial benefits and resources." Although the term "financial card" certainly applies to plastic financial cards, such as credit and debit cards, it also encompasses any other medium issued to a holder that provides access to financial benefits and resources. Block's understanding is clearly underscored by the recent reexamination proceedings.

The definition proffered by Block for the term "financial card" closely tracks the Examiner's understanding which was evident during the recent reexamination. The Examiner initially rejected all of Block's claims based on U.S. Pat. No. 5,878,403 by DeFranscisco, a patent that did not involve any tangible plastic cards whatsoever. *See* Paragraph 2, Office Action in *Ex Parte* Reexamination dated April 30, 2003, attached as Exhibit C. Instead, the DeFranscisco reference involved credit applications, for example, automotive loan applications. *See*, Exhibit D, U.S. Pat. No. 5,878,403.

The reference was ultimately overcome on other grounds. However, its presence in the prosecution clearly indicates that the Examiner understood that Block's claims did in fact cover loan applications that did not have to involve a plastic card. For example, in paragraph 6 of the Office Action mailed July 16, 2004, the Examiner specifically equates "financial card" with the term "loan" in the phrase "financial card term data." Exhibit E.

The claim term itself supports Block's proffered definition. The patent's use of the broad term "financial card" is itself strong evidence that the patent is referring to any medium that could be issued to a holder that would provide access to financial benefits or resources. Block could easily have limited the claims to transactions involving only tangible plastic cards in order

to overcome rejections proffered by the Examiner. However, Block persisted in claiming and defending the broad, more inclusive term "financial card." Ultimately, the '645 patent emerged from re-examination without disturbing the patentee's contentions.

C.     **"financial card terms"**

Block asserts that the proper definition for "financial card terms," as that term is used within the context of the claims of the '645 Patent, is "terms that relate to a financial card offer, e.g. type of offer, interest rate, fees, amounts, etc…" The specification is explicit that these terms include both material terms related to the card offer, the so called "Federal Box" terms, but also includes "other details of each of the offers." *See* Col. 4, lines 65-67.

D.     **"ratings associated with said financial card term data"**

Block asserts that the proper definition for "ratings associated with said financial card term data," as that term is used within the context of the claims of the '645 patent, is "selection criteria associated with a financial card." The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria. *See* Col. 2, lines 10-15. The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be. *See* Col. 4, lines 54-64. The term "ratings associated with said financial card term data," then, are the selection criteria that must be met in order to receive a given financial card offer. *See*, e.g., table at Col. 4, line 30. These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating. *See*, Col. 4, line 53-Col. 5, line 5.

The specification provides one possible "grading system" process for associating applicant ratings with financial card term data. *See* Col. 4, lines 17-52. However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this term definition. *See* Col. 4, lines 53-64. Therefore, the "ratings associated with the financial card term data" are the selection criteria used to determine which applicant is to receive a particular offer or offers.

### E. "a rating to said applicant"

Block asserts that the proper definition for "a rating to said applicant," as that term is used within the context of the claims of the '645 patent, is "a value or measure assigned to an applicant." The rating may be a "financial risk rating." *See* Claim 14; Col. 4, lines 53-54. More specifically, the rating may be a "grade/score." *See* Claim 15; Col. 4, lines 20-23. More generally, the rating may also be any value or measure assigned to the applicant that is useful for determining whether a particular applicant should be extended a particular offer or offers. *See* Col. 4, lines 54-57.

### F. "an existing schedule assigned to said financial card term data"

Block asserts that the proper definition for "an existing schedule assigned to said financial card term data," as that term is used within the context of the claims of the '645 patent, is "an association of selection criteria with financial card term data." The specification provides an illustrative example of such a selection schedule. *See* Col. 4, table beginning after line 30. Therefore, "an existing schedule assigned to said financial card term data" is a selection matrix for determining whether a particular applicant with a given rating is to be extended an offer, and if so, what the terms of the offer should be. *See* Col. 4, lines 54-64.

