# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

BLOCK FINANCIAL CORPORATION, )
)
      Plaintiff, )    Case No. **01-1007-CV-W-3**
)
      v. )    Judge Ortrie D. Smith
)
LENDINGTREE, INC., )
)
      Defendant. )
)

## PLAINTIFF BLOCK FINANCIAL CORPORATION'S

## REPLY BRIEF ON CLAIM CONSTRUCTION

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................................................1

       A.     THE REEXAMINATION PROCEEDING SHOWS THAT THE TERM
              "FINANCIAL CARD" IS BROADER THAN A "TANGIBLE PIECE OF
              PLASTIC"........................................................................................................1

              1. LendingTree should explain its change in position ..................................2

              2. The Examiner's Willingness to Open Reexamination ............................3

              3. Common Experience Supports Block's Definition..................................4

       B.     LENDINGTREE'S CONSTRUCTION FOR "RATINGS' IGNORES
              THE WELL ESTABLISHED DOCTRINE OF 'CLAIM
              DIFFERENTIATION" ................................................................................5

              1. Examiner's Statements Regarding "Ratings" ..........................................9

       C.     LENDINGTREE IS IMPROPERLY ATTEMPTING TO LIMIT THE
              SCOPE OF CERTAIN CLAIM TERMS TO THE DESCRIPTION OF A
              PREFERRED EMBODIMENT..................................................................11

       D.     LENDINGTREE IS IMPROPERLY RESTRICTING THE CLAIM
              TERMS OF THE '645 PATENT WITHOUT A SHOWING OF A
              MANIFEST EXPRESSION OF RESTRICTION .........................................12

       E.     ADDITIONAL TERMS IN DEPENDENT CLAIMS .................................15

              1. Means-Function Claim ....................................................................17

II.    CONCLUSION...................................................................................................... 17

# TABLE OF AUTHORITIES

**Statutes and Regulations**

35 U.S.C. §102(e) ...............................................................................................3

35 U.S.C. §102................................................................................................... 3

35 U.S.C. § 112...........................................................................................4,5,7,12

37 CFR 1.75 .........................................................................................................5

**Cases**

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573 (Fed. Cir. 1996)..................9

*American Permahedge, Inc. v. Barcana, Inc*., 105 F.3d 1441 (Fed. Cir. 1997)...............11

*Autogiro Co. of Am. V. United States,* 384 F.2d 391 (Ct. Cl. 1967)...................................5

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006). .........5

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F.3d 1364 (Fed. Cir. 2001)...............10

*In re Howarth*, 654 F.2d 103 (Ct. Cl. 1981). ..................................................................17

*Inverness Med. Switz. GmbH v. Warner Lambert Co.,* 309 F.3d 1373 (Fed. Cir. 2002).....9

*Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968 (Fed. Cir. 1999)...................5

*Kraft Foods, Inc. v. Int'l Trading Co*., 203 F.3d 1362 (Fed. Cir. 2000)...........................11

*Laitram Corp. v. Cambridge Wire Cloth Co*., 863 F.2d 855 (Fed. Cir. 1988) ...................7

*Laitram Corp. v. Rexnord, Inc.,* 939 F.2d 1533 (Fed. Cir. 1991) .......................................5

*Liebel-Flarsheim Co. v. Medrad, Inc*., 358 F.3d 898 (Fed. Cir. 2004)...............................5

*MEHL/Biophile Int'l Corp. v. Milgraum,* 192 F.3d 1362 (Fed. Cir. 1999) ........................3

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.,* 403 F.3d 1364 (Fed. Cir. 2005) ............5

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) ..............................5, 9, 10, 12, 13

*Spectra-Physics, Inc. v. Coherent, Inc*., 827 F.2d 1524 (Fed. Cir. 1987).........................17

Case 4:01-cv-01007-ODS   Document 60   Filed 06/29/07   Page 3 of 22

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)............................12

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996).............................11

