# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| BLOCK FINANCIAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION FILE |
| | ) | NO. **01:1007-CV-W-3** |
| LENDINGTREE, LLC, | ) | |
| | ) | Hon. Ortrie D. Smith |
| Defendant. | ) | |

## BRIEF OF DEFENDANT LENDING TREE, LLC.
## IN OPPOSITION TO PLAINTIFF'S MARKMAN BRIEF

Clinton G. Newton
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri 64108-2118
Tel: (816) 474-6550
Fax: (816) 421-5547
E-mail: cnewton@shb.com

Holmes J. Hawkins, III
Jill Wasserman
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia 30309
Tel: (404) 572-4600
Fax: (404) 572-5100
E-mail: hhawkins@kslaw.com
      jwasserman@kslaw.com

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

ARGUMENT .............................................................................................................. 2

I.  BLOCK MISAPPLIES THE LAW REGARDING CLAIM CONSTRUCTION ................. 2

  A.  The Proper Use Of The Prosecution History. ................................................. 2

  B.  Block Misstates The Law Regarding Preferred Embodiments. ..................... 2

II. BLOCK'S PROPOSED CLAIM CONSTRUCTIONS ARE NOT SUPPORTED BY THE
   INTRINSIC EVIDENCE AND SHOULD THEREFORE BE REJECTED. ..................... 3

  A.  Block's Construction Of "Financial Card" Is Grossly Overbroad  And Not Supported
     By Intrinsic Evidence ...................................................................... 3

  B.  Block's Construction Of "Financial Card Terms" Is Not Supported By Intrinsic
     Evidence And Is Overly Broad .......................................................... 7

  C.  Block's Constructions Of "Ratings" Ignore The Intrinsic Record And Are Overly
     Broad ........................................................................................... 8

     1. Applicant Associated "Ratings" ................................................... 9

     2. "Ratings" Associated With Financial Card Term Data ..................... 11

  D.  Block's Construction Of "Existing Schedule" Is Impermissibly Vague And
     Unsupported By Intrinsic Evidence ................................................ 13

  E.  Block's Constructions Of "Financial Card Offers" And "Offers" Are Much Broader
     Than The Teachings Of The Specification ........................................ 13

  F.  Block's Construction Of "Financial Risk Rating" Ignores The Necessary Involvement
     Of The "Grading System" .............................................................. 14

  G.  Block's Construction Of "Grade And Score Combination" Is Outside Of The Scope Of
     The Patent Language ..................................................................... 15

i

H.    Block's Construction Of "Matrix" Ignores The Specification .................................. 15

I.    "Ratings" As Used In The Term "Assigned Ratings Provided By Participating
      Financial Institutions" Should Be Construed Consistently With Other References To
      "Ratings" Throughout The Patent................................................................................ 15

J.    Block's Construction Of "Financial Application Data" Is Too Expansive ................ 16

K.    Claim 28 – Means Plus Function Claim .................................................................... 16

CONCLUSION.................................................................................................................................. 17

# TABLE OF AUTHORITIES

## FEDERAL CASES

Atlantic Thermoplastics Co. v. Faytex Corp.,
970 F.2d 834 (Fed. Cir. 1992)............................................................................6

Biogen, Inc. v. Berlex v Labs.
318 F.3d 1132 (Fed. Cir. 2003)............................................................................2

Chimie v. PPG Industrial,
402 F.3d 1371 (Fed. Cir. 2005)............................................................................3

DeMarini Sports, Inc. v. Worth, Inc.,
239 F.3d 1314 (Fed. Cir. 2001)............................................................................5

Honeywell Int'l Inc. v. ITT Industrial,
452 F.3d 1312 (Fed. Cir. 2006)........................................................................2, 3

Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.,
450 F.3d 1350 ........................................................................................................3

K-2 Corp. v. Salomon S.A.,
191 F.3d 1356 (Fed. Cir. 1999)....................................................................4, 5, 6

Kinik Co. v. ITC,
362 F.3d 1359 (Fed. Cir. 2004)........................................................................2, 3

Laitram Corp. v. Cambridge Wire Cloth Co.,
863 F.2d 855 (Fed. Cir. 1988)..............................................................................2

Salazar v. Proctor & Gamble Co.,
414 F.3d 1342 (Fed. Cir. 2005)..........................................................................10

