**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| BLOCK FINANCIAL CORPORATION | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:01-cv-1007-ODS |
| | ) | |
| LENDINGTREE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

_____

| | | |
|---|---|---|
| LENDINGTREE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 4:08-cv-164-ODS |
| | ) | |
| BLOCK FINANCIAL CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF BLOCK FINANCIAL CORPORATION'S MARKMAN BRIEF**
**OF THE INTERPRETATION OF DISPUTED CLAIM LANGUAGE**
**IN THE CLAIMS OF U.S. PATENT NO. 7,310,617**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................ 1

II.     HISTORY OF THE '617 PATENT.................................................... 1

        A.      U.S. Patent 7,310,617 ...................................................... 1

        B.      The Court Has Previously Construed Many Claims of the '617 Patent ........ 2

III.    LEGAL STANDARD FOR CLAIM CONSTRUCTION ........................................ 2

        A.      Claim Terms are Generally Afforded Ordinary Meaning............................. 2

        B.      Claim Terms are to be Construed as Understood by One of Ordinary
                Skill in the Art at the Time of the Invention................................. 3

        C.      Where the Intrinsic Evidence Unambiguously Describes the Scope
                of the Invention, Reliance on Extrinsic Evidence is Improper ..................... 3

        D.      Extrinsic Evidence May Be Considered Only When the Intrinsic
                Evidence is Insufficient to Unambiguously Describe the Scope
                of the Invention ................................................................ 4

        E.      It is Improper to Limit Claims Scope to the Description of the Preferred
                Embodiment or the Drawings ...................................................... 5

        F.      Claims Are Not Restricted by the Patentee Absent a Showing of Manifest
                Expression of Restriction...................................................... 5

IV.     ARGUMENT ............................................................................... 6

        A.      Agreed-Upon Constructions ....................................................... 7

        B.      The Parties Disagree About the Court's Previous Claim
                Construction for the Term "Financial Card" ...................................... 8

        C.      The Court Should Adopt the Plain Meaning for the
                Terms "applicant using a computer," "computer user,"
                "financial card applicant using a computer," and
                "public network computer user" ................................................. 11

        D.      This Court Should Reject LendingTree's Attempt to
                Import a Calculation Requirement into the Terms
                "assigning a financial risk rating"; "assigning a rating to
                said computer user based on said analyzing of said
                application data"; "providing a rating for said financial

i

card applicant"; "rating determined in accordance with
said application data concerning said financial card
applicant and said data from said third party sources";
and "grading system process" ................................................................. 12

    E.    LendingTree Inappropriately Imports a "Terms"
Limitation Into Its Proposed Constructions for
"Financial Card Data" and "Financial Offering Data" ................................ 16

    F.    The Court Should Adopt the Plain Meaning for the
Term "Prompting an Applicant Using a Computer"..................................... 18

IV.    CONCLUSION....................................................................................................... 18

**LIST OF EXHIBITS**

A.      U.S. Patent No. 7,310,617

B.      Listing of the Parties Claim Term Positions with Respect to the '617 Patent

C.      Discover Card - "Paper or Plastic? Two Ways to Access Your Account!"

D.      Wachovia Bank Glossary – "Access Checks"

E.      LendingTree Smart Borrower Center Web Page

# TABLE OF AUTHORITIES

**Cases**

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
132 F.3d 706 (Fed. Cir. 1997)................................................................ 4

*Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ................................. 17

*Boehringer Ingelheim Vetmedica, Inc v. Schering-Plough Corp.*,
320 F.3d 1339 (Fed. Cir. 2003)................................................................ 4

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553 (Fed. Cir. 1995)................... 2

*Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339 (Fed. Cir. 2000)........................................ 4

*Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948 (Fed. Cir. 1993)..................................... 5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111, 1119 (Fed. Cir. 2004) .................................................... 17

*Interactive Gift Express v. CompuServe Inc.*, 256 F.3d 1323 (Fed. Cir. 2001) ................. 4

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050 (Fed. Cir. 1989) ...................... 13

*Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709 (Fed. Cir. 1998).................................. 4

*Laitram Corp. v. Cambridge Wire Cloth Co.*, 863 F.2d 855 (Fed. Cir. 1998) .................. 5

*Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996) ......................................... 2

*Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) .......... 17

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*,
370 F.3d 1354 (Fed. Cir. 2004)................................................................ 4

*Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384 (Fed. Cir. 2002)................. 4

*Moba v. Diamond Automation, Inc.*, 325 F.3d 1306 (Fed. Cir. 2003)............................... 3

*Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005).................................................... 3

*Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901 (Fed. Cir. 2005) ................ 5

*Prima Tek II, L.L.C. v. Polypap, S.A.R.I.*, 412 F.3d 1248 (Fed. Cir. 2005)...................... 5

Case 4:01-cv-01007-ODS   Document 107   Filed 10/30/08   Page 5 of 25

*Specialty Composites v. Cabot Corp.*, 845 F.2d 981 (Fed. Cir. 1988) ............................... 5

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) .......................... 3, 4

*White v. Dunbar*, 119 U.S. 47 (1886) ................................................................................3

**Other**

*Miriam-Webster's Online Dictionary* ..............................................................................15

Case 4:01-cv-01007-ODS   Document 107   Filed 10/30/08   Page 6 of 25

# I.     INTRODUCTION

This matter arose from a September 14, 2001 complaint for infringement of U.S. Patent No. 6,014,645 ('645 patent). On September 27, 2007, this Court issued its Claim Construction Order construing the terms of the '645 patent. Docket Item ("D.I.") 62. Following that Order, a subsequent patent, United States Patent No. 7,310,617 ("the '617 patent") (Ex. A), issued to Block. The '617 patent was added to this case following a declaratory judgment action filed by LendingTree. The parties disagree about the meaning of certain claim terms within the '617 patent and ask this Court to construe them.

Pursuant to the Modified Scheduling Order for the consolidated action, Plaintiff Block Financial Corporation ("Block") submits this brief in support of its proposed constructions for the disputed claim terms of the '617 patent. Block respectfully submits that the legal interpretations set forth in this brief represent the accurate scope of the claimed invention as described in the '617 patent.

# II.    HISTORY OF THE '617 PATENT

## A.     U.S. Patent No. 7,310,617

The '617 patent issued on December 18, 2007 from U.S. Patent Application Ser. No. 09/323,715, filed June 1, 1999 as a continuation of U.S. Patent Application Ser. No. 08/635,334, filed April 19, 1996, the application leading to U.S. Pat. No. 6,014,645. Aside from their respective claims, the '645 and the '617 patent share a common specification.

The '617 patent, entitled Real-Time Financial Card Offer and Application System, discloses a system for presenting financial offers to potential customers. Applicant selection criteria and financial offer data are provided by participating financial institutions to a computer system. An applicant interested in applying for a new loan or financial card accesses the system

1

via the Internet/World Wide Web. The applicant provides personal and financial data. A rating is assigned to the applicant in accordance with that information and in conjunction with data from outside sources (such as credit bureaus). The rating is compared with the selection criteria from the participating financial institutions to locate financial offers appropriate for the applicant. The applicant then peruses the offers and chooses one that meets his or her personal needs. The applicant's data may then be forwarded for processing to the participating financial institution that made the selected offer.

### B. This Court Has Previously Construed Many Claims of the '617 Patent

The claims in the '617 patent share common features and terminology with claims in the '645 patent. For example, the '617 has claims directed to electronic or computerized methods for applying for financial offerings. Accordingly, many of the claim terms previously construed, such as "rating," "financial card," and "offer" can also be found in the asserted claims within the '617 patent. Accordingly, Block submits that the Court's previous Claim Construction Order is applicable for the common terms.

