# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 01-1007-cv-ODS |
| LENDINGTREE, LLC, | ) ) | |
| Defendant. | ) ) | |
| LENDINGTREE, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 08-cv-164-ODS |
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") and DOES 1 through 10, inclusive, | ) ) ) ) | |
| Defendants. | ) | |

**LENDINGTREE, LLC'S SUGGESTIONS IN SUPPORT OF LENDINGTREE, LLC'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. SECTION 101 FOR FAILURE TO CLAIM PATENT-ELIGIBLE SUBJECT MATTER**

# TABLE OF CONTENTS

Page

I.  Introduction ........................................................................................................ 1

II. Statement of Uncontroverted Material Facts ................................................... 2

    A.  U.S. Patent No. 6,014,645 ......................................................................... 3

    B.  U.S. Patent No. 7,310,617 ......................................................................... 5

    C.  Claims at Issue in This Motion .................................................................. 6

        1.  The '645 Patent (Claims 11, 12, 14-24, 26-31, 33) .................................... 6

            a)  Independent Claim 11 ................................................................. 6

            b)  Independent Claim 21 ................................................................. 7

            c)  Independent Claim 27 ................................................................. 8

            d)  Independent Claim 28 ................................................................. 9

        2.  The '617 Patent (Claims 1, 3-11, 13-19, 21-25) ....................................... 10

            a)  Independent Claim 1 ................................................................. 10

            b)  Independent Claim 6 ................................................................. 11

            c)  Independent Claim 10 ............................................................... 12

            d)  Independent Claim 11 ............................................................... 13

            e)  Independent Claim 19 ............................................................... 15

III. Legal Standard ................................................................................................ 17

    A.  Summary Judgment ................................................................................. 17

    B.  Patent-Eligible Subject Matter Under 35 U.S.C. § 101 ......................... 17

IV. Argument ......................................................................................................... 19

    A.  Block's Claimed Process Does Not Transform a Particular Article Into a Different State or Thing. ........................................................................... 19

        1.  The manipulation of financial information does not satisfy the "transformation" test. ............................................................................... 20

i

2.    The specific functions set forth in the claims do not satisfy the transformation test. .................................................................................. 21

3.    Presentation of Financial Offers to an Applicant Does Not Involve Any Representation of a Specific Physical Object. ................................ 23

B.    Block's Claimed Process Is Not Tied to a Particular Machine............................ 23

1.    Inclusion of the term "computer" or "computer user" on the client side fails to tie the claimed invention to a particular machine................ 24

2.    References to the "World Wide Web" and/or a "public network" fail to tie the claimed invention to a particular machine.......................... 25

3.    Generic References to "Database," and/or "Device for Accessing Data" on the Server Side Also Fail to Tie Block's Claimed Process to a Particular Machine. ......................................................................... 28

C.    Mere Extra-Solution Activity Cannot Redeem the Patents-In-Suit...................... 30

D.    The Machine-or-Transformation Test Applies to All of the Block Claims.......... 33

V.    Conclusion ...................................................................................................................... 35

# TABLE OF AUTHORITIES

Page

CASES

*Air Turbine Tech., Inc. v. Atlas Copco AB*,
    410 F.3d 701 (Fed. Cir. 2005)................................................................17

*AT&T Corp. v. Excel Commc'ns, Inc.*,
    172 F.3d 1352 (Fed. Cir. 1999)..................................................29, 32, 33

*Clinton v. Jones*,
    520 U.S. 681 (U.S. 1997)..........................................................................2

*Cybersource Corp. v. Retail Decisions, Inc.*,
    No. C 04-03268 MHP, 2009 U.S. Dist. LEXIS 26056 .................. passim

*Diamond v. Diehr*,
    450 U.S. 175 (1981)................................................................................34

*Every Penny Counts, Inc. v. Bank of Am. Corp.*,
    No. 2:07-cv-042, slip op. at 3-5 (M.D. Fl. May 27, 2009) ....................35

*Ex Parte Arning*,
    2009 WL 871123 (B.P.A.I. March 30, 2009) .........................................21

*Ex Parte Atkin*,
    2009 WL 247868, No. 2008-4352, slip op. (B.P.A.I. Jan. 30, 2009) ...............20, 35

*Ex Parte Cornea-Hasegan*,
    2009 WL 86725, No. 2008-4742, slip op. (B.P.A.I. Jan. 13, 2009) .......25

*Ex Parte Daughtrey*,
    2009 WL 963938 (B.P.A.I. April 8, 2009) .............................................33

*Ex Parte Enenkel*,
    2009 WL 924475 (B.P.A.I. April 6, 2009) ..............................23, 25, 35

*Ex Parte Godwin*,
    2008 WL 4898213, No. 2008-0130, slip. op. (B.P.A.I. Nov. 13, 2008)...........28, 35

*Ex Parte Gosby*,
    2007 WL 2843739 (B.P.A.I. Sept. 28, 2007) ...........................28, 30, 31

*Ex Parte Hanam*,
    2008 WL 367507 (B.P.A.I. Feb. 11, 2008) ............................................28

*Ex Parte Harris*,
   2009 WL 86719, No. 2007-0325, slip op. (B.P.A.I. Jan. 13, 2009) .......................................28

*Ex Parte Isaacson*,
   2009 WL 505455, No. 2008-1884, slip op. at 6 (B.P.A.I. Feb. 26, 2009)..............................29

*Ex Parte Mitchell*,
   2009 WL 460662, No. 2008-2012, slip op. at 6-7, 10-11 (B.P.A.I. Feb. 23, 2009)..............29

*Ex Parte Monroe*,
   2008 WL 2856364, No. 2008-0845, slip op. (B.P.A.I. July 24, 2008)....................................21

*Ex Parte Motoyama*,
   2009 WL 524946, No. 2008-2753, slip op. (B.P.A.I. Feb. 27, 2009)...............................22, 32

*Ex Parte Schaar*,
   2009 WL 1153368 (B.P.A.I. April 28, 2009) .......................................................................32

*Gottschalk v. Benson*,
   409 U.S. 63 (1972)................................................................................................................25

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008), *cert. granted, Bilski v. Doll*, __ S.Ct.__, 2009 WL
   221232, No. 08-964 (June 1, 2009) ................................................................................ passim

*In re Ferguson*,
   No. 2007-1232, 2009 U.S. App. LEXIS 4526 (Fed. Cir. March 6, 2009)..............................24

*In re Grams*,
   888 F.2d 835 (Fed. Cir. 1989)........................................................................................25, 31

*In re Meyer*,
   688 F.2d 789 (C.C.P.A. 1982) .............................................................................................34

*In re Nuijten*,
   500 F.3d 1346 (Fed. Cir. 2007)......................................................................................17, 24

*In re Sarkar*,
   588 F.2d 1330 (C.C.P.A. 1978) ...........................................................................................34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)..............................................................................................................17

*Parker v. Flook*,
   437 U.S. 584 (1978)................................................................................................24, 26, 31

*Resonate Inc. v. Alteon Websys., Inc.*,
   338 F.3d 1360 (Fed. Cir. 2003)............................................................................................27

*Tyler v. Harper*,
    744 F.2d 653 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985) ........................................17

*Williams v. City of St. Louis*,
    783 F.2d 114 (8th Cir. 1986) ....................................................................................17

**STATUTES**

35 U.S.C. § 101 .................................................................................................... passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 56(e) .............................................................................................17

## I.     Introduction

The patents at issue in this case claim nothing more than an algorithm for locating financial offers from multiple lenders by comparing information about an applicant with information about available financial offerings.  As such, they are invalid under 35 U.S.C. § 101. Once the jargon of the claim language is put to one side, these patents do nothing more than claim the matching of applicants with financial offerings based on their financial risk and/or credit profile; applicants with better credit histories and/or financial risk profiles can obtain more advantageous offerings, those with weaker credit histories or risk profiles obtain less advantageous offerings.   It is as broad and abstract a business method as one might devise.

When the Patent Office first looked at the claims at issue, it understandably rejected them as failing to claim patentable subject matter under Section 101 of the Patent Act. As construed by the courts, that provision bars patents on mere abstractions.   Under the liberal legal standards of the day, however, it was possible to obtain a patent for such a general and abstract business method.  All that was necessary was that the applicant contend that its patent would generate a "useful, concrete, and tangible result."   That is precisely what the applicant told the Patent Office to overcome the Section 101 rejection of Block's claims.

