# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 01-1007-cv-ODS |
| LENDINGTREE, LLC, | ) ) ) | (combined with Case No.: 08-cv-164-ODS) |
| Defendant. | ) ) | |
| LENDINGTREE, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") and DOES 1 through 10, inclusive, | ) ) ) ) | |
| Defendants. | ) ) ) | |

## PLAINTIFF BLOCK FINANCIAL LLC'S SUGGESTIONS IN SUPPORT OF ITS OPPOSITION TO LENDINGTREE'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 112 ¶ 1

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ..................................................................................................1

II.   COUNTERSTATEMENT OF FACTS .................................................................2

      A.    The Block Patents Are Not Limited Solely To Financial Cards..............3

      B.    The Inventor Of The Block Patents Understood His Patents Cover Many
            Types of Financial Products......................................................................4

III.  STANDARDS OF LAW ......................................................................................6

      A.    Summary Judgment Is Not Appropriate When There Are Disputed Issues
            Of Material Fact........................................................................................6

      B.    Determining Whether There Is A Sufficient Written Description Is A Fact-
            Intensive Inquiry .......................................................................................7

IV.   ARGUMENT .....................................................................................................10

      A.    LendingTree's Motion Is Precluded By Its Own Stipulation And Violates
            Established Federal Circuit Law..............................................................12

            1.    The '617 Patent Properly Discloses A Form Of Financial Offerings........13

            2.    LendingTree Is Ignoring Its Stipulation And Trying To Re-Argue
                  Claim Construction .......................................................................15

      B.    Issues Of Material Fact Preclude Summary Judgment ..........................16

            1.    The '617 Patent Discloses Financial Products To One Of Ordinary
                  Skill In The Art ............................................................................17

            2.    The Inventor's Testimony Shows That The '617 Patent Covers
                  Financial Offers ...........................................................................19

V.    CONCLUSION..................................................................................................22

## TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*All Dental Prodx LLC v. Advantage Dental Prods.*,
    309 F.3d 774 (Fed. Cir. 2002)........................................................................9, 17, 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).................................................................................................6

*Arizona v. California*,
    460 U.S. 605 (1983)...............................................................................................16

*Avidyne Corp. v. L-3 Commc'n Avionics Sys., Inc.*,
    05-11098-GAO, 2008 WL 4849894 (D.Mass. Nov. 7, 2008) ...............................14

*Capon v. Eshhar*,
    418 F.3d 1349 (Fed. Cir. 2005)...............................................................................8

*Christianson v. Colt. Indus. Operating Corp.*,
    486 U.S. 800 (1988)...............................................................................................16

*Coleman v. Dines*,
    754 F.2d 353 (Fed. Cir. 1985)...............................................................................19

*Colorado v. New Mexico*,
    467 U.S. 310 (1984).................................................................................................7

*Connell v. Sears Roebuck & Co.*,
    722 F.2d 1542 (Fed. Cir. 1983)...............................................................................7

*Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*,
    291 F.3d 1317 (Fed. Cir. 2002)...............................................................................8

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003).............................................................................14

*Eiselstein v. Frank*,
    52 F.3d 1035 (Fed. Cir. 1995).................................................................................9

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
    323 F.3d 956 (Fed. Cir. 2002).............................................................................2, 9

Case 4:01-cv-01007-ODS   Document 177   Filed 07/31/09   Page 3 of 29

*Figa v. Apple, Inc.*,
    No. 08-10304-NG, slip op. (D. Mass. July 2, 2009)............................................................10

*Hemphill v. Proctor & Gamble Co.*,
    85 Fed. App'x. 765 (Fed. Cir. 2004)........................................................................................16

*H.H. Robertson Co. v. United Steel Deck, Inc.*,
    820 F.2d 384 (Fed. Cir. 1987)...................................................................................................6

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*,
    488 F.3d 982 (Fed.Cir.2007)...................................................................................................14

*Hyatt v. Dudas*,
    492 F.3d 1365 (Fed. Cir. 2007).........................................................................................7, 18

*ICN Photonics, Ltd. v. Cynosure, Inc.*,
    73 Fed. App'x 425 (Fed. Cir. 2003).........................................................................................8

*In re Cruciferous Sprout Litig.*,
    301 F.3d 1343 (Fed.Cir.2002).................................................................................................14

*In re Gabapentin Patent Litigation*,
    395 F. Supp. 2d 175 (D.N.J. 2005) ..........................................................................................9

*In re Gosteli*,
    872 F.2d 1008 (Fed. Cir. 1989)..........................................................................................7, 8

*In re Wertheim*,
    541 F.2d 257 (C.C.P.A. 1976) ................................................................................................10

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    424 F.3d 1374 (Fed. Cir. 2005).................................................................................................7

*Key Pharms. v. Hercon Labs. Corp.*,
    161 F.3d 709 (Fed. Cir. 1998).................................................................................................16

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004).................................................................................................13

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005).................................................................................................14

*Lockwood v. American Airlines*,
    107 F.3d 1565 (Fed. Cir. 1997).........................................................................................11, 19

*Nat'l Presto Indus., Inc. v. W. Bend Co.*,
    76 F.3d 1185 (Fed. Cir. 1996)...................................................................................................7

iii

*Pfizer, Inc. v. Apotex, Inc.*,
   480 F.3d 1348 (Fed. Cir. 2007)................................................................7

*Philips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..............................................................13

*Quad Envtl. Tech. Corp. v. Union Sanitary Dist.*,
   946 F.2d 870 (Fed. Cir. 1991)..................................................................6

*Ralston Purina Co. v. Far-Mar-Co, Inc.*,
   772 F.2d 1570 (Fed. Cir. 1985)..............................................................11

*Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*,
   507 F. Supp. 2d 1074 (N.D. Cal. 2007) ..................................................15

*Singh v. Brake*,
   222 F.3d 1362 (Fed. Cir. 2000)..............................................................21