G.     **"financial card offers"**

Block asserts that the proper definition for "financial card offers," as that term is used within the context of the claims of the '645 patent, is "an invitation to accept a financial card." Block's proffered definition is consistent with the language and context of the specification. Financial card offers are presented to applicants meeting the predetermined selection criteria of a given financial institution. *See* Col. 4, lines 57-64.  The offers are invitations to accept a given financial card.  *See* Col. 5, lines 1-5.

The financial card offers need not necessarily be formal contractual offers.  This understanding is consistent with the object of the invention, that is, to replace direct mail as a means to solicit new customers.  Therefore, in order to form a binding contract, further action, *i.e*., acceptance by the financial institution, is often required.  *See, e.g,.* Col. 5, lines 3-5 ["The financial institution *then processes the application* and makes arrangement to send the financial card to the applicant." (emphasis added)]  Of course, the term would also clearly encompass situations involving formal contractual offers.

H.     **"financial risk rating"**

Block asserts that the proper definition for "financial risk rating," as that term is used within the context of the claims of the '645 patent, is "a value or measure of a consumer's ability to fulfill obligations in the future."  As the specification recites, the financial risk rating takes various criteria and factors into account in assessing a particular applicant's creditworthiness. *See*, Col. 4, lines 53-64.  Normally, applicants with low risk ratings will be more likely to receive offers with more desirable terms. *Id*.

13

## I.   "grade and score combination"

Block asserts that the proper definition for "grade and score combination," as that term is used within the context of the claims of the '645 patent, is "a ranking and a tally used to search financial card term data for financial institutions." This ranking and tally could, for example, be a numerical score or letter grade. The grade and score combination can be used to search financial card term data for financial institutions. Block's proffered definition follows closely the explicit language used in the specification. *See* Col. 4, lines 20-26. This term "grade/score" is first used to describe a particular embodiment using a grading system. *See,* Col. 4, lines 17-53. The grade and score combination provides a potential means by which an applicant's creditworthiness or financial risk rating can be expressed semi-quantitatively.

## J.   "matrix"

Block asserts that the proper definition for "matrix," as that term is used within the context of the claims of the '645 patent, is "an association of data." The specification makes clear that the function of a selection matrix, as discussed in the patent, is to organize selection criteria. *See* Col. 4, lines 27-29. As illustrated in the table in Column 4 of the '645 patent, a matrix may be useful for associating specific offers with threshold minimum values of creditworthiness. *Id.* The applicant's rating, which may be expressed as a grade/score (as shown), or any other expression of creditworthiness (s*ee* Col. 4, lines 53-54), can then be fit on selection matrix to determine whether the applicant will receive an offer, and if so what offer he or she will receive. *See* Col. 4, lines 29-52. Accordingly, a matrix, as that term is used in the '645 patent, should be defined as "an association of data."

14

**K.** **"associating ratings with said financial card terms"**

Block asserts that the proper definition for "associating ratings with said financial card terms," as that term is used within the context of the claims of the '645 patent, is "relating selection criteria to the terms of a financial card offer."  The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria.  *See* Col. 2, lines 10-15.  The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be.  *See* Col. 4, lines 54-64.  The term "associating ratings with said financial card terms," then, are the selection criteria that must be met in order to receive a given financial card offer.  These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating.  *See* Col. 4, line 53, Col. 5, line 5.

As an example, the specification describes a "grading system" process for associating applicant ratings with financial card term data.  *See* Col. 4, lines 17-52.  However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this terms definition. *See* Col. 4, lines 53-64.  Therefore, the term "associating ratings with said financial card terms" means relating selection criteria to the terms of a financial card offer.

**L.    "defining a rating for a financial card applicant"**

Block asserts that the proper definition for "defining a rating for a financial card applicant," as that term is used within the context of the claims of the '645 patent, is "associating a value or measure with an applicant." The rating may be a "financial risk rating." *See* Claim 14; Col. 4, lines 53-54.  More specifically, the rating may be a "grade/score."  *See* Claim 15; Col. 4, lines 20-23.  More generally, the rating may also be any value or measure assigned to the applicant that is useful for determining whether a particular applicant should be extended a particular offer or offers. *See* Col. 4, lines 54-57.