# I.     INTRODUCTION

Defendant LendingTree, Inc. (hereinafter "LendingTree") improperly applies and ignores Federal Circuit precedent to arrive at its proposed constructions.  LendingTree asks this Court to disregard the plain meaning of the claim terms in an effort to inject artificial limitations into those terms.  To reach its constricted view of the claim terms of U.S. Patent No. 6,014,645 (hereinafter "'645 Patent"), LendingTree repeatedly abandons the intrinsic record in favor of a patchwork mosaic of extrinsic materials glued together with inference and innuendo. Accordingly, Plaintiff Block Financial Corporation (hereinafter "Block") submits this brief to reaffirm the proposed definitions offered in the Memorandum filed on June 8, 2007.

In its proposed construction of the claims, LendingTree fails to consider an important element of the intrinsic record—the reexamination proceeding.  When construing the meaning of the term "financial card," LendingTree's analysis disregards important dependent claims in the '645 Patent.  Furthermore, LendingTree improperly limits the claim terms of the '645 Patent to the description of the preferred embodiment.  Finally, LendingTree improperly restricts the claim terms of the '645 Patent without reason.

It is undisputed that the '645 Patent claims have been twice reviewed by the U.S. Patent Office.  The patent successfully weathered this scrutiny in both cases and the twice examined claims stand on their own.  Accordingly, Block respectfully requests that the Court adopt the claim term definitions set forth in its Memorandum filed on June 8, 2007.

## A.     THE REEXAMINATION PROCEEDING SHOWS THAT THE TERM "FINANCIAL CARD" IS BROADER THAN A "TANGIBLE PIECE OF PLASTIC".

| Claim Term | Proper Definition |
|---|---|
| "financial card" | a medium issued to a holder that provides access to financial benefits and resources |

1

Throughout prosecution of the '645 Patent, Block steadfastly maintained that the term financial card is broader than a tangible piece of plastic. *See, e.g.*, Docket No. 58-10[1], p. 5 (Applicant states "Although Applicant's invention may be used to apply for a credit card, it is also directed to financial card offers."). Although Block could have easily eliminated certain prior art by narrowing the term, Block persisted in defending the broader meaning of the term.

The reexamination proceeding demonstrates that the term "financial card" covers all mediums issued to a holder to access loan funds. In that proceeding, Block defended its claims against prior art involving both tangible and intangible mediums. *See* Docket No. 59-6, p. 5 (the Examiner specifically equates "financial card" with the term "loan" in the phrase "financial card term data."). As the Examiner opined in the earliest office action, the term financial card is somewhat of an abstraction. *See* Exhibit A, p. 3. In the patent, the term is used to describe the numerous possible mediums that may be issued to a holder to provide the holder access to financial benefits and resources.

Although the term is not explicitly defined in the patent, the prosecution history of this term shows that the Examiner, the Applicant, and even LendingTree, the *ex Parte* Reexamination requester, clearly understood that the term applies to far more than "tangible plastic cards." Given the reexamination proceeding, this Court should not be persuaded to unjustly limit the scope of this term.

**1.    LendingTree should explain its change in position.**

LendingTree chose to file an *ex parte* reexamination of the '645 Patent before the United States Patent and Trademark Office. In its *Ex Parte* Reexamination Request, LendingTree represented to the Patent Office that "Claims 1-33 of the '645 Patent are considered to be *fully*

---

[1] All references to exhibits are to previously filed exhibits, referenced by court docket number, i.e., Docket No. ____.

*anticipated* under 35 U.S.C. §102(e) by the prior art U.S. Patent No. 5,878,403 to DeFrancesco"

(emphasis added).  *See* Exhibit B.  The Examiner initially agreed and copied this assertion nearly

word for word in reopening prosecution of the '645 Patent. *See* Docket No. 59-4, p. 18.   A

patent claim is invalid as anticipated only if *every* limitation in a claim is found in a single prior

art reference, either explicitly or inherently. *See MEHL/Biophile Int'l Corp. v. Milgraum*, 192

F.3d 1362, 1365 (Fed. Cir. 1999).