Schoenhaus v. Genesco, Inc.,
440 F.3d 1354 (Fed. Cir. 2006)..................................................................9, 12, 14

Ventana Med. System, Inc. v. Biogenex Labs. Inc.,
473 F.3d 1173 (Fed. Cir. 2006)..........................................................................10

Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.,
442 F.3d 1322 (Fed. Cir. 2006)..................................................................9, 12, 14

Zenith Labs. v. Bristol-Myers Squibb Co.,
19 F.3d 1418 (Fed. Cir. 1994)..............................................................................2

Case 4:01-cv-01007-ODS   Document 61   Filed 06/29/07   Page 4 of 22

## <u>INTRODUCTION</u>

Block's[1] proposed claim constructions render the '645 patent utterly unrecognizable. Although the title of the patent is "Financial Card Application System" and every claim contains the term "financial card," Block would have the Court transform the patent into a "Loan Application System" that applies to every conceivable type of credit "medium." The claims, the specification, and prosecution history cannot bear this strained interpretation. Nothing in the patent suggests that the invention covers anything other than an application system for physical financial cards like credit cards or debit cards. To the contrary, the patent makes clear that a "financial card" is a tangible item capable of being physically delivered to consumers.

Block's arguments in support of its construction of this and other terms are either completely unsupported or are based upon legal arguments that the Federal Circuit has rejected. For example, Block asserts that a "financial card" need not actually be a physical "card" because the Patent Examiner initially rejected Block's application based on a prior art patent that covered a broader range of credit products—even though the Examiner never defined "financial card" as a "medium." But there is no authority—legal or in the patent file history—that either the Examiner or anyone else of skill in the art would have understood the term "card" to mean "medium." Because LendingTree's analysis properly takes into account the intrinsic evidence and, where appropriate, extrinsic evidence, the Court should adopt LendingTree's proposed claim constructions and reject Block's.

---

[1] The same abbreviations used in LendingTree's Opening Claim Construction Brief ("LendingTree Brief") are used in this Opposition Brief. Block's Markman Brief of the Interpretation of Disputed Claim Language in the Claims of U.S. Patent No. 6,014,645 is referred to herein as "Block Brief."

1

<u>**ARGUMENT**</u>

**I.     BLOCK MISAPPLIES THE LAW REGARDING CLAIM CONSTRUCTION**

   A.     <u>The Proper Use of the Prosecution History</u>

   The prosecution history, including express statements by the examiner, may serve to <u>*limit*</u>

the meaning of a claim.  (<u>See</u> LendingTree Brief at 8).  However, statements by an examiner (or

by the applicant for that matter) cannot be used to *broaden* terms beyond what is actually

described in the specification and claims.  <u>See</u> <u>Honeywell Int'l, Inc. v. ITT Indus.</u>, 452 F.3d

1312, 1318-19 (Fed. Cir. 2006) ("such a broad and vague statement [made to the examiner in

response to a rejection] cannot contradict the clear statements in the specification describing the

invention more narrowly"); <u>Biogen, Inc. v. Berlex Labs.</u>, 318 F.3d 1132, 1140 (Fed. Cir. 2003)

("Representations during prosecution cannot enlarge the content of the specification"); <u>cf.</u> <u>Zenith</u>

<u>Lab. v. Bristol-Myers Squibb Co.</u>, 19 F.3d 1418, 1424-1425 (Fed. Cir. 1994) (noting that a

"primary purpose" of an examiner's statement of reasons for allowance is "to improve the

quality and reliability of issued patents by providing … the reasons why the application was

allowed, [which] facilitates evaluation of the scope and strength of a patent by the patentee and

the public and may help avoid or simplify litigation of a patent.").

   B.     <u>Block Misstates the Law Regarding Preferred Embodiments.</u>

   Block consistently misapplies the general principle that claims are not necessarily limited

to preferred embodiments.  <u>See, e.g., Kinik Co. v. ITC</u>, 362 F.3d 1359, 1364 (Fed. Cir. 2004);

<u>Laitram Corp. v. Cambridge Wire Cloth Co.</u>, 863 F.2d 855 (Fed. Cir. 1988).  Block suggests that

if the preferred embodiment discloses one way of doing something, then the claims must

necessarily be construed broadly to encompass additional ways to do the same thing.  But the

principle that the preferred embodiment does not necessarily limit the claims is not absolute.