## III. LEGAL STANDARD FOR CLAIM CONSTRUCTION

### A. Claim Terms are Generally Afforded Ordinary Meaning

The claims of a patent set forth the metes and bounds of the patentee's intellectual "property." When there is a genuine dispute as to the meaning of claim language, the Supreme Court has explained that construction of the disputed claim is a task best left to judges. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "The duty of the trial judge is to determine the meaning of the claims at issue, and to instruct the jury accordingly." *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 64 F.3d 1553, 1555 (Fed. Cir 1995) (citations omitted).

2

"[T]he claims of the patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*) (citation omitted). "Because the patentee is required to 'define precisely what his invention is,' it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips*, 415 F.3d at 1312 (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)).

The words of a claim are generally given their ordinary and customary meaning. *Phillips*, 415 F.3d at 1312. The "ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id*. at 1313. However, the Federal Circuit has also emphasized the importance of the specification. "[T]he specification 'is always highly relevant to the claim construction analysis. Usually it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (*quoting Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). A court is authorized to review extrinsic evidence, such as dictionaries, inventor testimony, and learned treaties. *Phillips*, 415 F.3d at 1317.

**B.      Claim Terms are to be Construed as Understood by One of Ordinary Skill in the Art at the Time of the Invention**

A court must ascertain the meaning of the claim terms to one of ordinary skill in the art at the time of invention. *Moba v. Diamond Automation, Inc.*, 325 F.3d 1306, 1315 (Fed. Cir. 2003).

**C.      Where the Intrinsic Evidence Unambiguously Describes the Scope of the Invention, Reliance on Extrinsic Evidence is Improper**

"When construing a patent claim, a court should consider: (1) the language of the claim; (2) the specification contained in the patent; and (3) the prosecution history." *Id*. In other words the

3

Court should start with the "intrinsic evidence" to define the meaning of disputed claim terms. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). As the Federal Circuit has noted, "in most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention." *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). In addition to providing contemporaneous technological context for defining claim terms, the patent applicant may also define a claim term in the specification "in a manner inconsistent with its ordinary meaning." *Id.* (citing *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1347 (Fed. Cir. 2003)). Additionally, during prosecution, a patent applicant's consistent usage of a term in the patent may limit or otherwise provide the definition of that term. *Middleton, Inc. v. Minn. Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

If the meaning of the claim limitations is apparent from the totality of the intrinsic evidence, then the claim has been construed. *Interactive Gift Express v. CompuServe Inc.*, 256 F.3d 1323 (Fed. Cir. 2001). "In those cases where the public record unambiguously describes the scope of the patented invention, reliance on any extrinsic evidence is improper." *Vitronics*, 90 F.3d at 1583. I, however, a claim limitation is still not clear, we may look to extrinsic evidence to help resolve the lack of clarity.

### D. Extrinsic Evidence May Be Considered Only When the Intrinsic Evidence is Insufficient to Unambiguously Describe the Scope of the Invention

Resort to extrinsic evidence is "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence." *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997); *see also Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000); *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998); *Vitronics*, 90 F.3d at 1583-84. "Such instances will rarely, if ever, occur." *Vitronics*, 90

4

F.3d at 1585. In the present case, the intrinsic evidence consisting of the '617 patent, as well as

portions of the reexamination file history, unambiguously supports the claim construction set forth

in this claim construction brief.

    **E.**    **It is Improper to Limit Claim Scope to the Description of the Preferred Embodiment or the Drawings**

    "[I]t is well established that broad claims supported by the written description should not

be limited in their interpretation to a preferred embodiment," *Laitram Corp. v. Cambridge Wire*

*Cloth Co.*, 863 F.2d 855, 865, 9 U.S.P.Q.2d (BNA) 1289, 1299 (Fed. Cir. 1988) ("References to

a preferred embodiment, such as those often present in a specification, are not claim

limitations."). Just as it is not proper to limit claims scope based upon the description provided

in the preferred embodiment, it is likewise improper to limit claim scope to drawings in a patent.

*Playtex Prods., Inc. v. Procter & Gamble Co.*, 400 F.3d 901, 907 (Fed. Cir. 2005).