That was then.  In 2008, in an *en banc* opinion, the Federal Circuit clarified that the precise argument that was used to obtain the patents at issue here cannot stand.   It held that when a claimed process is neither (1) tied to a particular machine or apparatus nor (2) transforms a particular article into a different state or thing, it is drawn to improper subject matter and, therefore, is invalid as a matter of law.  *See In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *cert.*

1

*granted, Bilski v. Doll*, __ S.Ct.__, 2009 WL 221232, No. 08-964 (June 1, 2009).[1]  Such is the

case here.  The process claimed in U.S. Patent Nos. 6,014,645 ("the '645 Patent") and 7,310,617

("the '617 Patent") (collectively, "the Block patents") is a non-transformative process that does

not require a particular machine.  It involves merely abstract, intangible concepts of financial

risk, financial relations, financial obligations and rights, and financial offers.  The Block patents

are invalid under the legal standard set forth in *Bilski.*

## II.     Statement of Uncontroverted Material Facts

1.      Block's Complaint and Counterclaim[2] allege that LendingTree's systems infringe U.S.

        Patent No. 6,014,645, entitled "Real-Time Financial Card Application System," and U.S.

        Patent No. 7,310,617, entitled "Real-Time Financial Card Offer and Application

        System."  *See* Complaint at ¶¶ 6-7; Counterclaim at ¶¶ 19-20; *see also* Exhibits A ('645

        Patent) and B ('617 Patent") to the Declaration of Deanna L. Kwong in support of

        LendingTree's Motion for Summary Judgment ("Kwong Dec.").[3]

2.      Block has asserted claims 11, 12, 14-24, 6-31, and 33 of the '645 Patent and claims 1, 3-

        11, 13-19, and 21-25 of the '617 Patent in this action.  Kwong Dec., Exh. C.

---

[1] While writ of certiorari was granted in *Bilski*, the Supreme Court has not vacated the Federal
Circuit's decision and will not rule on *Bilski* until ***after*** the summary judgment motions deadline
in this case and perhaps not until after trial in this case.  Moreover, the present motion is
appropriate now as, unless and until the Supreme Court rules otherwise, *Bilski* is the law.  *See*
*Clinton v. Jones*, 520 U.S. 681, 689 (U.S. 1997) (stating that the court's "decision to grant the
petition [for writ of certiorari] expressed no judgment concerning the merits of the case").

[2] Block's Complaint is Document No. 1, filed in Case No. 01-1007-cv-ODS.  Block's
Counterclaim is Document No. 14, filed in Case No. 08-cv-164-ODS.  On June 24, 2008, the
Court ordered the cases consolidated.  *See* Document Nos. 89 and 90.

[3] For ease of reference, all cites herein to the patents-at-issue are to the "'645 Patent" and the
"'617 Patent," rather than to Exhibits A and B of the Kwong Dec.

### A. U.S. Patent No. 6,014,645

3. The '645 Patent issued from U.S. Patent Application No. 08/635, 334 ("the '334 Application"), filed on April 19, 1996. '645 Patent Cover Page.

4. The '334 Application contained 27 claims as initially filed, 22 of which issued in the '645 Patent in their original form. Kwong Dec., Exh. D-1 at pp. 13-16.[4]

5. In the first Office Action, mailed on July 16, 1998, the USPTO examiner rejected all 27 claims of the '334 Application under § 101, stating as follows:

> Claims 1-27 are rejected under 35 U.S.C. 101 because the claimed invention is directed to non-statutory subject matter.
>
> The present claims are directed to a system with no claimed real world utility. To qualify as statutory material, a claimed invention must show a practical application in the technological arts, i.e. be directed at a better way of performing technology (such as improved communications hardware or software, or communication format or data transfer). This may occur by having post-computer processing activity; or manipulating data to achieve a practical application, or through the claiming of a specific machine or manufacture.
>
> The claimed invention performs abstract operations with no post solution activity. Calculating and storing ratings are mathematical abstractions, as are providing information, determining acceptance, modifying terms, uploading data. A financial card is an abstract concept not defining a real world phenomenon, wherein the "card" is merely a representation of the abstraction therefore merely a model. A real world activity must be performed such as transferring funds based upon that calculation or performing a real world act based upon that calculation.
>
> Printing is merely a modeling of abstract data, and does not qualify as statutory material unless the inventive concept is the printing means or a inventive output format is the claimed invention. Debiting currency account balances based upon those

---

[4] Exhibits D-1 through D-3 to the Kwong Dec. consist of excerpts from the '645 file history. Kwong Dec. ¶ 4.

abstractions is a real world activity. The claimed invention is not directed to statutory subject matter such as a better way of performing communications as improved communications hardware or software, or communications format. There is insufficient nexus in these claims to the specification to qualify as statutory material.

The claims need be brought within statutory subject matter while still being supported by the specification.

Kwong Dec., Exh. D-2 at pp. 2-3.

6.    In response to the examiner's first Office Action, the applicant traversed the § 101

rejection by arguing that the claimed invention produces a "useful, concrete, and tangible

result," stating as follows:

The Examiner has rejected claims 1-27 under 35 U.S.C. § 101 stating the claimed invention is directed to non-statutory subject matter. It is the Examiner's position the claims are directed to a system with no real world utility. The Examiner has further stated that a financial card ". . . is an abstract concept not defining a real world phenomenon . . ." and that a card ". . . is merely a representation of the abstraction therefore merely a model." The Examiner has indicated that "[a] real world activity must be performed. . . ." Applicant has amended claim 1 to indicate clearly that information regarding financial card offers is selected and presented to the applicant so that the applicant may select among the offers presented. Applicant has added claims 28-33 for the Examiner's consideration.

Applicant respectfully traverses the rejections. ***Applicant respectfully submits that the statutory subject matter is anything that produces a <u>useful, concrete, and tangible result</u>.*** Although Applicant's invention may be used to apply for a credit card, it is also directed to financial card offers. Applicant respectfully submits that the distribution, review, and acceptance or rejection of financial card offers is a real world activity. ***Applicant's invention is a technological improvement over current manual methods for distributing, reviewing, and accepting or rejecting offers and it produces a <u>useful, concrete, and tangible result</u>.***

The credit card industry distributes via direct mail literally billions of credit card offers every year. Considerable amounts of time, effort, and money are spent and resources are consumed every year to manually distribute these offers to potential card

4

customers. Customers often throw them away without even reviewing the offers. It is very difficult for credit card companies to determine if their marketing efforts are effective and whether they are soliciting appropriate candidates. Applicant's invention addresses the concerns of both credit card companies and applicants by automating the real world activity of distributing financial card offers. Information is solicited from individuals and financial institutions and calculations are performed to determine which of a plurality of credit card offers are appropriate for an individual. Given the complexity of the processing invoked (storage of financial card data from a plurality of financial institutions, associating ratings with offers, reviewing information entered by applicants and assigning ratings to applicants, comparing financial card data and applicant ratings, presenting offers that meet selection criteria), a computer or its equivalent is required to perform the related tasks. The result is that individual to whom the offers are directed can perform an online, real-time comparison of the various offers to determine which one or ones are most appropriate.

> ***Applicant respectfully submits a system, apparatus, and method for the online presentation of financial card offers meeting specific selection criteria and selecting one or more of the offers is an invention that produces a <u>useful, concrete, and tangible result</u> which render Applicant's invention statutory subject matter under 35 U.S.C. § 101.*** Financial card data and financial application data are converted into new forms for processing so that appropriate offers may be selected and presented to an applicant. The applicant may then apply online for any of the cards associated with the presented offers. Applicant respectfully submits that the automation and simplification of a costly and time-consuming manual activity (distribution of credit card offers) is statutory subject matter.

Kwong Dec., Exh. D-3 at pp. 4-6 (emphasis added).

7.    The '645 Patent issued on January 11, 2000. '645 Patent Cover Page.

**B.    U.S. Patent No. 7,310,617**

8.    The '617 Patent issued on December 18, 2007, and claims priority to the April 19, 1996

filing date of the '334 Application. '617 Patent Cover Page.