*Trading Techs. Int'l., Inc. v. eSpeed, Inc.*,
   507 F. Supp. 2d 874 (N.D. Ill. 2007) ......................................................9

*Tronzo v. Biomet, Inc.*,
   156 F.3d 1154 (Fed. Cir. 1998)..............................................................18

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
   264 F.3d 1111 (Fed. Cir. 2001)..............................................................11

*Union Oil Co. of Cal. v. Atlantic Richfield Co.*,
   208 F.3d 989 (Fed. Cir. 2000)............................................................8, 10

*Univ. of Rochester v. G.D. Searle & Co.*,
   358 F.3d 916 (Fed. Cir. 2004).........................................................11, 18

*Utter v. Hiraga*,
   845 F.2d 993 (Fed. Cir. 1988)..................................................................7

*Vas-Cath, Inc. v. Mahurkar*,
   935 F.2d 1555 (Fed. Cir. 1991).......................................................7, 8, 11, 16

*Warner-Lambert Co. v. Purepac Pharm. Co.*,
   503 F.3d 1254 (Fed. Cir. 2007)................................................................6


Statutes

35 U.S.C. § 112 ¶ 1 .................................................................1, 13, 16, 22

35 U.S.C. § 282 .........................................................................................6

Other Authorities

Donald S. Chisum, *Chisum on Patents* § 18.03 (2009) ...................................................................13

Fed. R. Civ. P. 56(c) ...........................................................................................................................6

Manual of Patent Examining Procedure § 2163 ..........................................................................6, 18

# I.    INTRODUCTION

LendingTree's motion for partial summary judgment of invalidity of claims 11, 13-17, 19 and 21-25 of U.S. Patent No. 7,310,617 ("'617 Patent") for failure to satisfy the written description requirement of 35 U.S.C. § 112 ¶ 1 should be denied for two independent reasons.

First, the premise of LendingTree's motion is fundamentally flawed. LendingTree already has conceded that the written description of the '617 Patent adequately describes financial cards. There is no dispute that "financial cards" are a subset of the financial offerings claimed in the '617 Patent. LendingTree has agreed and stipulated that the "financial offerings" that are referenced in the '617 Patent claims, and that are the subject of the present motion, are "financial products." The Court endorsed this interpretation in its claim construction. Thus, financial cards are an example of the claimed financial offers.

Claim interpretation must be based on the ordinary meaning of the claim terms in view of the specification. A fundamental rule of patent interpretation is that one embodiment (financial cards) should not limit the claims (financial offers). LendingTree's attempt to back out of the agreed-upon meaning of "financial offerings" to include financial cards is a back-handed way to circumvent its stipulation and reopen claim construction. The only way that LendingTree can prevail on its motion is if this Court reopens claim construction and construes "financial offerings" to exclude financial cards. Even if it were proper for this Court to re-construe the claims at this point, there is no basis whatsoever for LendingTree's new interpretation. This Court should reject LendingTree's attempt to re-construe the claims, and instead reject the motion.

Second, even if LendingTree could persuade the Court that there is some legal basis for its argument that financial offerings may not be supported by the '617 Patent's disclosure of

1

financial cards, the motion cannot be granted because there are disputed issues of material fact regarding the adequacy of the written description of the '617 Patent. The Federal Circuit has ruled that the question of whether there is an adequate written description is "a fact-based inquiry" that requires assessing how one of ordinary skill in the art would understand the claims, as well as assessing the inventor's intent. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 963 (Fed. Cir. 2002) (emphasis added). With this opposition, Block has provided a declaration from its expert that explains why one of ordinary skill in the art would understand that the '617 Patent appropriately discloses financial offers. In addition, the testimony of the inventor (which LendingTree acknowledged but tried to downplay in its motion) shows that he understood and intended that the '617 Patent encompass many types of financial products, of which financial cards were merely an example. These contested facts preclude the granting of LendingTree's motion.

## II.      COUNTERSTATEMENT OF FACTS

Block incorporates its Counterstatement of Facts, the Declaration of Kenneth W. Brothers, the Declaration of Steven R. Kursh, and supporting exhibits from its Opposition to LendingTree's Motion for Summary Judgment of Invalidity, filed concurrently. Block continues consecutive numbering the counterstatement paragraphs, starting with number 84.

LendingTree's Statement of Facts contains some errors,[1] and as shown below, is incomplete.

---

[1] LendingTree's statement of facts contains a typographical error. LendingTree's Fact No. 8 states that "[b]oth the '617 Patent and the '645 Patent list Cordon [*sic*] Cotter Cunningham as the sole inventor and Block as the assignee." The sole inventor of the '645 and '617 Patents is Gordon Cotter Cunningham.

## A.    The Block Patents Are Not Limited Solely To Financial Cards

**Counterstatement Fact No. 84:**  Block disputes the relevance of LendingTree's Fact No. 4 which states that U.S. Patent No. 6,014,645 ("'645 Patent") "contains claims directed to 'financial cards,' but has no claims using the term 'financial offerings.'"  LendingTree's present motion is focused solely on selected claims from the '617 Patent, and does not pertain to any claims relating to the '645 Patent.  In addition, both the '617 Patent and the '645 Patent discuss financial products that have financial cards associated with them.  For example, the abstracts of both patents refer to financial cards as including debit cards.  '645 Patent – Abstract, '617 Patent – Abstract ("A system is disclosed for presenting **financial** card (e.g., credit card, **debit** card) offers").  The specification of both patents also explicitly includes debit cards in the definition of financial cards.  '645 Patent 1:15, '617 Patent 1:20 ("Financial institutions interested in locating new customers for their financial cards (such as credit cards, debit cards, etc.)").