**M.    "ratings associated with said financial card terms"**

Block asserts that the proper definition for "ratings associated with said financial card terms" as that term is used within the context of the claims of the '645 patent, is "a value or measure assigned to the terms of a financial card offer."  The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria.  *See* Col. 2, lines 10-15.  The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be.  *See* Col. 4, lines 54-64.  The term "ratings associated with said financial card terms" then, is the value or measurement that must be met in order to receive a given financial card offer. *See* Col. 4, lines 27-30.  These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating.  *See* Col. 4, line 53, Col. 5, line 5.

16

As an example, the specification describes a "grading system" process for associating ratings with financial card term data. *See* Col. 4, lines 17-52. However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this terms definition. *See* Col. 4, lines 53-64. Therefore, "ratings associated with the financial card terms" are the selection criteria used to determine which applicant is to receive a particular offer or offers.

N.    **"offers"**

Block asserts that the proper definition for "offers," as that term is used within the context of the claims of the '645 patent, is "solicitations." The object of the disclosed system of the '645 patent is to match financial institutions and their offerings with new customers. *See* Col. 2, lines 8-11. Offers, in the context of this patent, are the solicitations that are communicated to the successful applicant. *See* Col. 4, lines 65, Col. 5, lines 3.

As solicitations, these offers need not necessarily be formal contractual offers. This understanding is consistent with the object of the invention, that is, to replace direct mail as a means to solicit new customers. A person of ordinary skill in the art would understand that, most commonly, as with direct mail solicitations, offers are merely invitations to apply, rather than binding commitments. Further, processing would typically occur before a binding contract is achieved.

O.    **"ratings assigned to said financial card term data"**

Block asserts that the proper definition for "ratings assigned to said financial card term data," as that term is used within the context of the claims of the '645 patent, is "a value or measure assigned to the term data of a financial card offer." The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria. *See* Col. 2, lines 10-15. The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be. *See* Col. 4, lines 54-64. The term "ratings assigned to said financial card term data," then, are the selection criteria that must be met in order to receive a given financial card offer. These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating. *See* Col. 4, line 53-Col. 5, line 5.

As an example, the specification describes a "grading system" process for associating applicant ratings with financial card term data. *See* Col. 4, lines 17-52. However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this terms definition. *See* Col. 4., lines 53-64. Therefore, the "ratings assigned to said financial card term data" are the selection criteria used to determine which applicant is to receive a particular offer or offers.

### P. "assigned ratings provided by participating financial institutions"

Block asserts that the proper definition for "assigned ratings provided by participating financial institutions," as that term is used within the context of the claims of the '645 Patent, is "selection criteria of the various participating institutions." The specification is clear that each participating financial institution may provide its own unique selection criteria. *See* Col. 5, lines 16-18. That is, each financial institution can decide which financial terms, if any, should apply to a given applicant's qualifications. *See* Col. 5, lines 22-24. Therefore, these assigned ratings are simply the selection criteria, or threshold values, that the participating institutions provide.

### Q.    "rating for said financial card applicant"

Block asserts that the proper definition for "rating for said financial card applicant," as that term is used within the context of the claims of the '645 patent, is "a value or measure assigned to an applicant."  The rating may be a "financial risk rating." *See* Claim 14; Col. 4, lines 53-54.  More specifically, the rating may be a "grade/score."  *See* Claim 15; Col. 4, lines 20-23. More generally, the rating may also be any value or measure assigned to the applicant that is useful for determining whether a particular applicant should be extended a particular offer or offers. *See* Col. 4, lines 54-57.

### R.    "ratings assigned to said financial card terms"

Block asserts that the proper definition for "ratings assigned to said financial card terms," as that term is used within the context of the claims of the '645 patent, is "selection criteria assigned to the terms of a financial card offer."  The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria.  *See* Col. 2, lines 10-15.  The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be.  *See* Col. 4, lines 54-64.  The "ratings assigned to said financial card terms," then, are the selection criteria that must be met in order to receive a given financial card offer. *See* Col. 5, lines 16-21.  These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating.  *See* Col. 4, line 53, Col. 5, line 5.