    The DeFrancesco patent has absolutely nothing to do with plastic cards, or any other type

of card for that matter.  *See* Docket No. 59-5.  Instead, DeFrancesco involves a centralized

system for automotive loan applications.  Therefore, by stating that Claims 1-33 of the '645

Patent were "fully anticipated" by the Defrancesco patent, LendingTree asserted to the Patent

Office that the claims of the '645 Patent were broad enough to cover loan applications that did

not involve a "tangible plastic" card.  Before arguing this newly minted "tangible plastic card"

definition before this Court, LendingTree should explain exactly why its position has changed so

dramatically since the Reexamination Request of June 3, 2002.

### 2.     The Examiner's Willingness to Open Reexamination

    Furthermore, the very fact that the Examiner opened prosecution based on a reference

that did not involve a tangible plastic medium indicates that the claim term is broader than

LendingTree asserts.  The presence of the DeFrancesco Patent as a Section 102 reference in the

prosecution history indicates unambiguously that the Examiner understood the term "financial

card" to cover loan systems that did not have to involve a plastic card.

### 3.     Common Experience Supports Block's Definition

    Finally, common experience undercuts LendingTree's plain meaning analysis of the term

financial card.   For example, when applying for a credit card at a retail store, the applicant

commonly receives a receipt from the cashier which allows the shopper to access the credit on an interim basis until a more durable card can be mailed to the consumer. Whatever its form, the medium issued to the holder allows access to financial resources and benefits. Therefore, if it is issued to a holder to access financial resources it can be interpreted to be a financial card as used in the '645 Patent.

In its brief, LendingTree hints at the parade of horribles that will ostensibly follow if this Court adopts Block's proffered definition. Before this Court is convinced that Block will next direct its patent against American Bar Association cardholders or rental coupon holders, Block asks this Court to consider the term and Block's proffered definition in the context of the other claim elements. Block never claimed to have invented financial cards. Block's claims happen to include a financial card, along with other claim elements, which together make the invention unique.

**B.** **LENDINGTREE'S CONTRUCTION FOR "RATINGS" IGNORES THE WELL ESTABLISHED DOCTRINE OF "CLAIM DIFFERENTIATION".**

| Claim Term | Proper Definition |
|---|---|
| "a rating to said applicant" | a value or measure assigned to an applicant |

Under the U.S. Patent Act, a dependent claim must add a limitation to those recited in the independent claim. *See* 35 U.S.C. § 112, ¶ 4 (2000) ("[A] claim in dependent form shall contain a reference to a claim previously set forth and then specify *a further limitation of the subject matter claimed.*") (emphasis added). Thus, reading an additional limitation from a dependent claim into an independent claim would not only make that additional limitation superfluous, it should render the dependent claim invalid. *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006).

4

The doctrine of "claim differentiation" has developed in the federal courts as a means of avoiding interpretations that render two claims redundant, unless it is clear that they are to be understood as being synonymous. *Laitram Corp. v. Rexnord, Inc*., 939 F.2d 1533, 1538 (Fed. Cir. 1991) (citing *Autogiro Co. of Am. v. United States*, 384 F.2d 391, 404 (Ct. Cl. 1967)). In its most precise form, "claim differentiation" refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006); *see Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.,* 403 F.3d 1364, 1370 (Fed. Cir. 2005) ("[C]laim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'" (quoting *Karlin Tech., Inc. v. Surgical Dynamics, Inc.,* 177 F.3d 968, 971-72 (Fed. Cir. 1999)); *see also Phillips v. AWH Corp.*, 415 F.3d 1303, 1314-15 (Fed. Cir. 2005) (explaining the presumption without invoking the "claim differentiation" label). Thus, the claim differentiation tool works best in the relationship between independent and dependent claims. *Curtiss-Wright Flow Control Corp. v. Velan, Inc.,* 438 F.3d 1374, 1380 (Fed. Cir. 2006) (citing *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 910 (Fed. Cir. 2004).