2

The Federal Circuit has consistently held that the claims may be limited to preferred embodiments if the patent discloses no other embodiments. Kinik, 362 F.3d at 1364; see also Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc., 450 F.3d 1350, 1354-56; Chimie v. PPG Indus., 402 F.3d 1371, 1379 (Fed. Cir. 2005) ("when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment."). "Where, as here, the written description clearly identifies [the invention]. an expression by a patentee during prosecution that he intends his claims to cover more than what his specification discloses is entitled to little weight." Honeywell, 452 F.3d at 1319.

II.   BLOCK'S PROPOSED CLAIM CONSTRUCTIONS ARE NOT SUPPORTED BY THE INTRINSIC EVIDENCE AND SHOULD THEREFORE BE REJECTED.

A.   Block's Construction of "Financial Card" is Grossly Overbroad and Not Supported by Intrinsic Evidence

| LendingTree's Construction | Block's Construction |
| --- | --- |
| a tangible piece of plastic or similar material issued by a financial institution that authorizes the cardholder to purchase goods and services on credit or by debiting a bank account, for example, a credit card or debit card | a medium issued to a holder that provides access to financial benefits and resources |

LendingTree's construction of "financial card" is fully supported by both intrinsic evidence and extrinsic evidence. The '645 patent is titled "Real-Time *Financial Card* Application System" (emphasis added), and every claim in the patent is limited to an application system for "financial cards." Moreover, the specification makes clear that "financial cards" must be capable of being physically delivered to customers. (See, e.g., col. 5, ll. 3-5). Finally, LendingTree's proposed construction of the term "financial card" is consistent with how one of ordinary skill in the art would understand the term, as evidenced by both the use of the term

Case 4:01-cv-01007-ODS   Document 61   Filed 06/29/07   Page 7 of 22

"financial card" in the prior art and by ordinary dictionary definitions of the term "card" (See LendingTree Brief at 11-15).

Block's argument that "financial card" should be understood as "a medium issued to a holder that provides access to financial benefits and resources" would transform the invention into an application system for any type of credit instrument. While a patentee is free to be its own lexicographer, "clarity, deliberateness, and precision [is required] to impart an unaccustomed meaning to an otherwise clear claim term." K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1364 (Fed. Cir. 1999). Nothing in the intrinsic evidence provides such clarity.

Tellingly, a "financial card" is never referred to as a "medium" anywhere in the patent or in its extensive prosecution history. When the patent gives examples of "financial cards," it describes only tangible things like credit cards and debit cards, but not intangible financial instruments like loans, electronic transfers, or letters of credit. (See '645 patent Abstract; col. 1, ll. 15-16).

Block's argument that "the claim term itself supports" its proposed construction because "use of the broad term 'financial card' is itself strong evidence that the patent is referring to any medium" (Block Brief at 10) is nothing more than "because I said so." Characterizing a term as "broad" does not make it so. Similarly, Block's argument that it "could easily have limited the claims to transactions involving only plastic cards" (id. at 10-11) begs the question of what a "financial card" is. Moreover, if the inventor intended a broader meaning, he could have easily used the less definite term "medium" in the first place.

Recognizing that the patent does not support its construction, Block asks the Court to infer that the Patent Office Examiner interpreted "financial card" in the broad manner Block now proposes. In particular, Block observes that the Patent Office initially rejected all the claims of

the '645 patent as anticipated by U.S. Patent No. 5,878,403 ("DeFrancesco"). Because

DeFrancesco was directed to a "credit application analysis and decision routing system," and

because DeFrancesco did not pertain specifically to credit cards or debit cards, Block argues that

the Examiner understood the patent claims to "cover loan applications that did not have to

involve a plastic card." (Block Brief at 10). Similarly, Block argues that in connection with its

reference to DeFrancesco, the Examiner "specifically equate[d] 'financial card' with the term

'loan' in the phrase 'financial card term data.'" (Block Brief at 10). This is not a proper legal

basis on which to construe a claim term.