    **F.**    **Claims Are Not Restricted by the Patentee Absent a Showing of Manifest Expression of Restriction**

    The Federal Circuit Court of Appeals has consistently held that "[t]he claims of the patent

will not be read restrictively unless the patentee has demonstrated a clear intention to limit the

claim scope using words or expressions of manifest exclusion or restriction." *Prima Tek II,*

*L.L.C. v. Polypap, S.A.R.I.*, 412 F.3d 1284, 1289 (Fed. Cir. 2005) (citations omitted).

    Furthermore, "[i]t is improper for a court to add 'extraneous' limitations to a claim, that

is, limitations added wholly apart from any need to interpret what the patentee meant by

particular words or phrases in the claim." *See Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948,

950, 28 U.S.P.Q.2D (BNA) 1936, 1938 (Fed. Cir. 1993); *see also Specialty Composites v. Cabot*

*Corp.*, 845 F.2d 981, 987, 6 U.S.P.Q.2d (BNA) 1601, 1605 (Fed. Cir. 1988) ("Where a

specification does not require a limitation, that limitation should not be read from the

specification into the claims.").  In this matter, there is no evidence that the patentee expressly limited or otherwise restricted the definitions of any claim terms.

**IV.     ARGUMENT**

In its Claim Construction Order for the '645 patent (D.I. 62), this Court construed many terms that also appear within claims of the '617 patent.  Furthermore, the application giving rise to the '617 patent shares a common specification with the parent application that gave rise to the '645 patent.  Accordingly, Block asserts that the Court's Order construing the '645 patent terms also applies to common terms in the '617 patent.

Block and LendingTree have agreed upon proposed constructions for certain claim terms.  A summary of the parties' proposed definitions for the disputed claim terms for the '617 patent are listed in Exhibit B.  However, the parties disagree about several categories of terms from the '617 patent, and those claims need construction by this Court.  First, the parties disagree about the Court's previous construction for the term "financial card." Second, the parties dispute whether or not the plain meaning of the following terms is sufficient:

"applicant using a computer,"

"computer user,"

"financial card applicant using a computer," and

"public network computer user."

6

Third, the parties dispute whether or not the following terms should be construed to include a calculation requirement:

"assigning a financial risk rating,"

"assigning a rating to said computer user based on said analyzing of said application data,"

"providing a rating for said financial card applicant,"

"rating determined in accordance with said application data concerning said financial card applicant and said data from said third party sources, " and

"grading system process."

Finally, the parties dispute the need to construe the term "prompting and applicant using a computer."

Based on communications with counsel for LendingTree, Block understands that the remaining terms of the patent claims at issue do not require construction by the Court. In the event that other claim terms become disputed, Block reserves the right to request the opportunity to supplement this brief.

## A.    Agreed-Upon Constructions

Block and LendingTree have agreed to constructions for certain terms in the '617 patent and request that the Court construe those terms accordingly:

- The parties agree that the term "financial offering(s)" means "a financial product"

- The parties agree that the term "presented to the applicant in a single computer display" means "presented in one or more screens on a computer."

- The parties agree that the Court should adopt the plain meaning for the following terms;

  o "credit history data"

7

o "selection criteria"

o "the applicant may make a selection"

o "uploading said modified financial card data"

o "identifier"

o "public computer network site"

o "public network site"

In its previous Claim Construction Order, the parties agree that the Court construed at least the following relevant terms:

- "financial card offer(s)" means "an invitation to accept a financial card"

- "financial risk rating" means "a value or measure of financial risk"

- "grade/score" means "a ranking and tally"

The parties agree that the phrase "terms for at least one financial card offer" should be treated as equivalent to the previously construed term "financial card terms" that was construed to mean "terms that relate to a financial card offer, e.g., type of offer, interest rate, fees, APR, credit limit, incentive programs, etc., that are pre-set by the financial institution and presented to consumers for consideration in deciding whether to accept the offer."