5

**C.** **Claims at Issue in This Motion**

**1.** **The '645 Patent (Claims 11, 12, 14-24, 26-31, 33)**

**a)** **Independent Claim 11**

9. Independent claim **11** of the '645 Patent is directed to an "electronic method for applying for a financial card," comprising the following steps:

(a) storing financial institution data for participating financial institutions;

(b) storing financial card term data for each of said participating financial institutions;

(c) providing ratings associated with said financial card term data;

(d) prompting an applicant for application data;

(e) assigning a rating to said applicant;

(f) locating financial card offers, said offers including said financial card term data selected by comparing said rating with an existing schedule assigned to said financial card term data; and

(g) presenting said financial card offers to said applicant.

'645 Patent at 7:18-33.

10. Dependent claim **12** of the '645 Patent adds to the method of claim **11** the step of "determining said applicant's acceptance of at least one of said financial card offers." '645 Patent at 7:34-36.

11. Dependent claim **14** of the '645 Patent adds the requirement that the "rating" in the method of claim **11** is a "financial risk rating." '645 Patent at 7:41-42.

12. Dependent claim **15** of the '645 Patent adds the requirement that the "rating" in the method of claim **11** is a "grade and score combination." '645 Patent at 7:43-44.

13.     Dependent claim **16** of the '645 Patent adds to claim **11** the requirement that "the

         financial card term data are provided by participating financial institutions." '645 Patent

         at 7: 45-46.

14.     Dependent claim **17** of the '645 Patent adds the requirement to claim **16** that the

         "participating financial institutions assign ratings to said financial card term data." '645

         Patent at 7:47-49.

15.     Dependent claim **18** of the '645 Patent adds to claim **16** the requirement that the

         "participating financial institutions may modify said financial card term data and said

         assigned ratings." '645 Patent at 7:50-52.

16.     Dependent claim **19** of the '645 Patent adds to claim **18** "the step of uploading said

         modified financial card term data and said assigned ratings." '645 Patent at 7:53-55.

17.     Dependent claim **20** of the '645 Patent adds to claim **17** "the step of organizing said

         financial card term data and said assigned ratings in a matrix." '645 Patent at 7:56-58.

                          **b)     Independent Claim 21**

18.     Independent claim **21** of the '645 Patent is directed to "[a] method for presenting

         electronic financial card offers on the World Wide Web," comprising the following steps:

                  (a) creating a World Wide Web site, said site associated with an
                  identifier for accessing said site;

                  (b) defining terms for financial cards;

                  (c) associating ratings with said financial card terms;

                  (d) uploading said financial card terms with said associated ratings
                  to said site;

                  (e) defining a rating for a financial card applicant accessing said
                  site using said identifier;

                                          7

(f) locating offers to present to said financial card applicant, said offers located by comparing said financial card applicant rating with said ratings associated with said financial card terms; and

(g) presenting said offers to said financial card applicant.

'645 Patent at 7:59-8:7.

19. Dependent claim **22** of the '645 Patent adds to claim **21** of the '645 Patent "the step of modifying financial card terms and said associated ratings." '645 Patent at 8:9-10.

20. Dependent claim **23** of the '645 Patent adds to claim **19** of the '645 Patent "the step of determining acceptance of at least one of said offers by said applicant." '645 Patent at 8:11-13.

21. Dependent claim **24** of the '645 Patent adds to claim **23** "the step of sending information regarding said applicant to a participating financial institution sponsoring said offer accepted by said applicant." '645 Patent at 8:14-17.

22. Dependent claim **26** of the '645 Patent adds to claim **21** the requirement that the "applicant rating is assigned in accordance with review of personal, financial, and credit bureau data regarding said applicant." '645 Patent at 8:21-23.

### c) Independent Claim 27

23. Independent claim **27** of the '645 Patent is directed to a "financial card application system accessible via the World Wide Web" comprising the following:

a World Wide Web site with at least one server for communicating with a financial card applicant;

at least one database for storing financial card term data and ratings assigned to said financial card term data, said financial card term data and assigned ratings provided by participating financial institutions;

at least one device for accessing data from third party sources;

application data for said financial card applicant;

8

a rating for said financial card applicant, said rating determined in accordance with said application data and data from said third party sources;

financial card offers for said applicant, said offers including said financial card term data and located by comparing said financial card applicant rating with said ratings assigned to said financial card terms; and

a computer display for presenting said financial card offers to said applicant.

'645 Patent at 8:24-45.

### d) Independent Claim 28

24.    Independent claim **28** of the '645 Patent is directed to an "apparatus for presenting financial card offers to an applicant" comprising the following:

at least one server for providing access to financial institution data for a plurality of financial institutions and access to financial card term data for each of said plurality of financial institutions;

a client computer for establishing a connection to said at least one server and entering financial application data to be processed by said at least one server, said financial application data entered by said applicant; and

a processing means at said server for associating a first rating with said financial card term data for each of said plurality of financial institutions, for associating a second rating with said applicant, for comparing said first rating and said second rating, and for presenting to said applicant via said client computer financial card term data for which said second rating is at least equal to said first rating.

'645 Patent at 8:46-64.

25.    Dependent claim **29** of the '645 Patent adds to claim **28** the requirement that the "second rating is a financial risk rating determined in accordance with said financial application data entered by said applicant." '645 Patent at 8:65-67.

9

26. Dependent claim **30** of the '645 Patent adds to claim **28** the requirement that the "second rating is a grade and score combination determined in accordance with said financial application data entered by said applicant." '645 Patent at 9:1-4.

27. Dependent claim **31** of the '645 Patent adds to claim **28** the requirement that "at least one server is accessible via the World Wide Web." '645 Patent at 9:5-6.

28. Dependent claim **33** of the '645 Patent adds to claim **28** the requirement that the "financial card term data includes annual fee information and an annual percentage rate." '645 Patent at 10:3-5.

### 2. The '617 Patent (Claims 1, 3-11, 13-19, 21-25)

#### a) Independent Claim 1

29. Independent claim **1** of the '617 Patent is directed to an "electronic method for locating financial card offers," comprising the following steps:

> (a) storing in at least one database financial card data for participating financial institutions, said financial card data comprising terms for at least one financial card offer from each of said participating financial institutions;
>
> (b) providing selection criteria associated with said financial card data from each of said participating financial institutions associated with said financial card data from each of said participating financial institutions;
>
> (c) prompting a computer user for application data for use in assigning a rating to said computer user to locate financial card offers for said computer user;
>
> (d) receiving at a server said application data from said computer user;
>
> (e) analyzing said application data provided by said computer user;
>
> (f) assigning a rating to said computer user based on said analyzing of said application data;

(g) locating financial card offers for said computer user by comparing said rating of said computer user with said selection criteria of said financial card data for said participating financial institutions; and

(h) presenting to said computer user for review said financial card offers located for said computer user by comparing said rating of said computer user with said selection criteria of said financial card data for said participating financial institutions.

'617 Patent at 6:50-7:11.

30.    Dependent claim **3** of the '617 Patent adds to claim **1** the requirement that the "rating" be a "financial risk rating." '617 Patent at 7:15-16.

31.    Dependent claim **4** of the '617 Patent adds to claim **1** the requirement that "participating financial institutions modify said financial card data." '617 Patent at 7:17-18.

32.    Dependent claim **5** of the '617 Patent adds to claim **1** "the step of uploading said modified financial card data." '617 Patent at 7:19-20.

### b)    Independent Claim 6

33.    Independent claim **6** of the '617 Patent is directed to a "method for presenting electronic financial card offers on a public network," comprising the following steps:

creating a public network site on said public network, said site associated with an identifier for use by public network computer users to access said site;

defining terms for financial cards, said financial cards terms provided by a plurality of financial institutions;

associating selection criteria with each of said financial card terms provided by said plurality of financial institutions;

storing said financial card terms and said associated selection criteria in a database;

obtaining application data for a financial card applicant accessing said site using said identifier, said application data for use in providing a rating for said financial card applicant to locate offers for said applicant according to said selection criteria associated

11

with said financial card terms provided by said plurality of financial institutions;

receiving said application data at a server connected to said public network site;

providing a rating for said financial card applicant, said rating provided in accordance with said application data for said financial card applicant;

locating offers to present to said financial card applicant, by comparing said financial card applicant rating with said selection criteria associated with each of said financial card terms provided by said plurality of financial institutions; and

presenting to said financial card applicant for review offers located for said applicant by comparing said financial card applicant rating with said selection criteria associated with each of said financial card terms provided by said plurality of financial institutions.