**Counterstatement Fact No. 85:**  One of ordinary skill in the art reading the specification of the '617 Patent would know that debit cards are, by definition, tied to an underlying financial account, and the process of opening those accounts is the result of financial offers that are covered by the Block patents.  Declaration of Steven R. Kursh ("Kursh Dec.") ¶ 53

**Counterstatement Fact No. 86:**  The specification of the '645 Patent and the '617 Patent repeatedly refer to "financial card(s)."  See, for example, the following figures and references in the '645 Patent: Fig.3, Fig.4, 1:15, 1:20, 1:25, 1:31, 1:32, 1:39, 1:50, 1:54, 2:1, 2:4, 2:13, 2:22, 2:27, 2:45, 2:46-47, 2:60, 3:35, 4:1-2, 4:7, 4:19, 4:28, 5:5, 5:9-10, 5:18, 5:20, 5:21, 5:22, 5:34, 5:45, 5:48, 5:57, 5:63, 5:65-66, 6:11, 6:24, 6:26, 6:30, 6:37.  In the '617 Patent, see the following:  Abstract, Fig.3, Fig.4, 1:14, 1:15, 1:20, 1:25, 1:30, 1:36, 1:37, 1:55, 1:59, 1:62, 2:6, 2:9, 2:18, 2:28, 2:33, 2:51, 3:40, 4:5, 4:11, 4:24, 4:33, 5:11, 5:16-17, 5:25, 5:28, 5:41, 5:52, 5:55, 5:64, 6:3, 6:5, 6:17, 6:30, 6:32, 6:36.

3

**Counterstatement Fact No. 87:** The specifications of the '645 and '617 Patents also refer to generic "card offers." '645 Patent 3:40; '617 Patent 3:44-45.

**Counterstatement Fact No. 88:** The '617 Patent repeatedly discusses the use of the invention in connection with financial offerings. '617 Patent 8:31, 8:33-34, 8:53-54, 8:58, 9:2, 9:8, 9:14, 9:17, 9:22, 9:24, 9:26, 9:29, 9:33, 10:2, 10:7, 10:22, 10:26, 10:29, 10:30, 10:34, 10:35, 10:36, 10:37-38.

**Counterstatement Fact No. 89:** One of ordinary skill in the art reading the '617 Patent would know that it relates to financial products, of which financial cards are a subset. For example, one of ordinary skill in the art would understand that debit cards are tied to an underlying financial account, and the process of opening those accounts is the result of financial offerings. Kursh Dec. ¶ 53. A debit card cannot exist without an underlying financial account to pull funds from.

**Counterstatement Fact No. 90:** The parties stipulated and agreed that "financial offering(s)" means financial products." D.I. 107 at 7, D.I. 129 at 6. The Court endorsed and incorporated that definition into its claim construction. D.I. 129 at 6.

### B. The Inventor Of The Block Patents Understood His Patents Cover Many Types of Financial Products

**Counterstatement Fact No. 91:** Gordon Cotter Cunningham, the named inventor of both asserted patents, was deposed by LendingTree at the close of discovery.[2] Inventor Cunningham testified that he understood and intended the claims of the '617 Patent to cover more than just financial cards and to include financial offers for other financial products. Brothers Dec., Exh. H ("Cunningham Dep.") 199:16-24.

---

[2] LendingTree's counsel had earlier noticed Mr. Cunningham's deposition, but the night before the deposition, and after Block's counsel had traveled to the deposition location, LendingTree unilaterally cancelled the deposition. Brothers Dec. ¶ 10.

**Counterstatement Fact No. 92:** Cunningham testified that because he understood and intended the claims of the '617 Patent to encompass other financial products, such as mortgages, he knew that he could pitch his ideas to Countrywide Mortgage. Cunningham Dep. 199:25-200:13.

**Counterstatement Fact No. 93:** Cunningham testified that, in 1996 or 1997, he met with the CEO of Countrywide Mortgage and offered a system covered by the '645 and '617 Patents. Cunningham Dep. 126:18-127:13.

**Counterstatement Fact No. 94:** Cunningham testified that the LendingTree system is "exactly what we envisioned" with the '645 and '617 Patents. Cunningham Dep. 221:1-5.

**Counterstatement Fact No. 95:** Cunningham testified that he searched prior art related to several types of financial products, including credit cards, mortgages and car loans, before filing the application for what became the '645 Patent. Cunningham Dep. 228:15-229:9.

**Counterstatement Fact No. 96:** Cunningham testified that he discussed his idea, specifically as it related to mortgage products, with his brother and his brother's boss, who were both mortgage brokers. Cunningham Dep. 108:1-5, 111:14-22.

**Counterstatement Fact No. 97:** Cunningham offered to help obtain the testimony of his brother and his brother's boss to corroborate his testimony that his invention related to more than financial cards. Cunningham Dep. 158:11-19.

**Counterstatement Fact No. 98:** Cunningham disagreed with LendingTree's assertion that in 1996 he had not "figured out all the details of how to make this work for mortgage lending." When asked by counsel whether "at the time when you filed this original application, that you hadn't yet figured out all the details of how to make this work for – for mortgage

5

lending," Cotter Cunningham replied, "I wouldn't say that. I think – I think you could have done it." Cunningham Dep. 114:19-24.