As an example, the specification describes a "grading system" process for associating applicant ratings with financial card term data.  *See* Col. 4, lines 17-52.  However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this term definition. *See* Col. 4, lines 53-64.  Therefore, the "ratings assigned with to said financial card terms" are the selection criteria used to determine which applicant is to receive a particular offer or offers.

### S. "financial application data"

Block asserts that the proper definition for "financial application data," as that term is used within the context of the claims of the '645 patent, is "personal and financial information for an individual applicant, such as name, telephone number, address, financial information, and social security number."  Given the objective of the '645 patent, Block submits that the intrinsic record irrefutably demonstrates that the term financial application data would encompass any information that could be pertinent to the processing of a financial card request.  *See* Col. 2, lines 14-17.  This information would include personal information such as name and address.  It would also encompass preference information such as whether the individual would prefer one incentive program over another (*e.g.*, airline miles or gas discounts), or whether the individual values a low APR above a no annual fee card.  Of course, the application data would also cover personal financial data about the applicant.

### T. "associating a first rating with said financial card term data"

Block asserts that the proper definition for "associating a first rating with said financial card term data," as that term is used within the context of the claims of the '645 Patent, is "relating selection criteria to a financial card offer."  The adjective "first" used in this claim element denotes the fact that there are two ratings provided in this process, the first rating, or the

selection criteria associated with the terms of a particular institution's financial card offer, and the second rating, the rating associated with a given applicant. The proffered definition is consistent with the specification and the prosecution history.

The specification makes clear that the patentee's system is designed to allow financial institutions to target offers to applicants who meet specific selection criteria. *See* Col. 2, lines 10-15. The system may use various criteria and factors to determine whether a particular applicant should be extended an offer, and if so, what the terms of the offer should be. *See* Col. 4, lines 54-64. The "ratings assigned to said financial card terms," then, are the selection criteria that must be met in order to receive a given financial card offer. *See* Col. 5, lines 16-21. These values demarcate the threshold minimums for determining whether any offers, and if so which offers, are to be communicated to a given applicant possessing a given financial risk rating. *See* Col. 4, line 53-Col. 5, line 5.

As an example, the specification describes a "grading system" process for associating applicant ratings with financial card term data. *See* Col. 4, lines 17-52. However, any methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this term definition. *See* Col. 4, lines 53-64. Therefore, the "ratings assigned with to said financial card terms" are the selection criteria used to determine which applicant is to receive a particular offer or offers.

### U. "associating a second rating with said applicant"

Block asserts that the proper definition for "associating a second rating with said applicant," as that term is used within the context of the claims of the '645 patent, is "assigning a value or measure to an applicant." In this case, the adjective "second," as used in this claim element, denotes the fact that there are two ratings provided in the process, the first rating, or the selection

criteria associated with the terms of a particular institution's financial card offer, and the second rating, the rating associated with a given applicant. The rating may be a "financial risk rating." *See* Claim 14; *See* Col. 4, lines 53-54. More specifically, the rating may be a "grade/score." *See* Claim 15; Col. 4, lines 20-23. More generally, the rating may also be any value or measure assigned to the applicant that is useful for determining whether a particular applicant should be extended a particular offer or offers. *See* Col. 4, lines 54-57.

> ### V.   "a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions" is a means-plus-function format subject to 35 U.S.C. § 112(6).

The '645 patent teaches that financial institutions may upload selection criteria and financial card term data to the databases as needed. *See* Col. 3, line 67-Col. 4, line 2. The servers relate the selection criteria provided by the bank with the financial card term data. *See* Col. 3, line 27-31; Col. 5, lines 16-22. Accordingly, Block submits that the intended function of the phrase "a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions" is "performing the operation of relating selection criteria to the financial card term data."

Regarding the structure, both parties stipulate that the structure provided in the specification for this term is "a network of communicating web servers, card services servers, and database servers."