LendingTree's construction for the term "ratings" disregards dependent claims and rides roughshod over the doctrine of "claim differentiation." To accept LendingTree's constructions, this Court must suppose that the Examiner conducting the reexamination proceeding was uninformed of 35 U.S.C. § 112, ¶ 4 and the Patent Rules. *See, e.g.,* 37 U.S.C. § 1.75 ("(b) More than one claim may be presented *provided they differ substantially from each other* and are not unduly multiplied" and "(c) One or more claims may be presented in dependent form, referring back to *and further limiting another claim* or claims in the same application.") (emphasis added).

Despite the clear alternatives set forth in dependent claims 14 and 15, LendingTree submits that in every instance of the term "rating" in the '645 Patent is "a letter grade and a numerical score (e.g., A-760)." To accept this definition, this Court must render dependent claims 14 and 15 superfluous and invalid.

An examination of the claim structure of the '645 Patent demonstrates that LendingTree's proffered definitions for the terms "rating" or "ratings" are repugnant to the doctrine of claim differentiation. LendingTree incorporates "a letter grade and a numerical score (e.g., A-760)" into all instances of the term "rating." However, this unnecessary limitation makes little sense given the claim structure of the '645 Patent.

Claim 11 recites as follows:

> 11. An electronic method for applying for a financial card, comprising the steps of
> (a) storing financial institution data for participating financial institutions;
> (b) storing financial card term data for each of said participating financial institutions;
> (c) providing **ratings** associated with said financial card term data;
> (d) prompting an applicant for application data;
> (e) assigning a **rating** to said applicant;
> (f) locating financial card offers, said offers including said financial card term data selected by comparing said **rating** with an existing schedule assigned to said financial card term data; and
> (g) presenting said financial card offers to said applicant.

*See* '645 Patent (emphasis added). Claims 14 and 15, which depend from and are necessarily narrower than claim 11, recite:

> 14. The method of claim 11 wherein said **rating** is a financial risk rating.

> 15. The method of claim 11 wherein said **rating** is a grade and score combination.

*See* '645 Patent (emphasis added). From the recital above, two facts are apparent given the mandate of 35 U.S.C. § 112, ¶ 4. First, the terms "rating" or "ratings" recited in independent

claim 11 have to be broader than a "financial risk rating." Second, the terms "rating" or "ratings" recited in independent claim 11 must also be broader than a "grade and score combination." If that was not the case, then the Examiner would have necessarily rejected the claims under 35 U.S.C. § 112, ¶ 4. He did not, and LendingTree has not submitted any evidence that would overcome this clear intrinsic evidence. LendingTree attempts to veil this discrepancy by repeating the same basic definition for "rating," "financial risk rating," and "grade and score combination."

As this Court is well aware, a value rating can be represented in an infinite number of ways—the choice is completely arbitrary. For example, digital computers represent values in strings of ones and zeros. LendingTree asks this Court to strangle the '645 Patent by confining it to a single representation used for illustration in a preferred embodiment of the '645 Patent – a letter grade and a numerical score (e.g., A-760). However, "it is well established that broad claims supported by the written description should not be limited in their interpretation to a preferred embodiment," *Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855, 865 (Fed. Cir. 1988) ("References to a preferred embodiment, such as those often present in a specification, are not claim limitations.").

Block's constructions are the only proffered definitions that make sense in the context of the recited claims. For Block, a "rating" as assigned to an applicant in independent claim 11 is "a value or measure assigned to an applicant." In dependent claim 14, which depends from and is necessarily narrower than claim 11, a "financial risk rating" is restricted to "a value or measure of a consumer's ability to fulfill obligations in the future." Finally, claim 15, which also depends from and is necessarily narrower than claim 11, claims an even narrower scope, whereby a rating

7

is confined to "a ranking and a tally used to search financial card term data for financial institutions."