Absent a clear and unambiguous statement, a court may not draw any inferences from an

Examiner's reference to a particular piece of prior art. See DeMarini Sports, Inc. v. Worth, Inc.,

239 F.3d 1314, 1326 (Fed. Cir. 2001). In DeMarini, the patentee argued that a baseball "bat

frame" did not include the bat's handle, based on the Examiner rejecting two of the patentee's

original claims because of a prior patent for a bat comprised of, among other things, an

"elongated handle" attached to a "tapering tubular stem." The patentee claimed the Examiner

understood a "bat frame" to be separate from the handle. The Federal Circuit rejected this

argument:

> The examiner made no comment on DeMarini's naming of the parts of the Peng
> 164 bat. DeMarini would have us infer a meaning for the term 'frame' drawn
> from the examiner's silence . . . ***Drawing inferences of the meaning of claim
> terms from an examiner's silence is not a proper basis on which to construe a
> patent claim***, and we reject DeMarini's arguments predicated on such inferences.

*Id*. (emphasis added).

Similarly, in K-2, the Court declined to adopt the patentee's construction of "permanently

affixed" to mean "substantially preventing movement there between at least in a horizontal

plane," as opposed to the more accustomed "unmovable." K-2 Corp., 191 F.3d at 1364. The

patentee cited only its own statements distinguishing the claimed invention from the prior art to

5

support its construction.  The Court declined to adopt the "proffered unaccustomed meaning" because "[n]owhere in the passages cited to us does the applicant squarely describe … "permanently affixed" in the pending claims."  Id. (punctuation omitted).

Here, as in DeMarini and K-2, the Examiner did not, in applying DeFrancesco, define "financial card" as a "medium" or state that a "financial card" did not have to be a physical item.[2]  Absent any express statement by the Examiner, it would be unreasonable to conclude that the Examiner believed that the term "financial card" was equal in scope to the loans contemplated by DeFrancesco.  It is likely that the Examiner simply believed that the broad teaching of DeFrancesco (loans) was sufficient to render the narrow species of credit products claimed in the '645 patent (financial cards) to be unpatentable.  This does not mean that the Examiner thought a "financial card" was anything but a physical card.

Moreover, Block's argument ignores the critical difference between interpreting claims for the purposes of evaluating patentability before the USPTO and construing claims as a matter of law during litigation.  During examination, the USPTO is required to "give claims their broadest reasonable meaning when determining patentability."  Atlantic Thermoplastics Co. v. Faytex Corp., 970 F.2d 834, 846 (Fed. Cir. 1992).  "During litigation determining validity or infringement, however, this approach is inapplicable, [and] the courts must consult the specification, prosecution history, prior art, and other claims to determine the proper construction of the claim language."  Id.  As explained above and in its opening brief, all of these sources support LendingTree's construction of "financial card."

_____

[2]     Block cites a passage from an Office Action stating:  "Refer to figure 3Q which shows financial card (i.e. loan) term data from a plurality of financial institutions…."  (See Block Brief at 10, citing ¶ 6 of Block's Ex. E).  This is hardly a clear and unambiguous statement of how the Examiner understood the term "financial card."

6

Finally, as discussed above, statements during examination cannot be used to broaden terms beyond what is actually described in the specification and claims. (See supra at I.A). Thus, Block should not be permitted to so broaden the term "financial card" simply because of the non-final initial rejection under DeFrancesco.

> B.    Block's Construction of "Financial Card Terms" Is Not
>        Supported by Intrinsic Evidence and is Overly Broad

| LendingTree's Construction | Block's Construction |
|---|---|
| material terms of a financial card offer (such as APR, annual fees, etc.) that are pre-set by each financial institution and can be presented to consumers | terms that relate to a financial card offer, e.g. type of offer, interest rate, fees, amounts, etc. … |

The Court should adopt LendingTree's construction of "financial card terms." Block's proposed construction is not supported by the specification or the prosecution history of the '645 patent, is overly broad, and should therefore be rejected.

Block contends that "financial card terms" encompass both "material terms," as well as "other details." (Block Brief at 11). Block cites a passage in the specification stating that "[t]he applicant may peruse, via the computer display the 'federal box' and other details of each of the offers to find the one that is most attractive …" Col. 4, ll. 65-76. But that statement does not purport to define "financial card terms." Rather, it describes the information presented to the consumer in the preferred embodiment. In addition, where the specification discusses "financial card terms," it refers to the matrix illustrated in Column 4 in which only some of the financial card terms – presumably the material terms – are presented. Col. 5., ll. 20-22 (referring to Col. 4, ll. 32-44).