### B. The Parties Disagree About the Court's Previous Claim Construction for the Term "Financial Card"

In the previous Claim Construction Order, this Court stated unambiguously "the Court has little difficulty concluding that the ordinary meaning of this phrase refers to a tangible piece of plastic *or other material*, possession and ownership of which entitles the owner to credit or other sources of money." *See* D.I. 62 at 4 (emphasis added). The Court went on to say that "[t]his ordinary understanding of the phrase is confirmed by its usage in the patent and other components of the prosecution history." *Id*. Despite this clear recitation, LendingTree refuses to

accept this construction. Instead, LendingTree insists that the Court adopted its original proposal without modification. Block disagrees.

Block submits that the Court did not adopt LendingTree's original proposal entirely. Instead, the Court specifically recited and adopted the ordinary meaning of this phrase in the second paragraph of page 4 in the Claim Construction Order. *Id*. ("[T]his phrase refers to a tangible piece of plastic *or other material*, possession and ownership of which entitles the owner to credit or other sources of money." (emphasis added)). In contrast, LendingTree's proposed definition recites "a tangible piece of plastic *or similar material* issued by a financial institution that authorizes the cardholder to purchase goods and services on credit or by debiting a bank account, for example, a credit card or debit card." *Id*. (emphasis added)

Block's understanding of the Court's language is consistent with the reasoning in the Order. In reaching its construction for the term "financial card," the Court set forth the following parameters for a financial card, reciting:

> . . . . All of these references contemplate the "financial card" as a tangible item, and further contemplate the receipt of the financial card as both a necessary part of, and the culmination of, the process. In context, the card does not merely represent a token confirming a financial relationship, but is the means by which financial transactions are to be conducted. Therefore, not all acquisitions of credit (or other accesses to money) are described; only those that can be accessed via the use of a "financial card" are described. *Id*. at 5.

While the Court specified in its Order that that the financial card must be a tangible item, the Court did not go so far as to say that a financial card must always be plastic.

Using the Court's parameters, a "financial card" must be a tangible item, and the means by which the relevant financial transactions are to be conducted. *Id*. Later in its Order, the Court

stated that the tangible object must be "more than a mere talisman confirming a contractual relationship between the customer and the financial institution." *Id*. at 7.

The Court's conclusion about the ordinary meaning for the term "financial card" is consistent with current and historical practices in the credit industry as well as LendingTree's own business practices. With respect to credit cards, for example, it is well known that most issuing banks allow customers to draw funds on the line of credit using either paper or plastic instruments. *See* Exhibit C ("Paper or Plastic, two ways to access your account"); Exhibit D (Wachovia Bank's Glossary - "Access Checks**:** Checks available to a cardholder to access the line of credit on the cardholder's credit card account. For example, cardholders can use access checks for home improvement projects, to pay taxes, or for holiday shopping.").

Many lenders allow their customers to access lines of credit (such as a personal line of credit or a home equity line of credit) using either paper or plastic instruments. For example, in describing the Home Equity Line of Credit Products offered over the LendingTree Exchange, LendingTree's own borrower education web pages state that the Home Equity Line of Credit funds may be accessed using either paper or plastic instruments. Exhibit E at 2 ( "How you receive the Money - You draw funds as needed, using special checks or a credit card").[1]

The Court's construction of "financial card" is appropriate because it is inclusive of tangible, non-plastic financial cards used to access credit or other sources of money. Consistent with the Court's parameters for a financial card, either paper or plastic payment instruments are tangible objects. Furthermore, whether paper or plastic (or any other material), both of the cited instruments are more than a talisman confirming the contractual relationship between the

---

[1] After Block brought this to LendingTree's attention, the web page has since been changed to recite "you draw funds as needed, typically using special checks." *See* http://www.lendingtree.com/beta/home-equity-loans/advice/choosing-a-loan/equity-loan-vs-line-of-credit/ (last visited October 27, 2008).

customer and the financial institution. Indeed, both instruments are the means by which financial transactions are conducted.

Accordingly, Block respectfully requests that the Court make clear to LendingTree that the term "financial card" was previously construed as "a tangible piece of plastic or other material, possession and ownership of which entitles the owner to credit or other sources of money."