'617 Patent at 7:21-55.

34. Dependent claim **7** of the '617 Patent adds to claim **6** the requirement of "sending information regarding said applicant to a participating financial institution sponsoring said offer accepted by said applicant." '617 Patent at 7:56-59.

35. Dependent claim **8** of the '617 Patent adds to claim **6** the requirement of "sending to said applicant a financial card in accordance with an offer accepted by said applicant." '617 Patent at 7:60-62.

36. Dependent claim **9** of the '617 Patent adds to claim **6** the requirement that the electronic financial card "is selected from the group consisting of credit cards and debit cards." '617 Patent at 7:63-65.

c)     **Independent Claim 10**

37. Independent claim **10** of the '617 Patent is directed to a "financial card offer system accessible via a public computer network" comprised of the following:

a public computer network site at a server connected to said public network for communicating with a financial card applicant using a computer;

at least one database in communication with said server for storing financial card data, said financial card data provided by a plurality of participating financial institutions and comprising selection criteria for at least one financial card offer;

at least one device in communication with said server adapted to access data from third party sources;

memory at said server for receiving and storing application data concerning said financial card applicant using said computer;

memory at said server for storing a rating for said financial card applicant, said rating determined in accordance with said application data concerning said financial card applicant and said data from said third party sources;

at least one financial card offer for said applicant, located from said database by said server by comparing said financial card applicant rating with said selection criteria for at least one financial card offer of said financial card data provided by said plurality of financial institutions; and

a display at said computer for presenting to said applicant for review said financial card offer located for said applicant by comparing said financial card applicant rating with said selection criteria for at least one financial card offer of said financial card data provided by said plurality of financial institutions.

'617 Patent at 7:66-8:30.

### d) Independent Claim 11

38. Independent claim **11** of the '617 Patent is directed to an " electronic financial offering

system" comprised of the following:

a first database for storing financial institution data comprising financial institution selection criteria and financial offering data for a plurality of participating financial institutions;

a second database for storing credit history data for a plurality of individuals; and

one or more servers connected to a public network adapted to:

13

(a) obtain application data from an applicant using a computer connected to one of said servers using said public network;

(b) enter said application data in memory at one of said servers;

(c) obtain from said second database credit history data for said applicant in accordance with said application data;

(d) enter said credit history data in memory at said one of said servers;

(e) process said application data and said credit history data for said applicant to locate from said first database at least one financial offering for said applicant, said at least one financial offering meeting selection criteria for at least one of said plurality of participating financial institutions; and

(f) present to said applicant for review at said applicant's computer at least one financial offering located for said applicant according to said application data, said credit history data, and said selection criteria for at least one of said plurality of participating financial institutions.

'617 Patent at 8:31-63.

39.     Dependent claim **13** of the '617 Patent adds to claim **11** the requirement that "at least one financial offering for said applicant is located in accordance with a grading system process." '617 Patent at 9:1-3.

40.     Dependent claim **14** of the '617 Patent adds to claim **13** the requirement that the "grading system process assigns a grade/score to the applicant using the application data and credit history data and uses the grade/score to search each participating financial institution's selection criteria to locate the appropriate financial offerings." '617 Patent at 9:4-8.

41.     Dependent claim **15** of the '617 Patent adds to claim **14** the requirement that "each financial institution's selection criteria are organized in a matrix associating financial offering data with a minimum grade/score combination." '617 Patent at 9:9-12.

42.     Dependent claim **16** of the '617 Patent adds to claim **11** the requirement that "each of

said at least one financial offering is presented to the applicant in a single computer

display."  '617 Patent at 9:13-15.

43.     Dependent claim **17** of the '617 Patent adds to claim **11** the requirement that "at least one

financial offering is presented in the form of a menu comprising a summary of said at

least one financial offering from which the applicant may make a selection to review

details of the financial offering."  '617 Patent at 9:16-20.

44.     Dependent claim **18** of the '617 Patent adds to claim **11** the requirement that "at least one

financial offering is a credit card offering."  '617 Patent at 9:21-22.

e)     **Independent Claim 19**

45.     Independent claim **19** of the '617 Patent is directed to a "computerized method for

presenting electronic financial offerings" comprised of the following:

> obtaining financial institution data comprising financial institution
> selection criteria and financial offering data for participating
> financial institutions, wherein said financial institution selection
> criteria comprises financial risk ratings associated with financial
> offerings;
>
> storing said financial institution data in a first database; prompting
> an applicant using a computer for application data for use in
> assigning a financial risk rating to said applicant to locate financial
> offerings for said applicant;
>
> receiving at a server from said applicant computer said application
> data;
>
> obtaining from a second database credit history data for said
> applicant in accordance with said application data;
>
> assigning a financial risk rating to said applicant in accordance
> with said credit history data from said second database;
>
> selecting from said financial institution data for participating
> financial institutions financial offerings in accordance with said

> financial risk rating and said financial institution selection criteria for participating financial institutions; and
>
> presenting to said applicant at said computer for review selected financial offerings.

'617 Patent at 9:23-10:1-7.

46. Dependent claim **21** of the '617 Patent adds to claim **19** the requirement that "assigning a financial risk rating comprises assigning a rating in accordance with a grading system process." '617 Patent at 10:13-15.

47. Dependent claim **22** of the '617 Patent adds to claim **21** the requirement that the "grading system process assigns a grade/score to the applicant using the application data and credit history data and uses the grade/score to search each participating financial institution's selection criteria to select financial offerings." '617 Patent at 10:16-20.

48. Dependent claim **23** of the '617 Patent adds to claim **22** the requirement that "each financial institution's selection criteria are organized in a matrix associating financial offering data with a minimum grade/score combination." '617 Patent at 10:21-24.

49. Dependent claim **24** of the '617 Patent adds to claim **19** the requirement that "presenting to said applicant selected financial offerings comprises presenting each of said selected financial offerings in a single computer display." '617 Patent at 10:25-28.

50. Dependent claim **25** of the '617 Patent adds to claim **19** the requirement that "presenting to said applicant selected financial offerings comprises presenting selected financial offerings in the form of a menu comprising a summary of each financial offering from which the applicant may make a selection to review details of the financial offering." '617 Patent at 10:29-34.

### III.    Legal Standard

#### A.    Summary Judgment

Summary judgment should be granted in favor of the moving party upon a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986); *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 707 (Fed. Cir. 2005).  Although the Court must view the evidence in the light most favorable to the non-moving party, to oppose this motion Block "may ***not*** rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in [Rule 56] -- set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e) (emphasis added); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 575, 585-88 (1986); *Tyler v. Harper*, 744  F.2d 653, 655 (8th Cir. 1984), *cert. denied*, 470 U.S. 1057 (1985).

#### B.    Patent-Eligible Subject Matter Under 35 U.S.C. § 101

The question of whether a claim is directed to patent-eligible subject matter under § 101 is an issue of law.  *Bilski*, 545 F.3d at 951.  It is a threshold inquiry; if a claim does not satisfy § 101, it "must be rejected even if it meets all of the other legal requirements of patentability."  *Id.* at 950.  In other words, "whether a claimed process is novel or non-obvious [under § 102 or § 103] is irrelevant to the § 101 analysis."  *Id.* at 958.  Further, "[i]f a claim covers material not found in any of the four statutory categories, that claim falls outside the plainly expressed scope of § 101 even if the subject matter is otherwise new and useful."  *In re Nuijten*, 500 F.3d 1346, 1354 (Fed. Cir. 2007).  The U.S. Patent Laws recognize four categories of subject matter eligible for patentability: processes, machines, manufactures, and compositions of matter.  35 U.S.C. § 101 ("Whoever invents or discovers any new and useful process,

machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."); *see also Bilski*, 545 F.3d at 951.