## III.    STANDARDS OF LAW

### A.    Summary Judgment Is Not Appropriate When There Are Disputed Issues Of Material Fact

Summary judgment is proper only if no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is considered a drastic remedy and deprives a party of the right to a jury trial; courts, therefore, must proceed with caution before granting summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254-55 (1986). All evidence must be viewed in the light most favorable to the non-moving party and the benefit of all inferences that are reasonably drawn from the evidence must be given to the non-moving party. *Warner-Lambert Co. v. Purepac Pharm. Co.*, 503 F.3d 1254, 1259 (Fed. Cir. 2007). The burden of establishing entitlement to summary judgment is with the movant, and in cases involving patent issues, the Court must give "due consideration to the presumptions and burdens that characterize the issues in dispute." *Quad Envtl. Tech. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 871 (Fed. Cir. 1991) (citing *Anderson*, 477 U.S. at 254; *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 388 (Fed. Cir. 1987)). Summary judgment is not appropriate in patent cases where testimonial and documentary evidence is needed for resolution of material facts. *Id.*

Patents are presumed valid. 35 U.S.C. § 282 (2009). When the '617 Patent was issued, the examiner at the Patent and Trademark Office ("PTO") was satisfied that the patent complied with the written description requirement before the examiner allowed the patent to issue. Manual of Patent Examining Procedure § 2163 (8th ed. 2008) ("Guidelines for the Examination of Patent Applications Under the 35 U.S.C. 112, para. 1, 'Written Description Requirement'");

6

*Hyatt v. Dudas*, 492 F.3d 1365, 1370 (Fed. Cir. 2007) ("[the PTO's Manual of Patent Examining Procedure] section 2163.04(I) expressly instructs the examiner to specify which claim limitation is lacking adequate support in the written description.").

"Overcoming the presumption [of patent validity] requires <u>a showing of facts</u> proved by clear and convincing evidence." *Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed. Cir. 2005) (emphasis added, citing *Connell v. Sears Roebuck & Co.*, 722 F.2d 1542, 1549 (Fed. Cir. 1983)). "That standard of proof also applies in the summary judgment context." *Id.* (citing *Nat'l Presto Indus., Inc. v. W. Bend Co.*, 76 F.3d 1185, 1189 (Fed. Cir. 1996)). "'Clear and convincing evidence' has been described as evidence that 'place[s] in the ultimate factfinder an abiding conviction that the truth of its factual contentions are highly probable.'" *Pfizer, Inc. v. Apotex, Inc.*, 480 F.3d 1348, 1359 n.5 (Fed. Cir. 2007) (citing *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)). Thus, for LendingTree to prevail, it must prove with undisputed facts and by clear and convincing evidence that the '617 Patent is invalid.

> **B.      Determining Whether There Is A Sufficient Written Description Is A Fact-Intensive Inquiry**

The written description requirement requires that the patentee "convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she was in possession *of the invention*." *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1563 (Fed. Cir. 1991) (emphasis in original). The test for sufficiency of the written description is that "the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed." *Id.* "[C]ompliance with the 'written description' requirement of § 112 is a <u>question of fact</u>." *Id.* (emphasis added, citing *In re Gosteli*, 872 F.2d 1008, 1012, (Fed. Cir. 1989); *Utter v. Hiraga*, 845 F.2d 993, 998 (Fed. Cir. 1988)). The sufficiency of the written description is a question of fact because

The descriptive text needed to meet these requirements varies with the nature and scope of the invention at issue, and with the scientific and technologic knowledge already in existence. The law must be applied to each invention that enters the patent process, for each patented advance is novel in relation to the state of the science. Since the law is applied to each invention in view of the state of relevant knowledge, its application will vary with differences in the state of knowledge in the field and differences in the predictability of the science.

*Capon v. Eshhar*, 418 F.3d 1349, 1357 (Fed. Cir. 2005).

The factual question of "the state of knowledge in the field" requires a fact-finder to assess what persons of ordinary skill in the art would understand is disclosed by the written description. The Federal Circuit has stated that a patentee does not need to "describe exactly the subject matter claimed, [instead] the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed." *Union Oil Co. of Cal. v. Atlantic Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000) (quoting *In re Gosteli*, 872 F.2d at 1012).

The Federal Circuit has found summary judgment to be improper where there are material issues of fact regarding the adequacy of a patent's written description. In *ICN Photonics, Ltd. v. Cynosure, Inc.*, 73 Fed. App'x 425, 431 (Fed. Cir. 2003), the court found that a district court erred in its grant of summary judgment regarding the lack of written description because there was a "genuine issue of material fact as to inherent support for [claim] limitations that were added to the [ ] patent claims during prosecution." Likewise, in *Vas-Cath*, 935 F.2d at 1567, the court ruled that "summary judgment in § 112 'written description' issue[s is] inappropriate where resolution of what parent disclosure conveyed to those skilled in the art may require examination of experts, demonstrations and exhibits." In *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1322-1323 (Fed. Cir. 2002), the Federal Circuit held that "the district court erred in granting summary judgment that the asserted claims of [the patent] are invalid for failure to meet the written description requirement" because "no

reasonable fact-finder could find [the defendant] demonstrated the invalidity of the [patent] claims by clear and convincing evidence."

Summary judgment regarding the adequacy of a patent's written description is inappropriate if there is disagreement over what one skilled in the art would know. In *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 970 (Fed. Cir. 2002), the Federal Circuit held that "the district court erred in granting summary judgment that the claims of the [ ] patent are invalid for failure to meet the written description requirement." The Federal Circuit emphasized that "[c]ompliance with the written description requirement is essentially a fact-based inquiry that will 'necessarily vary depending on the nature of the invention claimed.'" *Id.* at 963 (emphasis added). *See also In re Gabapentin Patent Litigation*, 395 F. Supp. 2d 175, 183 (D.N.J. 2005) (denying summary judgment for failure to comply with the written description requirement because "conflicting expert affidavits, presents a quintessential disputed issue of fact as to whether the claims of [the patent] are supported by the written description"); *Trading Techs. Int'l., Inc. v. eSpeed, Inc.*, 507 F. Supp. 2d 874, 881 (N.D. Ill. 2007) (denying summary judgment for failure to comply with the written description requirement where there was a dispute as to "how one reasonably skilled in the art would have read the [application] at the time of its filing").

The specification "need not describe the claimed subject matter in exactly the same terms as used in the claims; [rather] it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed." *All Dental Prodx LLC v. Advantage Dental Prods.*, 309 F.3d 774, 779 (Fed. Cir. 2002) (citing *Eiselstein v. Frank*, 52 F.3d 1035, 1038 (Fed. Cir. 1995)). "The invention claimed does not have to be described in ipsis

9

verbis in order to satisfy the description requirement of § 112." *Union Oil*, 208 F.3d at 1000

(citing *In re Wertheim*, 541 F.2d 257, 263 (C.C.P.A. 1976)).