> ### W.   "a processing means . . . for associating a second rating with said applicant" is a means-plus-function format subject to 35 U.S.C. § 112(6)

Block submits that the intended function of the phrase "a processing means . . . for associating a second rating with said applicant" is "performing the operation of relating a value or measure to the applicant." The '645 patent teaches that a "grading system" process may be employed which uses the application data, as well as other data, such as credit bureau data, as

input to determine which financial card offers may be presented to the applicant. *See* Col. 4, lines 17-20. The specification provides a "grade/score" example to illustrate how such a grading system might work. *See* Col. 4, lines 20-52. Accordingly, the intended function of this processing means is to perform the operation of relating a value or measure to the applicant.

Regarding the structure, both parties stipulate that the structure provided in the specification for this term is "a network of communicating web servers, card services servers, and database servers."

### X. "a processing means . . . for comparing said first rating and said second rating" is a means-plus-function format subject to 35 U.S.C. § 112(6)

Block submits that the intended function of the phrase "a processing means . . . for comparing said first rating and said second rating" is "performing the operation of comparing the selection criteria against value or measure associated with the applicant." The '645 patent teaches that the servers may obtain information from the user and process it with the financial institution data stored on the database servers and credit bureau information stored remotely to determine which card offers are appropriate for the user. *See* Col. 3, lines 36-40. Accordingly, the intended function of the processing means as it relates to this clause is comparing the applicant's rating against the selection criteria.

Regarding the structure, both parties stipulate that the structure provided in the specification for this term is "a network of communicating web servers, card services servers, and database servers."

**Y.** **"a processing means . . . for presenting to said applicant via said client computer financial card term data for which said second rating is at least equal to said first rating" is a means-plus-function format subject to 35 U.S.C. § 112(6)**

Block submits that the intended function of the phrase "a processing means . . . for presenting to said applicant via said client computer financial card term data for which said second rating is at least equal to said first rating" is "performing the operation of communicating financial card offers to applicants that meet the given selection criteria." The '645 patent teaches that the servers "also may facilitate the user's review and acceptance of any offers." *See* Col. 3, lines 40-42. Furthermore, the specification provides that offers may be made to applicants based on a "grading system" process. *See* Col. 4, lines 17-20. The specification contemplates that a financial institution's selection criteria could be organized in a matrix that associates a particular card offer with some minimum applicant rating. *See* Col. 4, lines 27-48. Then, offers appropriate to the given applicant rating are subsequently communicated to the applicant. *See* Col. 4, lines 48-50. Therefore, the intended function of this processing means is to communicate financial card offers to applicants that meet the given selection criteria.

Regarding the structure, both parties stipulate that the structure provided in the specification for this term is "a network of communicating web servers, card services servers, and database servers."

24

## IV.    CONCLUSION

For the foregoing reasons, Block respectfully requests the Court adopt the definitions of

the disputed terms contained herein.

Respectfully submitted,


  /s/ F. Michael Speed, Jr.
Jeffrey S. Standley (Admitted *Pro Hac Vice)*
F. Michael Speed, Jr. (Admitted *Pro Hac Vice)*
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH  43017-5319
Tel.:  614-792-5555
Fax:  614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com

Mark W. Brennan (Missouri Bar. No. 39117)
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, MO  64015-2100
Tel.:  816-374-3200
Fax:  816-374-3300
mbrennan@bryancave.com

Attorneys for Plaintiff

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 8, 2007, a true and accurate copy of the

foregoing was e-filed with the Court using the CM/ECF system which sent notification of such

filing to the following:

Holmes J. Hawkins, III
Jim Wasserman
James J. Mayberry
Tomesha L. Faxio
KING & SPALDING
1180 Peachtree Street, NE
Atlanta, GA  30309
hhawkins@kslaw.com
jwasserman@kslaw.com
jmayberry@kslaw.com
tbaxio@sklaw.com

Clinton G. Newton
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO  64108
cnewton@shb.com

 /s/ F. Michael Speed, Jr.
F. Michael Speed, Jr.