The "ratings associated with said financial card terms" are the "selection criteria associated with a financial card." These are the threshold values or levels associated with a particular card offer that must be attained in order to receive that offer. *See, e.g*., '645 Patent, Table, Col. 4. LendingTree is correct to the extent that they observe that the selection criteria associated with a particular financial card offer is comparable to the applicant's rating. *See* Docket No. 57, p. 25 (stating "[t]o have an 'apples-to-apples' comparison, the ratings must be expressed in the same manner). However, LendingTree mistakenly limits the comparison to the preferred embodiment. The LendingTree analysis fails to consider the possibility of using other arbitrary representations of value that might be chosen.

Block's definitions are logical and consistent with the ordinary meaning of the term "rating." Definition 3, the relevant definition in this context from Merriam-Webster's Online Dictionary, is: "3 a: relative estimate or evaluation: <u>STANDING</u> <the school has a good academic *rating*> b : an estimate of an individual's or business's credit and responsibility . . ." It is notable that LendingTree conveniently avoids reference to a dictionary in the case of the term "ratings." Therefore, it is clear that the ordinary meaning of this term is not nearly as restrictive as the definition provided by LendingTree.

Block offers the following analogy to aid the Court in its construction of the term "rating." A student's performance on an exam, for example, can be represented in a number of different manners. For example, one might indicate performance using a grade of A through F. Performance on the exam may be represented in a precise manner such as a percentage of correct answers (e.g., 94.5%). It may also be represented in a more general fashion, for example, pass

8

or fail.  Whatever the predetermined rating system may be, an academic institution, like a financial institution, may organize performance by associating a given performance value with a given recognition level.  For example, one institution might require a 90% score, for a letter grade of A.  However, another institution may require a 93% for the same grade.

### 1.    Examiner's Statements Regarding "Ratings"

Although courts consider a patent's prosecution history, the Federal Circuit has repeatedly warned them about the potential for ambiguity when applying the prosecution history to claim construction.  *See Phillips,* 415 F.3d at 1317 ("Yet because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes."); *see Inverness Med. Switz. GmbH v. Warner Lambert Co.,* 309 F.3d 1373, 1380-82 (Fed. Cir. 2002) (the ambiguity of the prosecution history made it less relevant to claim construction); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1580 (Fed. Cir. 1996) (the ambiguity of the prosecution history made it "unhelpful as an interpretive resource" for claim construction.)  Through convenient short-quoting and selective emphasis, LendingTree relies on ambiguity in the prosecution history to infer that the patentee willingly narrowed the patent's scope.

LendingTree's analysis is based, to a large extent, on a statement made by the Examiner in concluding the Reexamination.  The *entire* quotation recites the following:

> In consideration of the allowance the examiner interprets the rating assigned to the applicant to read the grade/score assigned to the applicant and the term "existing schedule assigned to the financial card term data" to read participating institution's selection criteria organized in a matrix[sic] **as exemplified** and disclosed in col. 4L20-43 of the specification.

Doc 58-6, p. 5 (emphasis added).[2]  LendingTree appears to suggest that the Examiner, without

any pretext, was *sua sponte* importing new limitations into the claim terms of the '645 patent.

For that to be true, the Court must also believe that the Examiner intended to allow, or

negligently allowed, a completely superfluous claim 15.  To save the Court from such wild

speculation, Block offers a more reasonable interpretation.

The Examiner's statement is perfectly innocuous to the scope of the terms of the '645

Patent.  In the context *of all of the confirmed claims*, the above quotation is nothing more than an

acknowledgment by the Examiner that the specified claim terms *read onto* the preferred

embodiment "**as exemplified** and disclosed in col. 4L20-43 of the specification."  It is "well

established that a claim construction that excludes a preferred embodiment is '*rarely, if ever,*

*correct*'." *See Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,* 257 F.3d 1364, 1378 (Fed. Cir.

2001) (internal citations omitted).  In other words, a patent's claim terms are inconsistent with

the specification if the claimed elements do not read onto the very embodiments or examples

contained within the specification.  While the claims should read onto the disclosed

embodiments, it does not follow that the scope of the claims are limited to those embodiments.