Further, Block's construction is far broader than intrinsic evidence will allow in two respects. First, it fails to explain the origin of the financial card terms, even though the claim language, specification, and prosecution history make clear that the financial card terms are pre-

set by the financial institutions. (See LendingTree Brief at 15-16). For example, the patent's abstract states: "Applicant selection criteria and financial offer data *are provided by participating financial institutions* to a computer system." ('645 patent Abstract, emphasis added; see also Block Brief at 2). Likewise, Figure 3 shows that system must "*obtain* and store participating financial institution data." (emphasis added). In addition, during reexamination, Block repeatedly referred to the "financial card terms" as being the "terms of the financial offer that a participating financial institution is willing to make." Ex. F at 11, 19.[3] Yet, Block makes no mention of the financial institution's involvement in determining the financial card terms.

Second, Block's construction is not properly limited as to what may be included within the financial card terms. Terms that "relate to" a financial card offer could include more than the terms of an offer that a financial institution is willing to make to an applicant, even though the intrinsic evidence clearly limits the term in this way. See Col. 5, ll. 20-22; see also Ex. F at 11, 19. Block's broad construction would include even requirements that an applicant must meet, since these requirements would "relate to" the financial card offer, though Block itself told the Examiner that such requirements would not be included within financial card term data. See Ex. F at 44; see also LendingTree Brief at 15-16. Accordingly, the Court should reject Block's construction.

C.      Block's Constructions of "Ratings" Ignore
         the Intrinsic Record and are Overly Broad

The term "rating" or "ratings" is used throughout the patent in two related, but separate, contexts. The patent refers to: (1) a rating assigned to each applicant, and (2) ratings assigned to the financial card terms for each card offer that a financial institution is willing to make.

---

[3]      References to Exhibits are to the Exhibits attached to the Declaration of Holmes J. Hawkins, III, Docket No. 58.

Although the '645 patent uses the term "ratings" in different phrases throughout the patent, LendingTree submits that the Court should focus on the unadorned term "ratings," which should be construed consistently throughout the patent.  See Wilson Sporting Goods Co. v. Hillerich & Bradsby Co., 442 F.3d 1322, 1328 (Fed. Cir. 2006); Schoenhaus v. Genesco, Inc., 440 F.3d 1354, 1357 (Fed. Cir. 2006).

### 1. Applicant Associated "Ratings"

| LendingTree's Construction | Block's Constructions[4] |
|---|---|
| a letter grade and a numerical score (e.g., A-760) assigned to the applicant, calculated based on the application data | (1) a value or measure assigned to an applicant (for certain terms)<br>(2) associating a value or measure with an applicant (for certain terms) |

Block asserts the same arguments in support of each of its broad applicant-associated constructions involving the term "ratings."  Specifically, Block argues that the "rating" may be a financial risk rating, a grade/score or "***any*** value or measure assigned to the applicant that is useful for determining whether a particular applicant should be extended a particular offer or offers."  (Block Brief at 12, 16, 19, 22 (emphasis added)).  Block's constructions and supporting arguments are inconsistent with the specification and the prosecution history of the '645 patent.

First, intrinsic evidence does not support Block's construction that a "rating" can be "any value or measure."  Block claims that the following passage from the specification supports its interpretation:

> The grade/score assigned to the applicant by the grading system may be viewed as a financial risk rating.  It takes into account various criteria and factors to determine whether a particular applicant should be extended an offer and if so, what the terms of the offer should be.

---

[4]     A full claim chart setting forth both parties' claim constructions is Appendix A to LendingTree's Opening Brief.  For brevity, Block's applicant-ratings-related proposed constructions are summarized here.

(Block Br. at 16 (citing col. 4, ll. 54-57)). But this excerpt indicates only that the grade/score or financial risk rating takes into account various criteria and factors. Col. 4, ll. 53-57. It says nothing about whether a "rating" can be "any value or measure …." Nor does the specification suggest that a "rating" assigned to the applicant could be anything other than a letter grade and numerical score. See col. 4, ll. 17-19, 20-23; see also Fig. 2.

Block suggests that because "[t]he specification provides one possible 'grading system' process for associating applicant ratings with financial card term data," there must be ratings that do not involve a grade/score combination. (Block Brief 12). In doing so, Block is attempting to impermissibly broaden the scope of the patent using a preferred embodiment. As discussed above, a claim may be coextensive with a preferred embodiment where there is only one disclosed preferred embodiment and other evidence points towards such an interpretation.