## C.    The Court Should Adopt the Plain Meaning for the Terms "applicant using a computer," "computer user," "financial card applicant using a computer," and "public network computer user"

Block requests that the Court adopt the plain meaning for the phrases "applicant using a computer," "computer user," "financial card applicant using a computer," and "public network computer user." In Block's view, the plain meaning of all of these phrases is abundantly clear to one of ordinary skill in the art and laymen alike. Therefore, Block submits that further clarification is unwarranted.

The crux of the dispute between the parties is whether or not the phrase "computer user" is sufficiently precise. LendingTree's proposals should be rejected because they do not clarify the referenced terms and instead risk confusion by focusing inappropriately on the source of information. For example, LendingTree's definition for the term "applicant using a computer" uses the phrase "receiving information from a computer."

For an applicant using a computer linked to the Internet, it is not necessarily appropriate to say that information viewed on the computer is "information received from a computer." Instead, it is possible that the information originated from a remote server, or even further upstream, from an entity entering that information into a computer. Furthermore, when an applicant or a computer user enters information, it may be received by the local computer, a

11

remote server, or some other computerized device. In any event, the discussion is simply unnecessary for the construction of these terms because a person of ordinary skill would understand what is meant by a "computer user."

Block contends that all the above terms, standing on their own, accurately convey unmistakable meanings to one of ordinary skill in the art. The claim terms are not highly technical. They are not directed to describing sources of information. Instead, the terms are directed to identifying the applicant's or computer user's use of a computer. Therefore, Block asks the Court to adopt the plain meaning of the referenced terms.

     **D.**     **This Court Should Reject LendingTree's Attempt to Import a Calculation Requirement into the Terms "assigning a financial risk rating"; "assigning a rating to said computer user based on said analyzing of said application data"; "providing a rating for said financial card applicant"; "rating determined in accordance with said application data concerning said financial card applicant and said data from said third party sources"; and "grading system process"**

For the terms above, Block disputes LendingTree's attempt to impose a calculation requirement into the constructions of the terms above. *See* D.I. 62 at 12. First, such an import is contrary to the reasoning in the Court's previous Claim Construction Order. Second, such an import goes beyond the ordinary meaning of the terms. Finally, as before, LendingTree is again incorrectly importing limitations from an embodiment contained in the specification.

In its Markman briefs for the '645 patent, LendingTree attempted to impose a calculation step into the term "rating." *Id.* However, the Court rejected that attempt because, as the Court stated, "a necessary corollary of [a calculation requirement] is the existence in the specification of a list of criteria that must be considered in establishing the rating, but no such list exists." *Id.* at 11. Having failed to import a calculation requirement into the term rating, LendingTree now tries another bite at the apple by importing the same into the terms "assigning," "providing," or

"determined in accordance with." LendingTree's attempt to undo the previous Claim Construction Order should be rejected.

The terms "assigning," "providing," or "determined" possess ordinary meanings. Although those meanings can be expressed in a number of different ways, none include a calculation requirement. Accordingly, to import such a requirement subverts the ordinary meaning of the terms.

Finally, LendingTree's suggested definition imports limitations from exemplary embodiments. When looking to the specification to construe claim terms, care must be taken to avoid reading limitations from the specification into the claims themselves. *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989). The patent specification does not provide an adequate basis for importing a calculation requirement into the referenced phrases. Instead, the specification and claims use these terms in an ordinary way. For example, with respect to the term "assigning a financial risk rating to said applicant" in claim 19, one of ordinary skill in the art understands that some value or measure of financial risk gets associated with the applicant.

In arriving at its proposed definition, LendingTree's imports limitations from examples in the specification. However, as the Court stated in its previous Order, "[e]xamples set forth in the in the Preferred Embodiment cannot limit the scope of the Claims." D.I. 62 at 11 (internal citations omitted). Accordingly, the imposition of a calculation requirement, when none exists in the claims, should be rejected.

1.      **"assigning a financial risk rating";**

Block asserts that the appropriate definition for the phrase "assigning a financial risk rating" should be "associating some measure of financial risk to an applicant."