A "process" is not patent-eligible "if it claims 'laws of nature, natural phenomena, [or] abstract ideas.'" *Bilski*, 545 F.3d at 952 (internal citations omitted). As the U.S. Supreme Court and the Federal Circuit have long noted, "[s]uch fundamental principles are part of the storehouse of knowledge of all men . . . free to all men and reserved exclusively to none…. Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* (internal citations and quotations omitted). A fundamental principle, mental process, or mathematical algorithm is not patentable subject matter. *Id.* at 952-53.

In *Bilski*, the Federal Circuit clarified that the proper test for determining whether a process claim is directed to patent-eligible subject matter is the two-branched inquiry of whether the claimed process (1) "is tied to a particular machine or apparatus" or (2) "transforms a particular article into a different state or thing."[5] *Id.* at 954. The Federal Circuit identified two corollary requirements to this machine-or-transformation test: First, "the use of a specific machine or transformation of an article must impose meaningful limits on the claim's scope to impart patent-eligibility." *Id.* at 961. Second, "the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity." *Id.* at 962. Furthermore, "mere field-of-use limitations are generally insufficient to render an otherwise ineligible process claim patent-eligible." *Id.* at 957.

---

[5] The Federal Circuit further clarified that whether a claim recites "physical steps" is irrelevant to the question of whether it is drawn to patentable subject matter. *Id.* at 960-61.

## IV.     Argument

The Block claims do not meet *Bilksi's* machine-or-transformation test.  They are drawn to nothing more than an algorithm for locating financial offers from multiple lenders for an applicant by comparing information about an applicant (*i.e*., applicant data or a financial risk rating or other applicant rating) with information about financial offerings (i.e.,  financial card term data or a minimum rating or selection criteria for financial offers).  In the language of the claims that algorithm entails "locating financial card offers, said offers including said financial card term data selected by comparing said rating with an existing schedule assigned to said financial card term data."  *See, e.g.*, '645 Patent claim 11, element (f).  Indeed, this algorithm is so broad that it can be performed by a human without aid of any computer or other device.  Such a purely mental process is unpatentable.  *See Bilski*, 545 F.3d at 965-66 (holding that non-transformative process that encompassed a purely mental process of performing requisite mathematical calculations without the aid of the computer or any other device would effectively preempt any application of the algorithm and, therefore, was unpatentable).

Following *Bilski*, it is no longer sufficient that a patent merely claim a "useful, concrete, and tangible result."  *See Bilski*, 545 F.3d at 959-60.  This was the basis on which the Patent Office allowed the claims at issue in this lawsuit and it is no longer the law.   When measured against the machine-or-transformation test, the claims in suit are invalid as a matter of law under § 101.

### A.     Block's Claimed Process Does Not Transform a Particular Article Into a Different State or Thing.

To satisfy the "transformation" prong of the machine-or-transformation test, a process claim must transform either a particular physical object or substance or a particular

representation of a physical object or substance.   The transformation "must be central to the purpose of the claimed process." *Bilski*, 545 F.3d at 962-63.

The mere fact that a claim recites the manipulation of data does not satisfy the "transformation" test.  *See Cybersource Corp. v. Retail Decisions, Inc.*, No. C 04-03268 MHP, 2009 U.S. Dist. LEXIS 26056, at *10 (rejecting argument that a claim may simply manipulate data to meet the transformation prong; "'Transformation' suggests a fundamental change, whereas 'manipulation' does not…. There is no indication that the Federal Circuit, having reaffirmed the machine-or-transformation test, intended to weaken the key term  transformation' by equating it with mere 'manipulation'"); *Ex Parte Atkin*, 2009 WL 247868, No. 2008-4352, slip op. at 16 (B.P.A.I. Jan. 30, 2009) (holding that a claim did not meet the transformation prong where "[a]ll of the steps are data manipulation steps").[6]

Nor does the mere fact that such data is transmitted as an electronic signal satisfy the requirements of Section 101—in *Bilski*, the Federal Circuit made clear that an electronic signal can constitute a "particular article" transformed into a different state or thing ***only if*** that signal is representative of a physical object or substance (which, as described below, is not the case here).  *See Bilski*, 545 F.3d at 964.

### 1.    The manipulation of financial information does not satisfy the "transformation" test.

Financial card term data, applicant data, selection criteria, financial risk ratings, and financial offers are the very types of abstractions that the Federal Circuit stated cannot meet the "transformation" test.  Financial offers, for example, are simply invitations to apply for some

---

[6] In instances where the B.P.A.I. opinion published in Westlaw does not provide pincites, we provide a parallel citation, including page number cite, to the slip opinion found on the USPTO website.

financial product on preset terms. They are akin to the options, or legal rights to purchase some commodity at a given price in a given time, that the Federal Circuit concluded were abstractions in *Bilski*. *See Bilski*, 545 F.3d at 963-64; *see generally Cybersource*, 2009 U.S. Dist. LEXIS 26056 at *8-*19 (holding that a method drawn to verifying the validity of a credit card transaction over the Internet did not satisfy the "transformation" prong, as it involved simply obtaining and comparing intangible data pertinent to business risks).

Nor does the manipulation of such financial information constitute a process in which physical objects or substances are represented in digital form. *See Bilski*, 545 F.3d at 963 ("Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances.").

**2. The specific functions set forth in the claims do not satisfy the transformation test.**

The claimed algorithm at issue in the claims in suit involves (a) <u>comparing</u> a financial risk rating or applicant data with financial card term data, a minimum rating, or selection criteria for financial offers, for the purpose of (b) <u>locating</u> financial offers from multiple lenders. As an initial matter, "comparing" and "locating" are not act of transformation, as they do not involve change of any article into a different state or thing. Rather, "comparing" simply means looking at two sets of data together, and "locating" simply means retrieving or looking up the matched financial offers. *See Ex Parte Arning*, 2009 WL 871123 (B.P.A.I. March 30, 2009), at *3 (holding that claim containing step of "comparing" foreground and background frequencies did not involve any transformation); *cf. Ex Parte Monroe*, 2008 WL 2856364, No. 2008-0845, slip op. at 3-4 (B.P.A.I. July 24, 2008) (holding that claim containing step of

"retrieving" a first domain name record did not involve the transformation required by the machine-or-transformation test).

The Block claims also include steps for (1) <u>obtaining</u> and/or <u>storing</u> financial card term data, a minimum rating, and/or selection criteria associated with financial offers and (2) <u>obtaining</u> application data for an applicant. *See, e.g.*, '645 Patent at 7:20-23, 7:26 ("storing financial institution data… storing financial card term data… prompting an applicant for application data"); '617 Patent at 9:25-39 ("obtaining financial institution data… storing said financial institution data… receiving at a server from said applicant computer set application data…"). Neither of these functions—"obtaining" or "storing"—involves any transformation of an article to a different state or thing. The data is collected, it is stored; in those steps, not even the data itself is changed. Such steps have been held to not constitute the transformation of an article to a different state or thing. *See Ex Parte Motoyama*, 2009 WL 524946, No. 2008-2753, slip op. at 12 (B.P.A.I. Feb. 27, 2009) (holding that steps of "obtaining" certain manufacturer information and "storing" an identifier did not involve any transformation).

Finally, some of the claims entail <u>assigning, providing, defining, or determining</u> a financial risk rating or other rating associated with the applicant. *See, e.g.*, '645 Patent at 7:27 ("(e) assigning a reading to said applicant"); *id.* at 8:1-2 ("(e) defining a rating for a financial card applicant…"); '617 Patent at 7:43 ("providing a rating for said financial card applicant…"); *id.* at 8:15-19 ("a rating for said financial card applicant… determined in accordance with said application data…"). At Block's urging, the Court construed "rating" to mean "a value or measure assigned to the applicant." *See* 9/27/2007 Claim Construction Order, Document 62, at 12. A value or measure is not a physical object. Moreover, the Block patent specification makes clear that the value or measure can be representative of an applicant's financial risk, which itself

is an abstraction. *See, e.g.*, '617 Patent at 2:24-29. A "rating," therefore, cannot meet the "transformation" test. Further, it bears noting that although the Court has held that, as construed, a "rating" need not be calculated, even if it were calculated, that still would not constitute a "transformation." *Id.* at 11-12; *Ex Parte Enenkel*, 2009 WL 924475 (B.P.A.I. April 6, 2009), at *5 ("The calculation of a number… does not appear to be a type of 'transformation' that is recognized by our reviewing court, or by the U.S. Supreme Court, sufficient to render a claimed method patent-eligible.").