At trial, LendingTree carries the burden of proof to show that the patent is invalid, and

the evidence must be clear and convincing. If the defendant has not established by <u>clear and</u>

<u>convincing evidence</u> that the specification failed to disclose the claimed invention to a person of

ordinary skill in the art, then neither summary judgment nor final judgment for the defendant on

the issue is appropriate. *Figa v. Apple, Inc.*, No. 08-10304-NG, slip op. at 11 (D. Mass. July 2,

2009), attached as Brothers Dec., Exh. I.

## IV.     ARGUMENT

LendingTree already has conceded that there is adequate written description for the claim

term "financial offering." In LendingTree's motion, it takes the position that the "financial

offering" claims are invalid for lack of written description. However, LendingTree's own

stipulation (accepted by the Court) that "financial offering(s)" means "financial products"

contradicts the argument LendingTree now makes. D.I. 129 at 6. It is undisputed, and

LendingTree has conceded, that "financial cards" are adequately described for written

description purposes. It is also undisputed that "financial cards" are an example of "financial

products." Financial cards are a subset of financial products. Hence, "financial offerings" are

adequately described because, as agreed, "financial cards" are adequately described. In short,

the parties' stipulation shows that there was and is an adequate basis to support the written

description requirement – but LendingTree is now trying to renege on its prior stipulation.

A fundamental rule of patent interpretation is that one embodiment (financial cards)

should not limit the claims (financial offers). Yet that is what LendingTree is trying to

accomplish in its motion by indirectly seeking to change the Court's claim construction.

LendingTree also misstates (at 16) the test for written description by asserting that it is whether the subject matter of the claims is actually disclosed in the specification, and not whether one of ordinary skill in the art would understand that the inventor was in possession of the invention from reading the specification, as the Federal Circuit repeatedly has ruled. LendingTree cites (at 16) *Lockwood v. American Airlines*, 107 F.3d 1565 (Fed. Cir. 1997), but *Lockwood* itself rejects LendingTree's test for written description, however: "[the patentee] argues that all that is necessary to satisfy the description requirement is to show that one is 'in possession' of the invention. [The patentee] accurately states the test[.]" 107 F.3d 1565, 1572 (Fed. Cir. 1997) (citing *Vas-Cath Inc.*, 935 F.2d at 1563-64).

*Lockwood* thus is consistent with well-established Federal Circuit law holding that the test for meeting the written description is whether one of ordinary skill in the art would understand that the inventor was in possession of the invention from reading the specification. Indeed, LendingTree's asserted test for written description flies in the face of overwhelming precedent, including the cases that LendingTree cites in its own motion. *Vas-Cath*, 935 F.2d at 1562 ("[the applicant] does not have to describe exactly the subject matter claims. . . the description must clearly allow persons of ordinary skill in the art to recognize that [he or she] invented what is claimed"); *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1118 (Fed. Cir. 2001) ("'The test for sufficiency of support . . . is whether the disclosure of the application relied upon 'reasonably conveys to the artisan that the inventor had possession at that time of the later claimed subject matter'" (quoting *Ralston Purina Co. v. Far-Mar-Co, Inc.*, 772 F.2d 1570, 1575 (Fed. Cir. 1985))); *Univ. of Rochester v. G.D. Searle & Co.*, 358 F.3d 916, 923 (Fed. Cir. 2004) ("the requirement [of written description] must

still be met in some way so as to 'describe the claimed invention so that one skilled in the art can recognize what is claimed'").

Even if LendingTree could persuade the Court to ignore established Federal Circuit law, LendingTree's motion fails because disputed issues of material fact preclude granting the motion. The issue of whether there is an adequate written description is, in the words of the Federal Circuit, "a fact-based inquiry" that requires assessing how one of ordinary skill in the art would understand the claims, as well as assessing the inventor's intent. LendingTree acknowledges as much in its motion (at 19) by trying to spin the deposition testimony of the inventor. But LendingTree has sliced and diced that testimony by cutting off sentences when the remainder favors Block, and by ignoring other evidence. In addition, the declaration from Block's expert, Dr. Kursh, explains why one of ordinary skill in the art would understand that the '617 Patent appropriately discloses financial offers. These disputed facts preclude the granting of LendingTree's motion.

> ### A. LendingTree's Motion Is Precluded By Its Own Stipulation And Violates Established Federal Circuit Law

LendingTree's motion is focused upon the claims of the '617 Patent that refer to "financial offers." During claim construction, the parties agreed, as the court accepted, that "financial offering(s)" means "financial products." D.I. 107 at 7, D.I. 129 at 6. There is no dispute – none whatsoever – that financial cards are a subset of financial products. LendingTree does not argue that the specification fails to disclose an embodiment (or a subset) of financial products – financial cards. Thus, as a matter of law, there is no basis for LendingTree's written description motion.

Hoping to avoid this glaring weakness, LendingTree engages in some legal slight of hand. LendingTree's motion focuses on the Court's claim construction regarding "financial

cards" from the '645 Patent and then tries to misapply that language to the claims of the '617 Patent that speak to financial offers. After failing to hammer the square peg into the round hole, LendingTree concludes that there is no basis for Block to claim a patent on a round hole. In fact, LendingTree is attempting to reargue claim construction.

### 1.    The '617 Patent Properly Discloses A Form Of Financial Offerings

LendingTree does not dispute that Block's claims in the '617 Patent directed to financial cards comply with the written description requirement of 35 U.S.C. § 112 ¶ 1. LendingTree does not seek partial summary judgment on the '617 Patent claims that refer to financial cards. Instead, LendingTree's motion is based upon the false premise that the '617 Patent claims relating to financial offers cannot be supported by a specification that refers in its preferred embodiment to financial cards. LendingTree is wrong as a matter of law.