If the Examiner was making a statement of limitation, he would not have used the words *as*

*exemplified*, a phrase equivalent to saying "as illustrated."  Furthermore, if the statement was

actually a statement of limitation, the Examiner would not have allowed dependent claims 14

and 15.  Accordingly, LendingTree's definition should be rejected by this Court.

---

[2] LendingTree emphasizes the fact that the statement above can be found in two office actions, the office action of 9/23/2005, and again in the office communication of 03/29/2006.  LendingTree asserts that this is evidence that the Examiner "twice rejected" the construction as proposed by Block.  However, if LendingTree were being more candid, they would acknowledge that this repetition is purely an artifact.  The only substantive portion of the 3/29/2006 communication is the Examiner's Amendment found on page 2 of that document.  If pressed, LendingTree will surely admit that it is typical for Examiners, who are often in a rush to complete their work, to make minor modification to an old office communication in order to address the issue at hand.  Therefore, for patent practitioners, it is common to see the recital from the last office communication "hanging around" in the new

## C.  LENDINGTREE IS IMPROPERLY ATTEMPTING TO LIMIT THE SCOPE OF CERTAIN CLAIM TERMS TO THE DESCRIPTION OF A PREFERRED EMBODIMENT.

| Claim Term | Proper Definition |
|---|---|
| "an <u>existing schedule</u> assigned to said financial card term data" | an association of selection criteria with financial card term data |

It is axiomatic that "claims, not the specification embodiments, define the scope of protection." *American Permahedge, Ins. v. Barcana, Inc.*, 105 F.3d 1441, 1444 (Fed. Cir. 1997). Although the "[c]laims must be read in view of the specification," *Vitronics Corp. v. Conceptronics, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996), the claims are not limited to preferred embodiments or illustrative examples of an invention discussed in the written description.  *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1366 (Fed. Cir. 2000).  Therefore, it is essential that the Court take great care to make sure that the teachings and illustrations found in the specification are not imported into the claims unless the language of the claims invites reference to those sources.

As with the term "ratings," the term "existing schedule," found in claim 11, should not be confined to the arbitrary illustration shown in the preferred embodiment.  In order to save time Block incorporates the relevant discussion and footnote regarding the Examiner's statement recited above.  Block repeats its assertion that "existing schedule" as in the phrase "an existing schedule assigned to said financial card term data" is best defined as "an association of selection criteria with financial card term data."  The Court need look no farther than the plain meaning of this term.

---

communication.  The contextual ambiguity exploited by LendingTree here is exactly the type of ambiguity the Federal Circuit warned federal courts to be wary of in *Phillips,* 415 F.3d at 1317.

LendingTree's definition for "existing schedule" is inconsistent with the doctrine of "claim differentiation." LendingTree's definition for "existing schedule" is "participating financial institutions' selection criteria organized in a matrix as exemplified and disclosed in a col. 4, ll. 20-43 of the specification." As with the term "ratings," LendingTree is content to simply disregard a dependent claim. Claim 20, which ultimately depends from,[3] and is necessarily narrower than claim 11, recites:

> 20. The method of claim 17 further comprising the step of <u>organizing said financial card term data and said assigned ratings in a matrix.</u>

(emphasis added). In effect, LendingTree's definition writes the limitation provided in claim 20 into claim 11. Accordingly, this Court should reject LendingTree's proposed definition because it renders a valid claim (claim 20) superfluous and invalid under 35 U.S.C. § 112, ¶ 4.

## D. LENDINGTREE IS IMPROPERLY RESTRICTING THE CLAIM TERMS OF THE '645 PATENT WITHOUT A SHOWING OF A MANIFEST EXPRESSION OF RESTRICTION.

The words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313. In order to deviate from the ordinary meaning, the patentee must use "words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1327 (Fed. Cir. 2002). In its brief, LendingTree repeatedly tries to narrow the ordinary meaning of Block's claim terms without the necessary showing of a manifest expression of restriction.

| Claim Term | Proper Definition |
|---|---|
| "offers" | Solicitations |

---

[3] Claim 20 depends from claim 17 which depends from claim 11.