Here, Block's interpretation is contradicted by the prosecution history of the '645 patent. The Examiner, in deciding to allow certain claims of the patent, expressly and unambiguously stated that he was interpreting "ratings assigned to the applicant" as "the grade/score assigned to the applicant." (See LendingTree Brief at 18-19). This express statement in the public record and Block's silence on the matter are evidence of how "one skilled in the art understood the term." See Ventana Med. Sys., Inc. v. Biogenex Lab., Inc., 473 F.3d 1173, 1182-83 (Fed. Cir. 2006); see also Salazar v. Proctor & Gamble Co., 414 F.3d 1342, 1347 (Fed. Cir. 2005) (noting that Examiner's statement of reasons for allowance is pertinent in claim construction); MPEP § 1302.14. Block utterly ignores this statement in the intrinsic record to improperly extend the meaning of "rating" beyond the Examiner's express interpretation of that term in deciding to allow the claims. Block cannot have it both ways -- a narrow interpretation of the term "ratings"

during the examination of the patent in order to avoid the prior art and then a broad interpretation of the term during litigation.

Second, Block's construction does not recognize the fact that the system described in the '645 patent actively processes the application data to *calculate* the appropriate letter grade and numerical score that is to be assigned to the applicant.  <u>See, e.g.</u>, Col. 6, ll. 5-6 ("*grade/score is calculated* and assigned to the applicant) (emphasis added); col. 6, ll. 6-8 ("The *grade/score is calculated* using the application data and credit history data obtained directly from the credit bureau …") (emphasis added); Fig. 4, step 74 ("*calculate applicant grade/score* rating based on application data and credit history data") (emphasis added).  Tellingly, the patent's abstract states:  "The applicant provides personal and financial data that are *then analyzed* in conjunction with data from outside sources (such as credit bureaus) *to determine* a financial risk rating for the applicant."  ('645 patent Abstract (emphasis added); <u>see also</u> Block Brief at 2).  Block's proposed construction eliminates the need for the system to calculate or otherwise determine the risk rating assigned to the applicant.  For all these reasons, Block's construction should be rejected.

## 2.  <u>"Ratings" Associated With Financial Card Term Data</u>

| LendingTree's Construction | Block's Constructions[5] |
|---|---|
| a letter grade and numerical score (e.g., A-760) assigned to the terms of each financial card offer that a participating financial institution is willing to make | (1) selection criteria associated with a financial card (for certain terms)<br>(2) relating selection criteria to the terms of a financial card offer (for certain terms)<br>(3) a value or measure assigned to the terms of a financial card offer (for certain terms)<br>(4) selection criteria assigned to the terms of a financial card offer (for certain terms) |

---

[5]    Block's financial card terms-ratings-related proposed constructions are summarized here.

Block repeats the same meritless arguments to support its broad construction of "ratings" as used with financial card term data. Specifically, Block argues that "***any*** methodology that takes into account various criteria and factors to determine which offers are appropriate for a given applicant would fall within the scope of this term definition." (Block Brief at 12, 15, 17, 18, 20, 21). Once again, Block attempts to expand the term "ratings" beyond what is allowed by the intrinsic evidence. In arguing that "any methodology … would fall within the scope of this term definition," Block mistakenly relies on column 4, lines 53-64 of the '645 patent. This excerpt merely states that the grade/score or financial risk rating "takes into account various criteria and factors to determine whether a particular applicant should be extended an offer." It does not, however, suggest that the grading system is only one example of a methodology and that there are other methodologies that "takes into account various criteria and factors" to create a rating.

Moreover, Block's constructions for all of the "ratings" terms would create an illogical result whereby the "rating" assigned to an applicant could be in a form that is not comparable in form to a "rating" assigned to the financial card term data. The patent requires that the financial card terms "rating" must be in a form that can be compared to the applicant "rating." Indeed, the use of exactly the same word "rating" creates a presumption that the words have the same -- or materially the same -- meaning. See Wilson, 442 F.3d at 1328; Schoenhaus, 440 F.3d at 1357. Thus, because the "rating" assigned to the applicant means a rating in the form of a letter grade and a numerical score, the "ratings" assigned to the financial card term data must be in the same form, i.e., a letter grade and a numerical score, both created, as the specification states, by the "grading system." The Court should therefore reject Block's constructions and its contention that "any methodology …" could bring about "ratings" as indicated in the specification.