In support of Block's proposed definition, it is notable that LendingTree's proposed definition also uses the term "associating" when describing the connection between the financial risk rating and the applicant. However, as previously discussed above, LendingTree's proposal inappropriately imports a calculation requirement into this phrase.

### 2. "assigning a rating to said computer user based on said analyzing of said application data"

Block asserts that the appropriate definition for the phrase "assigning a rating to said computer user based on said analyzing of said application data" should be "associating a value or measure to a computer user based on an analysis of application data."

In support of Block's proposed definition, it is notable that LendingTree's proposed definition also uses the term "associating" when describing the connection between the rating and the computer user. However, as previously discussed above, LendingTree's proposal inappropriately imports a calculation requirement into this phrase.

### 3. "providing a rating for said financial card applicant"

Block contends that, in view of those terms previously construed, the Court should adopt the plain meaning for the phrase "providing a rating for said financial card applicant." In the alternative, Block proposes that the term should be construed as "associating a rating with a financial card applicant." LendingTree's definition is objectionable because it incorrectly imposes a calculation requirement into terms that do not ordinarily contain this meaning.

### 4. "rating determined in accordance with said application data concerning said financial card applicant and said data from said third party sources"

Block contends that, in view of those previously construed terms, the Court should adopt the plain meaning for the phrase "rating determined in accordance with said application data concerning said financial card applicant and said data from said third party sources."

14

Merriam-Webster's Online Dictionary defines the term "accordance" as, "agreement" or "conformity," and gives a contextual example of "in *accordance* with a rule." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/accordance (last visited October 27, 2008). Therefore, the ordinary meaning of the claim phrase refers to a value or measure determined in agreement or conformity with application data and data from third party sources. However, the ordinary meaning of this phrase does not contain or impose a calculation step as a necessary prerequisite for determining a rating.

      **5.**     **"grading system process"**

Block contends that, in view of those previously construed terms, the Court should adopt the plain meaning for the phrase "grading system process."

In describing an embodiment utilizing a grading system process the specification recites the following:

> A "grading system" process 48 may be employed which uses the application data, as well as other data, as input to determine which financial card offers may be presented to the applicant. *Preferably*, the grading system assigns a grade/score to the applicant by using the application data and other information such as credit bureau data to derive a letter grade and a numerical score (e.g., A-760).

Col. 4, ll. 22-28 (emphasis added).

From that description it is clear that the "grading system process" broadly encompasses any process that uses application data, as well as other data, as input to determine which financial offers may be presented to an applicant. While a preferred embodiment utilizes a calculated grade/score, that example is merely one manner the grading system process may be implemented.

15

E.    **LendingTree Inappropriately Imports a "Terms" Limitation Into Its
      Proposed Constructions for "Financial Card Data" and "Financial Offering
      Data"**

Block contends that the terms "financial card data" should be defined as "information

related to a financial card.  Similarly, "financial offering data" should be defined as "information

related to a financial offering."  Given that the term "financial card" was previously construed by

the Court, and the parties now agree on the meaning of the term "financial offering," the dispute

boils down to the term "data."  Block's straightforward definitions are supported by the patent

specification and also by a common understanding of the term "data."

The term "data" should be defined as information.  Indeed, within the specification the

term "data" is used synonymously with the term "information."  *See* Col. 2, ll. 62-65 ("Once

connected to the site, users interact with HyperText Markup Language (HTML) documents to

provide application *data* (personal and financial *information*) and to review . . .") (emphasis

added); *see also*, Col. 4, ll. 14-16 ("The process begins when a user (applicant) completes an

application 40 by providing personal and financial *information* (application *data*) 42.) (emphasis

added).  Therefore, the intrinsic evidence supports Block's definition of "data" as "information."