### 3.   Presentation of Financial Offers to an Applicant Does Not Involve Any Representation of a Specific Physical Object.

The Block claims include the step of presenting to the applicant the financial offers located using the algorithm. *See, e.g.*, '645 Patent at 7:33, 8:7; '617 Patent at 7:7, 7:51-52, 10:6-7. The display of financial offers to an applicant does not constitute a sufficient transformation of matter. For a "display" to constitute a transformation, the claimed process must "be limited to a practical application of a fundamental principle to transform specific data" and the display must be "*limited to a visual depiction that represents specific physical objects or substances*." *Bilski*, 545 F.3d at 963 (emphasis added).

Here, there is no "specific physical object" represented by a visual list of financial offers located for an applicant. As noted above, financial offers are not physical objects. To the contrary, they are simply intangible invitations to apply for financial products on preset terms, which are akin to the options, or legal rights to purchase some commodity at a given price in a given time, that were at issue in *Bilski*.

### B.   Block's Claimed Process Is Not Tied to a Particular Machine.

In *Bilski*, the Federal Circuit noted that at least two requirements must inform the "tied to a machine" inquiry. First, "the use of a <u>specific machine</u>… must impose meaningful

limits on the claim's scope to impart patent-eligibility." *Bilski*, 545 F.3d at 961 (emphasis added). Second, as with the transformation prong of the test, the involvement of the machine "must not merely be insignificant extra-solution activity." *Id.*, 545 F.3d at 962. The court also noted in *Bilski* that "mere field-of-use limitations are generally insufficient to render an otherwise ineligible process claim patent-eligible." *Id.*, 545 F.3d at 957. This test is not met here. The Block claims vary in their terms, but share a common failure to recite anything that qualifies as a "particular machine."[7]

The claims recite limitations that identify (1) the use of "computers" that an applicant can use to input data (i.e., on the "client" side of the network), (2) the use of a network of computers to facilitate the communication of data, and (3) the use of databases (or servers, or devices to access data) that contain information about the financial offering and the applicant. None of these generic hardware references is sufficient to tie the claimed invention to a particular machine.

1. **Inclusion of the term "computer" or "computer user" on the client side fails to tie the claimed invention to a particular machine.**

Claim 1 of the '617 patent also requires that the application data be received from a "computer user." '617 Patent at 6:50-7:11 (emphasis added). Similarly, claim 10 refers to an applicant using a "computer" to input data.

These limitations are insufficient to prevent invalidation under Section 101 as a matter of law. References to a "processor," "computer," or other general computing device repeatedly has been found insufficient to constitute a "particular machine." *See, e.g.*, *Parker v.*

---

[7] The Federal Circuit has defined a "machine" to mean a "concrete thing, consisting of parts, or of certain devices and combination of devices." *In re Ferguson*, No. 2007-1232, 2009 U.S. App. LEXIS 4526, *9 (Fed. Cir. March 6, 2009) (citing *In re Nuijten*, 500 F.3d at 1355; internal quotations omitted).

*Flook*, 437 U.S. 584, 585-86, 594 (1978) (holding that a method of updating alarm limits for certain catalytic chemical processes was unpatentable and not tied to a particular machine, despite recitation of "the use of computers for 'automatic monitoring-alarming'"); *Gottschalk v. Benson*, 409 U.S. 63, 64-68 (1972) (holding that method of converting signals from decimal to binary form was unpatentable, despite reciting use of general purpose digital computer); *In re Grams*, 888 F.2d 835, 841 (Fed. Cir. 1989) (cited favorably in *Bilski*) (concluding that recitation of a programmed computer was insufficient to render an otherwise ineligible method patentable); *Ex Parte Enenkel*, 2009 WL 924475, at *5 ("[T]he mere recitation of a generic 'machine processing unit' in the method does not tie the method to a 'particular' machine or apparatus."); *Ex Parte Cornea-Hasegan*, 2009 WL 86725, No. 2008-4742, slip op. at 9-10 (B.P.A.I. Jan. 13, 2009) ("The recitation of a 'processor' performing various functions fails to impose any meaningful limits on the claim's scope. The recitation of a 'processor' performing various functions is nothing more than a general purpose computer that has been programmed in an unspecified manner to implement the functional steps recited in the claims. The recitation of a processor in combination with purely functional recitations of method steps, where the functions are implemented using an unspecified algorithm, is insufficient to transform otherwise unpatentable method steps into a patent eligible process. ***Holding otherwise would exalt form over substance and would allow pre-emption of the fundamental principle present in the non-machine implemented method by the addition of the mere recitation of a 'processor.'***") (emphasis added).

### 2. References to the "World Wide Web" and/or a "public network" fail to tie the claimed invention to a particular machine.

Claim 21 of the '645 Patent, which refers to "a method for presenting electronic financial card offers on the <u>World Wide Web</u>," where an applicant accesses a "<u>World Wide Web site</u>" and

the site also is used to upload financial card terms, similarly fails to denote a particular machine. '645 Patent at 7:59-8:7 (emphasis added). Similarly, claims 6, 10, and 11 of the '617 Patent refer to the use of a "public network" as a communications medium.

Broad computer networks cannot constitute the "particular machine" to which Block's claimed algorithm is tied. *Cybersource Corp. v. Retail Decisions, Inc.* is instructive on this point. The patent claims in that case, which are similar in many respects to the claims at issue on this motion, were directed to a method and system for detecting fraud in a credit card transaction between the consumer and a merchant over the internet. *Cybersource*, 2009 U.S. Dist. LEXIS 26056, at *1. The claims recited use of the method "over the Internet" using an "Internet address." *Id.* at 2. The Court held that such a recitation was insufficient to tie the claimed process to a particular machine, for at least three reasons:

> First…. [t]he internet is a network of millions of individual machines. . . . It may be supposed that the internet itself, rather than any underlying computer or set of computers, is the "machine" to which plaintiff refers. Yet the internet is an abstraction. If every computer user in the world unplugged from the internet, the internet would cease to exist, although every molecule of every machine remained in place. One can touch a computer or a network cable, but one cannot touch "the internet…."

> Even if the "over the Internet" limitation could otherwise be considered a machine implementation, the involvement of the internet will not qualify as such where it merely constitutes "insignificant extra-solution activity." *See Bilski*, 545 F.3d at 962. A different rule would eviscerate section 101, because any "competent draftsman could attach some form of [extra]-solution activity to almost any mathematical formula," or, for that matter, mental process. *Id.* at 957….. An unpatentable mathematical theorem does not become patentable by virtue of a claim limitation stating that the theorem can be usefully applied to surveying techniques. *See id.* at 957, *citing Flook*, 437 U.S. at 590. Similarly, an unpatentable mental process for collecting data and weighing values does not become patentable by tossing in references to internet commerce.

>Finally, the use of the internet does not impose meaningful limits on the scope of the claims. *See Bilski*, 545 F.3d at 961 (holding machine implementation or transformation must impose meaningful limits on claim scope).... The claims of the '154 patent preempt the use of fundamental mental processes across an extraordinarily large and important segment of the commercial system.... The instant claims broadly preempt the fundamental mental process of fraud detection using associations between credit card numbers. A limitation to "only" the vast area of online credit card transactions is not meaningful.

*Id.*, at *20-24 (citations omitted).

Indeed, the "World Wide Web" and a "World Wide Web site" are not concrete things or devices at all. Rather, the World Wide Web is "a collection of files, or 'web pages,' containing text, graphics, audio, and video, as well as 'hyperlinks' to other web pages" accessed via the internet, and a World Wide Web site is a particular collection of web pages. *Resonate Inc. v. Alteon Websys., Inc.*, 338 F.3d 1360, 1361 (Fed. Cir. 2003).