In the specification of the '645 and '617 Patents, Block disclosed a preferred embodiment of its invention using financial cards. Black-letter patent law states that the description of a preferred embodiment should not be read into the claims. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) ("even when the specification describes only a single embodiment, the claims of the patent will not be read restrictively"); 5A Donald S. Chisum, *Chisum on Patents* § 18.03 (2009) ("it is improper to import (i.e. 'read in') a limitation from the specification's general discussion, embodiments and examples" (citing *Philips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005))). Indeed, in the claim construction in this case, the Court rejected LendingTree's attempt to limit the claims to the preferred embodiment: "[a]ttempting to the limit the Claims by relying on examples presented in the Preferred Embodiments ... is not permitted." D.I. 62 at 14.

By disclosing a preferred embodiment (financial cards), Block has satisfied the written description requirement. The claimed invention is generic for and supported by the preferred

embodiment.  *Cordis Corp. v. Medtronic AVE, Inc.*,  339 F.3d 1352, 1364 (Fed. Cir. 2003)

(finding that the written description requirement was satisfied although the claimed invention

was broader than the preferred embodiment); *Avidyne Corp. v. L-3 Commc'n Avionics Sys., Inc.*,

05-11098-GAO, 2008 WL 4849894 at *4 (D.Mass. Nov. 7, 2008) ("setting forth a preferred

embodiment is especially useful in fulfilling the 'written description' requirement" (citing

*Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 997 (Fed.Cir.2007); *In re*

*Cruciferous Sprout Litig.*, 301 F.3d 1343, 1348 (Fed.Cir.2002))).

LendingTree's own cases acknowledge this fundamental rule.  In *LizardTech, Inc. v.*

*Earth Resource Mapping, Inc.,* 424 F.3d 1336, 1345 (Fed. Cir. 2005), cited by LendingTree (at

18), the court stated "[a] claim will not be invalidated on <u>section 112</u> grounds simply because the

embodiments of the specification do not contain examples explicitly covering the full scope of

the claim language.  That is because the patent specification is written for a person of ordinary

skill in the art, and such a person comes to the patent with the knowledge of what has come

before."  *Id.* (emphasis added).  The court added, "it is unnecessary to spell out every detail of

the invention in the specification; only enough must be included to convince a person of skill in

the art that the inventor possessed the invention and to enable such a person to make and use the

invention without undue experimentation."  *Id*.

Here, the claims of the '617 Patent refer to both financial cards, as well as financial

offers, which the parties have agreed means financial products.  One of ordinary skill in the art

would understand that a financial card is a type of financial product.  Kursh Dec. ¶ 61.  A written

description need only disclose examples of the invention, not every possible embodiment of the

invention.  Indeed, the patent anticipated that there were other embodiments: "The present

invention has been described with reference to the preferred embodiments thereof.  Various

changes in form and details may be made without departing from the scope and spirit of the present invention." '617 Patent 6:45-47.

2. **LendingTree Is Ignoring Its Stipulation And Trying To Re-Argue Claim Construction**

LendingTree repeatedly (at 8-11) quotes the Court's claim construction from the Court's first order regarding the '645 Patent and "financial cards" to argue that the Court decided that the '617 Patent cannot as a matter of law relate to "financial offers." The quotes relied upon by LendingTree relate to the construction of "financial card." The Court was not addressing the construction of "financial offerings" at that time.

Once the '617 Patent issued and LendingTree added it by its declaratory judgment action, the Court construed that patent. During that construction, the parties stipulated and the Court agreed that "financial offering(s)" means financial products. D.I. 107 at 7, D.I. 129 at 6. Likewise, one of ordinary skill in the art would understand that a financial card is a type of financial product. Kursh Dec. ¶ 61. This construction of "financial offering" – the claim term that is the lynchpin of LendingTree's motion – is fatal to the motion.

Dissatisfied with this claim construction, LendingTree now wants this Court to change the parties' agreed-upon claim construction so that "financial offerings" is something different from "financial products." LendingTree cannot now argue for a new construction of a term when it earlier agreed on and stipulated to the current construction. *Regents of Univ. of Cal. v. Micro Therapeutics, Inc.*, 507 F. Supp. 2d 1074, 1080 (N.D. Cal. 2007) (a court will not define a term different than the parties' stipulation). LendingTree does not even try to explain why it should not be bound by its stipulation. This attempt by LendingTree should be flatly rejected as improper. Under the doctrine of the law of the case, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."

*Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 815-816 (1988) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983)); *see Key Pharms. v. Hercon Labs. Corp.*, 161 F.3d 709, 715 (Fed. Cir. 1998) (holding that doctrines of estoppel, waiver, invited error, or the like prohibit a party from asserting a claim construction inconsistent with its previous position); *Hemphill v. Proctor & Gamble Co.*, 85 Fed. App'x. 765, 767 (Fed. Cir. 2004) (applying collateral estoppel to preclude reconstruction of terms). Courts should not revisit their prior decisions in the absence of "extraordinary circumstances, such as where the initial decision was clearly erroneous." *Colt. Indus.* at 817. No extraordinary circumstances exist here; LendingTree does not argue that the claim construction stipulated to by the parties and adopted by this Court was clearly erroneous. Thus, rearguing the claim construction is inappropriate here. Because LendingTree is bound by its agreement and the Court's construction that financial offerings means financial products, and that a financial card is a sufficient example of a financial product, LendingTree's motion fails as a matter of law.