Although a patent is a legal document, it is not directed to lawyers. Instead, claims in a patent are directed to those of ordinary skill in the art. *See Phillips,* 415 F.3d at 1313. In this case, the relevant art is the marketing of loan products to consumers. In the loan industry, targeted "offers" for financial cards are continually sent via mail to applicants meeting predetermined demographics.

While these "offers" often contain terms such as APR, loan amount, and incentive programs, a person of skill in the art, such as a representative from LendingTree, well understands that these "offers" are not technical legal offers as that term is used in state contract law. Instead, these "offers" are akin to sales flyers that come with the Sunday newspaper. They are solicitations or invitations to apply for a financial card. Typically, in order to establish a binding legal relationship, the financial card offeree must still submit a completed application (*i.e.* return the invitation to apply), and second, the application must be accepted or rejected by the given financial institution. Obviously, a given financial institution does not want to bind itself until it can process the application.

The '645 Patent discloses a more targeted way to direct loan offers to new customers. *See* Summary of the Invention, Col 2, ll. 6-30. Although the financial card "offers" are received in a different manner, they are similar to the types of offers sent via the direct mail system that the patent improves upon. LendingTree's attempt to construe the offers in an inconsistent and narrow manner should be rejected by this Court. Instead, "financial card offers" or "offers" should be construed in a manner consistent with the ordinary meaning of those terms in the industry.

As stated in the '645 Patent, the direct mailing process is extremely inefficient because of the low rate with which consumers accept the invitations or "offers" to apply for a given

financial card. In this context, the '645 Patent is meant to remedy this inefficiency by creating a system whereby the participating financial institutions may direct their solicitations, i.e., invitations to apply, more efficiently to an interested audience.

LendingTree's tempts this Court to derail the '645 Patent by limiting the scope of the term "offer" to a restrictive state contract law meaning. According to LendingTree, this Court should construe the terms "financial card offers" and "offers" as "a proposal of material terms for a financial card that, if accepted, would form a binding contract." However, such a reading is not in line with the ordinary meaning of this term to one skilled in this art.

Unfortunately for LendingTree, the term "binding contract" is found nowhere in the claims, the specification, or the prosecution history of the '645 Patent. Although cited as proof, the fact that a consumer can "accept" an "offer" goes no further toward that reading. It is just as conceivable that by accepting, the consumer is simply making a non-binding choice to initiate further contact with a given financial institution.

| Claim Term | Proper Definition |
|---|---|
| "financial card terms" | terms that relate to a financial card offer, e.g. type of offer, interest rate, fees, amounts, etc…. |

Block asserts that the proper definition for "financial card terms," as that term is used within the context of the claims of the '645 Patent, is "terms that relate to a financial card offer, e.g. type of offer, interest rate, fees, amounts, etc. … ." The specification is explicit that these terms include both material terms related to the card offer (the so called "Federal Box" terms), but also include "other details of each of the offers." *See* Col. 4, ll. 65-67.

LendingTree is correct in its analysis of the term "financial card terms" to the extent that the terms may include material terms of the offer. However, because the patentee made no

14

manifest expression of intent to exclude other types of information, financial card terms may also include other information related to the financial card offer. Presumably such terms would include detailed information concerning how the applicant can proceed with the transaction. Furthermore, because the offers may be in competition with the offers from other financial institutions, there may be more details about the incentive program involved with the offer. Therefore, this Court should adopt the definition asserted by Block.