D.      Block's Construction of "Existing Schedule" is Impermissibly
        Vague and Unsupported By Intrinsic Evidence

| LendingTree's Construction | Block's Construction |
|---|---|
| participating financial institutions' selection criteria organized in a matrix as exemplified and disclosed in col. 4, ll. 20-43 of the specification | "an existing schedule assigned to said financial card term data" – an association of selection criteria with financial card term data |

Block's construction of "existing schedule" is indefinite and broader than the

specification, prosecution history, and its own arguments as presented in its Opening Brief will

allow.  In an attempt to broaden the scope of this term, Block contends that the matrix shown in

column 4 of the specification is merely an "illustrative example" of an existing schedule.  (See

Block Brief at 12; Col. 4, ll. 20-43).  But the intrinsic record is clear that the Patent Examiner did

not understand the matrix shown in the patent to be a mere example.  Rather, in deciding to allow

the claims of the '645 patent, the Examiner expressly and unambiguously stated that he was

interpreting the term "existing schedule" to mean the specific matrix shown in column 4 of the

patent.  See Ex. C at 3.  Block's construction simply ignores this point.  LendingTree's

construction of "existing schedule" is identical to the unambiguous public record and therefore

should be adopted by the Court.

E.      Block's Constructions of "Financial Card Offers" and "Offers"
        are Much Broader Than the Teachings of the Specification

| LendingTree's Construction | Block's Construction |
|---|---|
| proposal of material terms for a financial card that, if accepted, would form a binding contract | "financial card offers" – an invitation to accept a financial card<br>"offers" - solicitations |

The main point of disagreement between LendingTree and Block in regard to these terms

is whether, as proffered by LendingTree, "financial card offers" and "offers" as used in the

patent describe contractual or binding offers.  The specification teaches that when "the applicant

accepts one of the offers [for a financial card], the application data for the applicant is forwarded

13

to the financial institution that made the accepted offer. The financial institution then processes the application and makes arrangements to send the financial card to the applicant." Col. 5, ll. 1-5. Nothing in the patent contemplates any negotiation between the applicant and the financial institution as to the terms of the financial card offer at any point during the application process, much less after the applicant has accepted a particular offer. Although Block argues that "a person of ordinary skill would understand that, similar to direct mail solicitations, offers are merely invitations to apply, rather than binding commitments," Block offers no evidentiary support for this statement. (Block Brief at 17). "Invitations" and "solicitations" could easily refer to non-contractual offerings and do not recognize the contractual nature of the transactions. Thus, Block's constructions should be rejected.

> F.   Block's Construction of "Financial Risk Rating" Ignores
> the Necessary Involvement of the "Grading System"

| LendingTree's Construction | Block's Construction |
|---|---|
| a letter grade and numerical score calculated using criteria that correlates the grade and score with the financial condition of an applicant | a value or measure of a consumer's ability to fulfill obligations in the future |

Block's construction ignores the necessity of a grading system and grade/score, required in connection with "ratings." As explained above, the use of exactly the same word "rating" creates a presumption that the words have the same -- or materially the same -- meaning. See Wilson, 442 F.3d at 1328; see also Schoenhaus, 440 F.3d at 1357. Additionally, the '645 patent uses the term "rating" in connection with an applicant to signify a letter grade and a numerical score calculated based on information provided by a financial card applicant. Thus, because Block's construction ignores the necessary involvement of the grading system, it should be rejected.

G.    Block's Construction of "Grade and Score Combination"
      is Outside of the Scope of the Patent Language

The Court cannot accept Block's construction of "grade and score combination" because it reaches beyond the specification by adding the limitation "to search financial card term data." This new limitation is improper because it attempts to import functional language into the claim term, namely, how the grade and score combination is used, when the claim itself recites no such function.