To arrive at its proposed construction, LendingTree inappropriately equates the

previously construed term "financial card terms" with the claim terms at issue.  In the Claim

Construction Order, the Court concluded that "financial card terms" are "terms that relate to a

financial card offer, e.g., type of offer, interest rate, fees, APR, credit limit, incentive programs,

etc., that are pre-set by the financial institution and presented to consumers for consideration in

deciding whether to accept the offer." See D.I. 62 at 9.  Substantively indistinguishable,

LendingTree's definition for the term "financial card data" is "data that relate to a financial card

*and include terms for the financial card*, e.g., type of card, interest rate, fees, APR, credit limit,

incentive programs, etc., that are pre-set by the financial institution and presented to consumers for consideration in deciding whether to select the card." *See* Ex. B (emphasis added).

In equating the terms above, LendingTree fails to recognize that central to the Court's ruling regarding the claim construction for "financial card terms" was the word "terms." *See* D.I. 62 at 9 ("Language in the '645 Patent suggest the 'terms' consist of information perused and considered by the consumer, not the financial institution.").

The word "terms" is found nowhere in the claims at issue. Therefore, LendingTree's proposed definitions render the word "terms" superfluous in other claim terms. The words in a claim are presumed to have some meaning, and so any interpretation that renders the words of a claim meaningless or superfluous is generally considered incorrect. *See,e.g.*, *Bicon, Inc. v. Straumann Co*., 441 F.3d 945, 950 (Fed. Cir. 2006); *Merck & Co. v. Teva Pharms. USA, Inc*., 395 F.3d 1364, 1372 (Fed. Cir. 2005). Therefore, "when an applicant uses different terms in a claim, it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc*., 381 F.3d 1111, 1119 (Fed. Cir. 2004) (citing cases). Therefore, LendingTree's proposal is presumptively objectionable.

Finally, LendingTree's definition is in conflict with the claim language in the '617 patent. For example, when financial card data specifically comprises financial card terms the claims so indicate. *See* '617 Patent, Claim 1 (a), (". . . said financial card data <u>comprising</u> terms for at least one financial card offer . . .") (emphasis added). In contrast, the claims do not so limit the term "financial offering data." *See* '617 Patent, Claim 11. Accordingly, although the term financial card data and financial offering data are broad enough to encompass financial card terms and financial offering terms, respectively, they do not require the elements.

### F.      The Court Should Adopt the Plain Meaning for the Term "Prompting an Applicant Using a Computer"

Block requests that the Court adopt the plain meaning for the phrases "prompting an applicant using a computer."  In relation to computers, the term "prompting" has an unmistakable meaning clear to one of ordinary skill in the art and laymen alike.  Therefore, further clarification is unwarranted and the plain meaning of the phrase is sufficient.

LendingTree's definition is unnecessarily rigid because it demands that "prompting" necessarily involves "displaying questions to an application on a computer display."  However, as most anyone using a computer or the Internet will recognize, a computer prompt need not necessarily involve a question.  For example, a prompt may appear on a computer screen stating, "Please print this form for your records" or "You need to update your anti-virus software." Although the action of prompting may certainly involve the displaying questions or choices to an applicant, it does not necessarily have to.  Accordingly, Block requests that the Court reject LendingTree's proposal in favor of the plain meaning of the recited term.

## V.      CONCLUSION

For the foregoing reasons, Block respectfully requests the Court adopt its proposals for the disputed terms contained herein.

Respectfully submitted,


  /s/ F. Michael Speed, Jr.
Jeffrey S. Standley (Admitted *Pro Hac Vice*)
F. Michael Speed, Jr. (Admitted *Pro Hac Vice*)
Mark R. Engle (Admitted *Pro Hac Vice*)
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH  43017-5319
Tel.:  614-792-5555
Fax:  614-792-5536
jstandley@standleyllp.com

mspeed@standleyllp.com
mengle@standleyllp.com

Mark W. Brennan (Missouri Bar. No. 39117)
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, MO  64015-2100
Tel.:  816-374-3200
Fax:  816-374-3300
mwbrennan@bryancave.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 30, 2008, a true and accurate copy of

the foregoing was filed electronically with the Court using the CM/ECF system which sent

notification of such filing to all counsel of record.

 /s/ F. Michael Speed, Jr.