Further, use of the World Wide Web or "public networks" do not impose meaningful limits on the scope of the asserted claims. Claim 21 of the '645 Patent, for example, would effectively preempt application of the algorithm using any and all machines for accessing the World Wide Web. *See, e.g.*, '617 Patent at 2:50-54 ("Preferably, the present invention…is… implemented using the Internet's World Wide Web (WWW) technology."), 3:2-6 ("Because the Card Service is based on Internet/WWW technology, it may be accessed through a number of interfaces…."), 3:20-21 ("Methods for providing services via the Internet/WWW are well-known in the art and are not explained here."). Allowance of such claims would eviscerate § 101. *See Cybersource*, 2009 U.S. Dist. LEXIS 26056, *22-*23 ("[A]n unpatentable mental process for collecting data and weighing values does not become patentable by tossing in references to internet commerce.").

27

3.  **Generic References to "Database," and/or "Device for Accessing Data" on the Server Side Also Fail to Tie Block's Claimed Process to a Particular Machine.**

Several of the asserted claims include limitations encompassing a "server," a "database," and/or a "device for accessing data." *See, e.g.*, '645 Patent at 8:24-46 (claim 27); '617 Patent at 7:66-8:63, 9:23-10:7 (claims 10-11, 19). As noted above in connection with the recitation of generic "computers" at the client side of the network, the recitation of generic hardware on the server side does not save the claim from a challenge under Section 101.

This principle has been specifically applied to server systems. *See Ex Parte Harris*, 2009 WL 86719, No. 2007-0325, slip op. at 9 (B.P.A.I. Jan. 13, 2009) ("Were the recitation of a 'network' and 'server' in combination with purely functional recitations of method steps… sufficient to transform otherwise unpatentable method steps into a patent eligible process, this would exalt form over substance and would allow pre-emption of the fundamental principle present in the non-machine implemented method by the mere recitation of a 'network' and 'server.' Such a field-of-use limitation of communication channels is insufficient to render an otherwise eligible process claim patent eligible."); *Ex Parte Godwin*, 2008 WL 4898213, No. 2008-0130, slip op. at 7 (B.P.A.I. Nov. 13, 2008) (holding that claims reciting a "portal server system" or "portal server" "do not positively recite implementing the invention on a specific apparatus," because "software components necessarily implement a process or series of steps (when executed by a machine)"); *Ex Parte Hanam*, 2008 WL 367507 (B.P.A.I. Feb. 11, 2008), at * 1, *4 (holding that claim reciting a "download manager for downloading a data file from a server to a client" did not tie the method for downloading data to a particular machine); *Ex Parte Gosby*, 2007 WL 2843739 (B.P.A.I. Sept. 28, 2007), at *7 ("In performing the method steps of claim 1, there is no requirement that a computer be used. The only recitation of 'computer' or 'host' relates to the source or destination of data transmission. For example, a document is

received from a host and a subset of said categories is returned to the host. The claim is merely drawn to 'disembodied abstract ideas'….Therefore, the claimed subject matter may be performed using only human intelligence, which has recently been held to be non-statutory.").

The same framework has been applied to database elements. *See Ex Parte Isaacson*, 2009 WL 505455, No. 2008-1884, slip op. at 6 (B.P.A.I. Feb. 26, 2009) (rejecting claims under Section 101, where they recited a "data store" element that could be "embodied apparently in any kind of data warehouse, data base, directory file and the like"); *Ex Parte Mitchell*, 2009 WL 460662, No. 2008-2012, slip. op. at 6-7, 10-11 (B.P.A.I. Feb. 23, 2009) (rejecting claim under Section 101 that recited use of a "processor" and "memory" for storing instructions); *see also Bilski*, 545 F.3d at 961 ("'the mere fact that a claimed invention involves inputting numbers, calculating numbers, outputting numbers, and storing numbers, in and of itself, would not render it nonstatutory subject matter'") (citing *AT&T Corp. v. Excel Commc'ns, Inc.*, 172 F.3d 1352, 1359 (Fed. Cir. 1999); emphasis added).

Moreover, the specification reinforces the generic nature of the hardware at issue by making clear that the claims are intended to cover an unlimited number of configurations. *See* '617 Patent at 3:50-62 ("The number of servers **24-34** in the system (including database servers **36**) may be increased or decreased depending on the number of transactions processed during a given time period…. In addition, all data may be stored in a single database on one or more database servers, or stored in multiple databases on one or more database servers. The configurations of the various servers may change to accommodate an increase or decrease in the number of transactions that are processed within a certain time frame.").

C.      **Mere Extra-Solution Activity Cannot Redeem the Patents-In-Suit.**

To the degree that any of the computer hardware referenced in the claims is determined to be something more than wholly generic, it bears emphasis that their use is confined to mere insignificant "extra-solution activity" and, therefore, cannot prevent the invalidation of the patents under Section 101.   In particular, these limitations relate only to the input of applicant data and/or financial card term data, the transmission of such data, the storage of such data, and/or the visual display of financial offers.  They do not tie the algorithm claimed by the patents to any particular machine or apparatus.

For example, in claim 19 of the '617 Patent, there is reference to use of a computer to obtain applicant data, storage of financial institution data in a database, receipt at a server of applicant data, obtaining  credit history data from a second database, and presentation of selected financial offerings at a computer.  None of those recitations relate to the actual algorithm step of "selecting from said financial institution data for participating financial institutions financial offerings in accordance with said financial risk rating and said financial institutions selection criteria for participating financial institutions."  '617 Patent at 10:1-5.  *See Gosby*, 2007 WL 2843739  at *7 ("In performing the method steps of claim 1, there is no requirement that a computer be used.   The only recitation of 'computer' or 'host' relates to the source or destination of data transmission…. Therefore, the claimed subject matter may be performed using only human intelligence, which has recently been held to be non-statutory.").

***Data collection does not suffice, and neither do references to the source or destination of such transmitted data.***  The fact that financial card term data and applicant data must be collected in order to perform the claimed algorithm for locating financial offers for an applicant does not render the Block claims patentable.  *See Bilski*, 545 F.3d at 963 ("[A]dding a

data-gathering step to an algorithm is insufficient to convert that algorithm into a patent-eligible process… in most cases, gathering data would not constitute a transformation of any article."); *see Bilski*, 545 F.3d at 957 n.14 ("[A] pre-solution step of gathering data" is "incapable of imparting patent-eligibility under § 101."); *Grams*, 888 F.2d at 839 ("[S]teps of establishing values for the variables in the equation cannot convert the unpatentable method to patentable subject matter."). Such data-gathering is simply insignificant extra-solution activity. *See Parker*, 437 U.S. at 590; *Bilski*, 545 F.3d at 962-63 ("the involvement of the machine or transformation in the claimed process must not merely be insignificant extra-solution activity").

Relatedly, the use of computers (or the internet) to transmit or receive the data collected in order to perform the claimed algorithm cannot prevent invalidation of the Block patents under Section 101. *See Gosby*, 2007 WL 2843739 at *7 ("In performing the method steps of claim 1, there is no requirement that a computer be used. The only recitation of 'computer' or 'host' relates to the source or destination of data transmission. For example, a document is received from a host and a subset of said categories is returned to the host. The claim is merely drawn to 'disembodied abstract ideas'….Therefore, the claimed subject matter may be performed using only human intelligence, which has recently been held to be non-statutory.").

This point applies with particular force to the World Wide Web claim limitation. The claim language makes clear that the role of the World Wide Web is limited to enabling the gathering of data from the financial institutions and the applicants. *See* '645 Patent at 7:65-66 (element (d)), 8:1-2 (element (e)). Stated another way, the World Wide Web is incidental, and plays no role in the actual claimed algorithm for locating financial offers from multiple lenders

by comparing an applicant rating with a rating associated with financial card terms. *See id.* at 8:3-6 (element (f)).