### B.    Issues Of Material Fact Preclude Summary Judgment

The question of whether there is compliance with the 'written description' requirement of § 112 is a question of fact. *Vas-Cath*, 935 F.2d at 1563-1564. For this Court to determine what a person of ordinary skill in the art would have understood from reading the '617 Patent specification, the Court must resolve disputed factual issues. The Court must evaluate the claims and specification, expert opinions and conclusions of Dr. Kursh, and the testimony of the inventor, Mr. Cunningham. While LendingTree has not submitted any expert declarations with its motion, it selectively quotes from the deposition of the inventor. As shown below, the complete testimony of the inventor, as well as the expert declaration of Dr. Steven Kursh, Block's expert on computerized financial systems, show that, at the very least, there are

fundamental factual disagreements. These factual disputes make inappropriate the grant of summary judgment.

> 1. **The '617 Patent Discloses Financial Products To One Of Ordinary Skill In The Art**

The specification and claims of the '617 Patent as understood by one of ordinary skill in the art show that the invention covers financial offers as well as its subset, financial cards. Kursh Dec. ¶ 55. For example, claim 11 recites "[a]n electronic <u>financial offering system</u> comprising" and claim 19 recites "[a] computerized method for presenting electronic <u>financial offerings</u>." Financial offerings thus are explicitly disclosed in and claimed by the '617 Patent.

The specification refers to the use of the invention with financial cards, specifically debit and credit cards. As explained by Dr. Kursh, one of ordinary skill in the art would know that these cards are not issued in isolation. Debit cards may currently be used with many types of financial products, including checking, savings, lines of credit, mortgage, money market, investment, health savings, and even gift accounts. Kursh Dec. ¶ 56. A person of ordinary skill in the art would understand from reading the specification of the '617 Patent that it was directed to financial products in general. Kursh Dec. ¶ 57. A person of ordinary skill in the art would be able to make and use the method in these patents without undue experimentation. Kursh Dec. ¶ 58. For example, one of ordinary skill in the art would understand that debit cards are tied to an underlying financial account and the process of opening those accounts is the result of financial offers. Kursh Dec. ¶ 53.

The specification "need not describe the claimed subject matter in exactly the same terms as used in the claims; [rather] it must simply indicate to persons skilled in the art that as of the [filing] date the applicant had invented what is now claimed." *All Dental Prodx*, 309 F.3d at 779. LendingTree is ignoring the knowledge of a person of ordinary skill in the art and

impermissibly attempting to require Block to describe the claimed subject matter in exactly the same terms as used in the claims.[3] Block's disclosure was sufficient for the PTO, which is required to determine that a patent complied with the written description requirement. *See* Manual of Patent Examining Procedure § 2163 (8th ed. 2008) ("Guidelines for the Examination of Patent Applications Under the 35 U.S.C. 112, para. 1, 'Written Description Requirement'"). The Federal Circuit has acknowledged that issued patents such as the '617 Patent already have been examined to ensure that they have adequate support in the written description to support the claim limitation. *Hyatt*, 492 F.3d at 1370.

Importantly, in the *Tronzo v. Biomet, Inc.* case LendingTree cited (at 18) to support its position that the written description requirement was not met, the court ruled that the specification "specifically distinguish[ed] the prior art as inferior and touts the advantages of the [disclosed embodiment]." 156 F.3d 1154, 1159 (Fed. Cir. 1998). In other words, in that case, the claimed invention did not satisfy written description because the specification actually taught away from and specifically disclaimed certain embodiments of the broader claim. By contrast, in the '617 Patent, financial offerings are never suggested to be inferior; in fact, the specification embraces such equivalents by stating that "[v]arious changes in form and details may be made without departing from the scope and spirit of the present invention." '617 Patent 6:45-47.[4]

---

[3] LendingTree itself implicitly acknowledged that the claimed invention encompasses more than financial cards when it unsuccessfully asserted prior art broader than financial cards during the reexamination of the '645 Patent. During the reexamination proceedings, LendingTree provided U.S. Patent No. 5,878,403, directed towards a computer implemented application system for auto loans, to argue that the '645 Patent was invalid. The '403 Patent did not reference financial cards, but instead referenced other financial products.

[4] Likewise, in *University of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 927 (Fed. Cir. 2004), summary judgment was only affirmed because a compound that could be used in a claimed method had not existed, therefore would absolutely have been unknown to the skilled artisan, at the time of patenting. By contrast, here, financial offerings existed at the time of patenting. Kursh Dec. ¶ 60; *see also* Cunningham Dep. 228:15-229:9.

### 2.  The Inventor's Testimony Shows That The '617 Patent Covers Financial Offers

LendingTree (at 19) repeatedly quotes from the deposition testimony of the inventor.  In doing so, LendingTree acknowledges that the inventor's testimony is relevant to this analysis.  The inventor of the Block patents, Gordon Cotter Cunningham, testified in response to questions from LendingTree's counsel that he understood and intended that his invention be used for financial products.  Cunningham Dep. 199:16-24.  He discussed his ideas with his brother and his brother's boss, both of whom were mortgage brokers.  Cunningham Dep. 108:1-5, 111:14-22.  He searched the internet for prior art relevant to <u>financial products</u> (not just credit cards, or even financial cards) before submitting his patent application.  Cunningham Dep. 228:15-229:9 (emphasis added).  Mr. Cunningham pitched his ideas to Countrywide Mortgage in 1996 or 1997 because he knew his invention had application in the mortgage industry.  Cunningham Dep. 199:25-200:13.  Countrywide Mortgage offers many types of financial productions, which are not limited to financial cards.  Kursh Dec. ¶ 59.

Mr. Cunningham's testimony shows that he was in possession and had conceived the full scope of his claims at the time of invention because his conception included financial offerings.  The law requires nothing more than "the complete performance of the mental part of the inventive act . . . the formation, in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is thereafter to be applied in practice."  *Coleman v. Dines*, 754 F.2d 353, 359 (Fed. Cir. 1985).[5]

LendingTree argues (at 19) that Cunningham said he had no memory of being in possession of the subject matter covered by the "financial offering" claims of the '617 Patent.