### E.     ADDITIONAL TERMS IN DEPENDENT CLAIMS

With respect to the terms "matrix," "financial risk rating," "grade and score combination," "financial application data," and the means-plus-function claim, claim 28, Block reaffirms and incorporates the definitions and arguments it presented in its earlier Memorandum. With respect to LendingTree's definitions and argument's Block asserts the following responses to LendingTree.

| Claim Term | Proper Definition |
| --- | --- |
| "matrix" | an association of data |

A matrix is simply a tool to organize selection criteria. In one of the preferred embodiments shown in the '645 Patent the matrix happens to be a rectangular arrangement. However, the term covers any arrangement that associates selection criteria with financial card term data. Col. 4, ll. 27-29.

| Claim Term | Proper Definition |
| --- | --- |
| "financial risk rating" | a value or measure of a consumer's ability to fulfill obligations in the future |

The ordinary meaning to the term "financial risk rating" is clear here. The term is a measure of a confidence in a consumer's probability of fulfilling financial obligations in the

future.  LendingTree's definition is unnecessarily narrow and is yet another attempt to import a "grade and score combination" from claim 15 into a wholly separate claim, claim 14.

| Claim Term | Proper Definition |
|---|---|
| "grade and score combination" | a ranking and a tally used to search financial card term data for financial institutions |

Both parties agree that an example of such a grade and score combination is "A-760" as shown in the Table in Column 4 of the specification.  However, LendingTree imports additional and unnecessary limitations into its definition.  LendingTree defines the term as "a combination of a letter grade and a numerical score" (emphasis added).  Note that LendingTree unnecessarily imports the adjectives "letter" and "numerical" from the preferred embodiment.  However, the term only requires a grade, i.e., a ranking, and a score, i.e., a tally.  As the Court will readily understand, the exact representation chosen is arbitrary.  For example, the grade and score combination could just as easily have been "Excellent – Tier 2."

| Claim Term | Proper Definition |
|---|---|
| "financial application data" | personal and financial information for an individual applicant such as name, telephone number, address, financial information, and social security number |

Block submits that financial application data is exactly the type of information that a consumer would expect to enter into a financial application.  Furthermore, Block rejects LendingTree effort at drawing a false distinction between application data and financial application data.  Claim 28 is an independent claim and simply expresses the term in a more precise manner.

LendingTree further insists that "financial application data" does not include social security number information.  Doc 57, p. 31, ¶ 2.  However, Block believes that such an argument is clearly specious.  As this Court will recognize, it is quite common to enter social

security information when filling out financial applications, *e.g.,* car loan, home loan, credit card application, etc… The specification need not teach information well known in the art. *Spectra-Physics, Inc. v. Coherent, Inc.,* 827 F.2d 1524, 1534 (Fed. Cir. 1987) ("A patent need not teach, and preferably omits, what is well known in the art."); *In re Howarth*, 654 F.2d 103, 105 (Ct. Cl. 1981) ("An inventor need not, however, explain every detail since he is speaking to those skilled in the art.")

### 1. Means-Plus-Function Claim

As to the means-plus-function claim, claim 28, Block directs the Court to the arguments presented in its earlier Memorandum. Doc 59, p. 28-30. Block expressly rejects LendingTree's attempt to write the "grade and score combination" limitation from claim 15 into claim 28.

## II. CONCLUSION

For the foregoing reasons, Block respectfully requests the Court adopt the entire set of definitions offered by Block in the Memorandum it filed on June 8, 2007.

Respectfully submitted,

 /s/ F. Michael Speed, Jr.
Jeffrey S. Standley (Admitted *Pro Hac Vice*)
F. Michael Speed, Jr. (Admitted *Pro Hac Vice*)
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH 43017-5319
Tel.: 614-792-5555
Fax: 614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com

Mark W. Brennan (Missouri Bar. No. 39117)
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, MO 64015-2100
Tel.: 816-374-3200

17

Fax: 816-374-3300
mbrennan@bryancave.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 29, 2007, a true and accurate copy of the foregoing was e-filed with the Court using the CM/ECF system which sent notification of such filing to the following:

Holmes J. Hawkins, III
Jim Wasserman
James J. Mayberry
Tomesha L. Faxio
KING & SPALDING
1180 Peachtree Street, NE
Atlanta, GA  30309
hhawkins@kslaw.com
jwasserman@kslaw.com
jmayberry@kslaw.com
tbaxio@sklaw.com

Clinton G. Newton
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO  64108
cnewton@shb.com

  /s/ F. Michael Speed, Jr.
F. Michael Speed, Jr.