H.    Block's Construction of "Matrix" Ignores the Specification

| LendingTree's Construction | Block's Construction |
|---|---|
| rectangular arrangement of elements into columns and rows as exemplified and disclosed in col. 4 ll. 20-43 | an association of data |

Block's construction is overly broad and indefinite in light of the matrix disclosed in the patent.  Col. 4, ll. 32-43.  In light of the Examiner's express and unambiguous interpretation of "existing schedule" to mean the matrix disclosed in column 4, it would make no sense to construe "matrix" to mean anything but that particular matrix.  (See Ex. C at 3).  Thus, Block's construction should be rejected in favor of LendingTree's more definite and accurate construction.

I.    "Ratings" as used in the term "Assigned Ratings Provided By
      Participating Financial Institutions" Should be Construed Consistently
      With Other References to "Ratings" Throughout the Patent

Block asserts that this term should be construed to mean "selection criteria of the various participating institutions."  This term, however, should be construed consistently with other references to "ratings" within the patent.  Thus, LendingTree reasserts previous arguments regarding its construction of "ratings" and asks the Court to construe this term accordingly.

15

J.    Block's Construction of "Financial Application Data" is Too Expansive

| LendingTree's Construction | Block's Construction |
|---|---|
| financial information for an individual applicant such as income, other assets and liabilities, and bank account numbers | personal and financial information for an individual applicant, such as name, telephone number, address, financial information, and social security number |

Block's proposed construction expands the meaning of "financial application data" to include not only financial information but also personal information, such as name, telephone number, and address.  In doing so, Block seeks to improperly conflate the meaning of "financial application data" and "application data."  Block argues that the term encompasses "any information that could be pertinent to the processing of a financial card request."  (Block Brief at 20).  But the most reasonable interpretation is that financial application data is the subset of application data that is directed to financial information -- e.g., income, other assets and liabilities, or bank account numbers.  Thus, Block's construction should be rejected in favor of LendingTree's more definite and accurate construction.

K.    Claim 28 – Means Plus Function Claim

As Block notes, the parties agree on the structure disclosed in claim 28, the means-plus function claim.  Where the parties disagree is as to the function.  This disagreement largely follows the parties' different constructions relating to ratings.  LendingTree reiterates its position that "ratings" require the presence of "grade/score" values along with some processing or calculation to determine the ratings.  Because Block's constructions for ratings fail to incorporate these requirements, Block's constructions of the functions of claim 28 should be rejected in favor of LendingTree's constructions.

## CONCLUSION

For the forgoing reasons, LendingTree respectfully requests that the Court construe the claims as set forth in the Opening Claim Construction Brief of Defendant LendingTree, LLC and reject the claim constructions proposed by Plaintiff Block Financial Corporation.

Respectfully submitted this 29th day of June, 2007.

/s/  Holmes J. Hawkins, III

Clinton G. Newton
SHOOK, HARDY & BACON LLP
2555 Grand Boulevard
Kansas City, Missouri  64108-2118
Tel: (816) 474-6550
Fax: (816) 421-5547
E-mail: cnewton@shb.com

Holmes J. Hawkins, III
Jill Wasserman
KING & SPALDING LLP
1180 Peachtree Street NE
Atlanta, Georgia  30309
Tel: (404) 572-4600
Fax: (404) 572-5100
E-mail: hhawkins@kslaw.com
           jwasserman@kslaw.com

ATTORNEYS FOR LENDINGTREE, LLC

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 29th day of June, 2007, I electronically filed the foregoing BRIEF IN OPPOSITION TO PLAINTIFF'S MARKMAN BRIEF with the Clerk of Court using the CM/ECF system, which sent notification of such filing to the following:

Mr. Mark W. Brennan
Bryan Cave LLP
3500 One Kansas City Place
1200 Main Street
Kansas City, MO 64105
Tel.: (816) 374-3200 / Fax: (816) 374-3300
E-mail:          mbrennan@bryancave.com

Mr. Jeffrey S. Standley
Mr. F. Michael Speed
Ms. Carol Stovsky
Ms. Cheryl S. Scotney
Standley Law Group LLP
495 Metro Place South
Suite 210
Dublin, Ohio 43017-5319
Tel.: (614) 792-5555 / Fax: (614)792-5536
Email:          jstandley@standeylllp.com
                mspeed@standleyllp.com
                cstovsky@stanleyllp.com
                cscotney@standleyllp.com


/s/ Jill Wasserman
Jill Wasserman, Ga. Bar No. 749662

ATTORNEYS FOR DEFENDANT
LENDINGTREE, INC.