   ***The storage of gathered data does not suffice.***   To the degree that the claims recite the storage of data, this reflects the storage of data gathered as input for the "locating offers" algorithm. *See, e.g.*, '617 Patent at 7:31-32 ("<u>storing said financial card terms and said associated selection criteria in a database</u>"), 7:46-50 ("locating offers to present to said financial card applicant, by comparing said financial card applicant rating with <u>said selection criteria associated with each of said financial card terms</u>…") (emphasis added). As such, any recitation to the storage of data concerns pre-solution activity and, thus, does not save the Block claims from unpatentability under Section 101. *See Ex Parte Schaar*, 2009 WL 1153368 (B.P.A.I. April 28, 2009), at *2, *5 (rejecting claims under Section 101 that included a step of storing received and transformed input blocks); *Ex Parte Motoyama*, 2009 WL 524946, No. 2008-2753, slip op. at 12 (rejecting claim under Section 101 that included a step for storing a generated identifier); *see also Bilski*, 545 F.3d at 961 ("'the mere fact that a claimed invention involves inputting numbers, calculating numbers, outputting numbers, <u>and storing numbers, in and of itself</u>, would not render it nonstatutory subject matter'") (citing *AT&T Corp.*, 172 F.3d at 1359; emphasis added).

   ***The presentation of located financial offers does not suffice.***   The presentation of financial offers to an applicant is insignificant post-solution activity, because it simply involves the presentation of the results from carrying out Block's claimed algorithm for locating financial offers. In other words, this step occurs ***after*** the "matching" algorithm has already been carried out. Additionally, the presentation of financial offers to an applicant is a meaningless limit on the scope of Block's claims because just as every algorithm inherently requires the

gathering of data input, every algorithm also inherently requires the presenting or communicating of the data output which results from carrying out that algorithm. *See Ex Parte Daughtrey*, 2009 WL 963938 (B.P.A.I. April 8, 2009), at *2, *5 (holding that step of displaying the produced summary (of the results of the claimed algorithm for use in travel planning) on a user output device involved mere insignificant extra-solution activity and, thus, did not save the claim from rejection under Section 101); *see also Bilski*, 545 F.3d at 961 ("'the mere fact that a claimed invention involves inputting numbers, calculating numbers, <u>outputting numbers</u>, and storing numbers, in and of itself, would not render it nonstatutory subject matter'") (citing *AT&T Corp.*, 172 F.3d at 1359; emphasis added).

        ***Obtaining a "rating" used to match applicants and offers is extra-solution activity.***   The step of "assigning, providing, defining, or determining of a rating associated with an applicant," is also insignificant extra solution activity.   In effect, this is merely a data-gathering step, given that a "rating" is simply an input for the algorithm of matching information about the applicant with various financial offerings.

        The Court's construction of the term "rating" reinforces this point, clarifying that a rating need not be calculated; it is merely "a value or measure assigned to the applicant." Given this construction, the act of "assigning, providing, defining, or determining" a rating can only be understood to constitute various ways of describing how a rating (*i.e.*, a value) is obtained.   Once obtained, the "rating" is an essential input to the algorithm.  But the process of obtaining the rating itself is mere "insignificant pre-solution activity."

    **D.**    **The Machine-or-Transformation Test Applies to All of the Block Claims.**

        The machine-or-transformation test applies to all of the Block claims.  The asserted system and apparatus claims contain essentially the same limitations as the method

claims, but in "system" or "apparatus" form.  *Compare* '617 Patent at 8:32-63 (claim 11) *with id.*
at 9:23-10:7 (claim 19).  As explained above, the various recitations to generic terms such as
"World Wide Web," "computer," "server," "database," "device for accessing data," and/or
"public network" do not impose the requirement of any particular machine or apparatus.  *See*
Section IV.B., *supra*.

       Because the non-method claims are not drawn to any specific machine or
apparatus distinct from any other machine capable of performing Block's claimed algorithm, all
the Block claims should be treated the same for purposes of § 101.  *See Bilski*, 545 F.3d at 952
("systems that depend for their operation on human intelligence alone are not patent-eligible
subject matter") (internal quotations and citations omitted); *id.* at 957 (stating that invalidation
under § 101 "cannot be circumvented by attempting to limit the use of the formula to a particular
technological environment") (citing *Diamond v. Diehr*, 450 U.S. 175, 191-92 (1981)).

       This principle has long been applied to apparatus claims.  *See In re Meyer*, 688
F.2d 789, 796 n.3 (C.C.P.A. 1982) ("Appellants' apparatus claims differ from the method claims
by reciting 'means for' performing these steps set forth in the method claims, and 'means for
displaying' the results.  However, for purposes of section 101, such claims are not treated
differently from method claims…. Although some of appellants' claims are drawn to a 'general
purpose data processor of known type operating under the control of a stored program,' such
claims are treated as indistinguishable from the method claims for purposes of section 101 unless
it is demonstrated that the claims are drawn to specific apparatus distinct from other apparatus
capable of performing the identical functions."); *In re Sarkar*, 588 F.2d 1330, 1333 (C.C.P.A.
1978) ("[E]ach invention must be evaluated as claimed; yet semantogenic considerations

preclude a determination based solely on words appearing in the claims. In the final analysis under § 101, the claimed invention, as a whole, must be evaluated for what it is.").

Following *Bilski*, the courts and Patent Office have continued to apply the same principles to apparatus claims as *Bilski* applied to a method claim. *See Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-042, slip op. at 3-5 (M.D. Fl. May 27, 2009) (applying *Bilski* machine-or-transformation test to invalidate system claim); *Cybersource*, 2009 U.S. Dist. LEXIS 26056, at *34 (applying *Bilski* machine-or-transformation test to invalidate claim labeled as "computer readable medium"); *Enenkel*, 2009 WL 924475, at *4-*6 (applying *Bilski* test to invalidate a machine claim); *Ex Parte Atkin*, 2009 WL 247868 (B.P.A.I. January 30, 2009), at *7 (post-*Bilski*) (finding system claims unpatentable under machine-or-transformation test: "The term 'system' in the preamble is broad enough to read on a method and thus does not imply the presence of any apparatus…. Therefore…we are treating claim 9 as encompassing any and all means for performing the recited functions…. We are therefore additionally rejecting claims 9-12 and 15 under § 101."); *Godwin*, 2008 WL 4898213, at *3 (post-*Bilski*) (finding system claims unpatentable under machine-or-transformation test).

## V. Conclusion

For the foregoing reasons, the asserted patent claims are invalid under 35 U.S.C. §101 for failure to claim patent-eligible subject matter and, therefore, the Court should grant LendingTree, LLC's motion for summary judgment of invalidity.

Respectfully submitted,

Dated: June 15, 2009

/s/ Robert D. Fram

Robert D. Fram (Admitted Pro Hac Vice)
Winslow B. Taub (Admitted Pro Hac Vice)
Deanna L. Kwong (Admitted Pro Hac Vice)
**COVINGTON & BURLING LLP**

One Front Street, Floor 35
San Francisco, CA 94111
Tel: (415) 591-6000 / Fax: (415) 591-6091
rfram@cov.com
wtaub@cov.com
dkwong@cov.com

Edward H. Rippey (Missouri Bar No. 46889)
**COVINGTON & BURLING LLP**
1201 Pennsylvania Avenue NW
Washington, DC 20004-2401
Tel: (202) 662-5171
Fax: (202) 778-5151
erippey@cov.com

Edward R. Spalty (Missouri Bar No. 26086)
David A. Jermann (Missouri Bar No. 51389)
**ARMSTRONG TEASDALE LLP**
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
Tel: (800) 243-5070 / Fax: (816) 329-5426
espalty@armstrongteasdale.com
djermann@armstrongteasdale.com


ATTORNEYS FOR LENDINGTREE, LLC

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of LENDINGTREE, LLC'S

SUGGESTIONS IN SUPPORT OF LENDINGTREE, LLC'S MOTION FOR SUMMARY

JUDGMENT OF INVALIDITY UNDER 35 U.S.C. SECTION 101 FOR FAILURE TO CLAIM

PATENT-ELIGIBLE SUBJECT MATTER was electronically filed with the Clerk of Court on

this 15th day of June, 2009 using the CM/ECF system, which sent notification of such filing to

the following:

Jeffrey S. Standley
F. Michael Speed, Jr.
Mark R. Engle
STANDLEY LAW GROUP LLP
6300 Riverside Drive
Dublin, OH  43017
Tel.:  614-792-5555
Fax:  614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mengle@standleyllp.com


Mark W. Brennan
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, MO  64015-2100
Tel.:  816-374-3200
Fax:  816-374-3300
mwbrennan@bryancave.com


/s/  Robert D. Fram

ATTORNEY FOR LENDINGTREE, LLC