---

[5] In *Lockwood v. American Airlines*, 107 F.3d 1565, 1572 (Fed. Cir. 1997), cited by LendingTree at 16, the court first held that there were no pertinent factual disputes before issuing summary judgment of invalidity for failure to comply with the written description requirement.  Here, not only are there factual disputes, but fact and expert testimony showing the written description is adequate.

LendingTree conveniently ignores Cunningham's testimony verifying that he had invented the concept. *See, e.g.,* Cunningham Dep. 108:1-5 ("here's [the borrower's] credit, here's [the borrower's] history. And then lenders could offer different packages of rates, fees, mileage, whatever, to the consumer in an attempt to entice them to take their product."); 111:14-22 ("I did have conversations with my brother's mortgage broker, his boss who was a -- owned a mortgage shop in Arkansas."); 114:19-24 (When asked if the inventor thought he could make his system work for mortgages, he replied, "I think you could have done it."); 199:16-24 (Cunningham knew that the claims in the '617 Patent were not limited to financial cards); 199:25-200:13 ("we had pursued other lines along this invention, you know, the -- the guy who threw me out of the office was at Countrywide. They're a big mortgage lender. That's why I talked to my brother, big mortgage guy -- or not big, but a mortgage broker. So this was not news that we were thinking beyond cards."); 221:1-5 (The LendingTree system is "exactly what we envisioned."); 228:15-229:9 ("we looked -- as I mentioned initially, the universe of areas we were focused on ran from credit cards to mortgages to car loans to autos, and we honed in on credit cards, but we tried to survey all of those at first.").

LendingTree also ignores additional testimony from the inventor showing that he intended to include the broader category of financial products, not just the subset of financial cards. For example, LendingTree ignores the fact that the inventor discussed the idea of banks competing for borrower's business for various types of financial products – not just financial cards – with his brother and his brother's boss, both mortgage brokers. Cunningham Dep. 108:1-5, 111:14-22. LendingTree ignored Mr. Cunningham's offer to find both witnesses and have them testify as to those conversations. Cunningham Dep. 158:11-19. LendingTree ignores the fact that Cunningham actively pitched his patented idea to Countrywide, a loan company that

had many products that were not financial cards, including mortgages without financial cards. Cunningham Dep. at 199-200; Kursh Dec. ¶ 59.

LendingTree also argues (at 19) that the claims are invalid because the inventor no longer has written evidence of conceiving of using this invention for something other than financial cards. What is relevant is what the inventor knew and had in his possession at the time of the invention, not thirteen years after the application leading to the '645 Patent was filed. *See All Dental Prodx*, 309 F.3d at 779 (stating that possession must be shown in the description as of the filing date of the application). Furthermore, an inventor only needs to be in possession of a writing in order to claim a priority date earlier than the filing of his application. *Singh v. Brake*, 222 F.3d 1362, 1367, 1370 (Fed. Cir. 2000) ("when a party seeks to prove conception ... that party must proffer evidence corroborating... there is no particular formula that an inventor must follow in providing corroboration... a notebook page may well show that the inventor conceived what he wrote on the page."). Block is not trying to claim a priority date earlier than the filing of the parent application; thus, LendingTree's argument is without merit.

## V.     CONCLUSION

The '617 Patent properly discloses and claims financial offers as required by 35 U.S.C. § 112 ¶ 1. At the very least, there are disputed issues of material fact that require trial and preclude granting LendingTree's motion for summary judgment.

July 31, 2009                                          Respectfully submitted,


s/ Mark W. Brennan
Robert M. Thompson (Mo. Bar No. 38156)          Gary M. Hoffman (Admitted *Pro Hac Vice*)
Mark W. Brennan (Mo. Bar No. 39117)             Kenneth W. Brothers (Admitted *Pro Hac Vice*)
BRYAN CAVE LLP                                  Kimberly R. Parke (Admitted *Pro Hac Vice*)
3500 One Kansas City Place                      Thomas D. Anderson (Admitted *Pro Hac Vice*)
1200 Main Street, Suite 3500                    DICKSTEIN SHAPIRO LLP
Kansas City, MO 64015-2100                      1825 Eye Street, NW
Tel.: 816-374-3200 Fax: 816-374-3300            Washington, DC 20006
mwbrennan@bryancave.com                          Tel.: 202-420-2200
rmthompson@bryancave.com                         Fax:  202-420-2201
                                                HoffmanG@dicksteinshapiro.com
Jeffrey S. Standley (Admitted *Pro Hac Vice*)    BrothersK@dicksteinshapiro.com
F. Michael Speed, Jr. (Admitted *Pro Hac Vice*)  ParkeK@dicksteinshapiro.com
Mark R. Engle (Admitted *Pro Hac Vice*)          AndersonT@dicksteinshapiro.com
STANDLEY LAW GROUP LLP
6300 Riverside Drive                            ATTORNEYS FOR BLOCK FINANCIAL
Dublin, OH 43017                                LLC
Tel.: 614-792-5555
Fax: 614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mengle@standleyllp.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on July 31, 2009 via

mail and/or electronic transmission to:

Robert D. Fram (Admitted Pro Hac Vice)
Winslow B. Taub (Admitted Pro Hac Vice)
Leslie N. Harvey (Admitted Pro Hac Vice)
Deanna L. Kwong (Admitted Pro Hac Vice)
COVINGTON & BURLING LLP
One Front Street
San Francisco, CA 94111
Tel: (415) 591-6000 / Fax: (415) 591-6091
rfram@cov.com
wtaub@cov.com
lharvey@cov.com
dkwong@cov.com

Edward R. Spalty (Missouri Bar No. 26086)
David A. Jermann (Missouri Bar No. 51389)
ARMSTRONG TEASDALE LLP
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
Tel: (800) 243-5070 / Fax: (816) 329-5426
espalty@armstrongteasdale.com
djermann@armstrongteasdale.com

    s/ Mark W. Brennan
By: Mark W. Brennan
Attorney for BLOCK FINANCIAL LLC