# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 01-1007-cv-ODS |
| LENDINGTREE, LLC, | ) ) | |
| Defendant. | ) ) | |
| LENDINGTREE, LLC, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 08-cv-164-ODS |
| BLOCK FINANCIAL LLC, (formerly known as "BLOCK FINANCIAL CORPORATION") and DOES 1 through 10, inclusive, | ) ) ) ) | |
| Defendants. | ) | |

**LENDINGTREE, LLC'S REPLY SUGGESTIONS IN SUPPORT OF LENDINGTREE, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. SECTION 112, ¶ 1 FOR LACK OF WRITTEN DESCRIPTION**

# TABLE OF CONTENTS

I. Introduction ........................................................................................................... 1

II. LendingTree's Response to Block's Statement of Uncontroverted Material Facts ............ 3

    A. Pursuant to Local Rule 56.1, the Court Should Deem All Facts in LendingTree's Opening Statement of Uncontroverted Material Facts As Admitted for Purposes of This Motion, As Block Has Not Specifically Controverted Any Of Those Facts. .......................................................... 3

    B. LendingTree's Fact No. 4 Is Material To This Motion Because the Financial Offering Claims in the '617 Patent Seek Priority Back to the Filing Date of Its Parent, the Application From Which the '645 Patent Issued. ....................................................................................................... 4

    C. Block's Proposed Additional Facts Do Not Raise a Genuine Disputed Issue of Fact Material to This Motion And Are Irrelevant And/Or Would Not Be Admissible in Evidence. ................................................................. 5

III. Argument ........................................................................................................... 14

    A. The Financial Offering Claims Are Invalid Under Section 112, ¶ 1. ................... 15

        1. The Specification's Disclosure Of A Purported "Financial Card" Invention Does Not Disclose A "Financial Offering" Invention. ............. 15

        2. The Financial Card Claims Cannot Provide Their Own Support Because They Were Not Part Of The Originally Filed Application. ........ 20

    B. If The Court Determines That The Financial Offering Claims Are Valid Under Section 112, ¶ 1, Their Effective Date Is February 8, 2002. .................... 22

    C. Block's Additional Rebuttal Points Fail To Raise A Dispute of Material Fact. ........................................................................................................... 23

        1. Block's Accusation That LendingTree Is Trying to Renege On a Prior Stipulation And Reargue Claim Construction Has No Basis In Fact. ................................................................................................. 23

        2. Dr. Kursh's Opinions Are Conclusory, Irrelevant, and/or Inconsistent With the Law of the Case. ................................................. 24

        3. The Inventor Deposition Testimony Does Not Create a Genuine Dispute of Material Fact. .................................................................... 26

IV. Conclusion ......................................................................................................... 27

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Med. Sys., Inc. v. Biolitec, Inc.*,
    603 F. Supp. 2d 251 (D. Mass. 2009) ......................................................................17

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    560 F.3d 1366 (Fed. Cir. 2009)..............................................................................25

*Avidyne Corp.*,
    2008 WL 4849894 (D. Mass. Nov. 7, 2008) ..........................................................20

*Chiron Corp. v. Genentech, Inc.*,
    363 F.3d 1247 (Fed. Cir. 2004)..............................................................................22

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003)........................................................................19, 20

*Del Mar Avionics, Inc. v. Quinton Instrument Co.*,
    836 F.2d 1320 (Fed. Cir. 1987)..............................................................................17

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
    323 F.3d 956 (Fed. Cir. 2002) ......................................................................... passim

*Honeywell Int'l v. Univ. Avionics Sys. Corp.*,
    488 F.3d 982 (Fed. Cir. 2007)................................................................................20

*In re Cruciferous Sprout Litigation*,
    301 F.3d 1343 (Fed. Cir. 2002)..............................................................................20

*In re Curtis*,
    354 F.3d 1347 (Fed. Cir. 2004)..............................................................................22

*LizardTech Inc. v. Earth Res. Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005)........................................................................17, 19

*Lockwood v. Am. Airlines Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997)........................................................................25, 27

*Logan v. Liberty Healthcare Corp.*,
    416 F.3d 877 (8th Cir. 2005) ......................................................................7, 8, 9, 25

*Miller v. Solem*,
    728 F.2d 1020 (8th Cir. 1984) ...............................................................................25

*Mukherjee v. Chu*,
    217 F. App'x 971 (Fed. Cir. 2007) .........................................................................17

Case 4:01-cv-01007-ODS   Document 179   Filed 08/26/09   Page 3 of 34

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*,
    7 F.3d 1571 (Fed. Cir. 1993)...................................................................13, 27

*Pandrol USA, LP v. Airboss Ry. Prods., Inc.*,
    320 F.3d 1354 (Fed. Cir. 2003)..........................................................................17

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008)..........................................................................22

*Purdue Pharma L.P. v. Faulding Inc.*,
    230 F.3d 1320 (Fed. Cir. 2000)...............................................................3, 8, 21

*Toro Co. v. White Consol. Indus., Inc.*,
    383 F.3d 1326 (Fed. Cir. 2004)..........................................................................17

*Transam. Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*,
    597 F. Supp. 2d 897 (N.D. Iowa 2009)..............................................................17

*Tronzo v. Biomet, Inc.*,
    156 F.3d 1154 (Fed. Cir. 1998)..............................................................18, 19, 22

*Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*,
    264 F.3d 1111 (Fed. Cir. 2001)..........................................................................18

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    358 F.3d 916 (Fed. Cir. 2004)......................................................................14, 25

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
    375 F.3d 1303 (Fed. Cir. 2004)............................................................................4

**STATUTES**

35 U.S.C. Section 112, ¶ 1 .............................................................................. passim

**OTHER AUTHORITIES**

37 C.F.R. § 1.131 ...............................................................................................27

Local Rule 56.1 ............................................................................................... passim

## I.    Introduction

To be valid under Section 112, ¶ 1 the "financial offering" claims of the '617 Patent must find support in the specification of the patent.  No such support exists. Alternatively, the claims must themselves have been part of the originally filed application for that patent.  They were not.  Accordingly, the "financial offering" claims are invalid under Section 112, ¶ 1.

To claim the priority date of its parent application (the '645 Patent), the financial offering claims of the '617 Patent must be supported by the written description in that parent application.  There is no such support.  At best, they can claim priority only to the date on which they were filed: February 8, 2002.

Block has conceded that there is no express disclosure of "financial offering" anywhere in the specification[1] of the '617 Patent or in that of the parent '645 Patent.  The only express statement of "financial offering" that Block identifies are the words "financial offering" as they appear in the later-added "financial offering" <u>claims themselves</u> as they appear in the '617 Patent.  Block, however, does not contend that these claims were part of the originally filed application for the '617 Patent, because it cannot.  These "financial card" claims were first submitted by the applicant <u>in an amendment</u> to the application for the '617 Patent.  They are, therefore, irrelevant to the Section 112, ¶ 1 inquiry as a matter of law.

Because Block cannot point to any express disclosure in the parent '645 Patent, it instead contends that by disclosing one type of "financial product" – namely, financial cards – that it has somehow disclosed the entire genus of financial offerings.  Block's argument is flawed

---

[1] For the purposes of clarity, this brief will refer to the "specification" as that part of the patent other than the claims; it will refer to the claims themselves as the "claims."

in that it ignores that while a species can be a member of a genus, it is not true that simply identifying one species automatically constitutes an adequate description of the genus. Describing a financial card does not describe all financial offerings any more than describing a bicycle describes all transportation offerings.

Nor can Block contend that in this particular case the disclosure of a purported "financial card" invention somehow discloses an invention directed to "financial offerings." To do so would violate this Court's Claim Construction Orders, which are binding as the law of the case. The dispositive point for this motion is that the Court already has concluded that the term "financial card" does not encompass financial products other than financial cards.

Block is now effectively rearguing, for the third time, that the term "financial card" somehow means more than its ordinary meaning and conveys checks, mortgages, auto loans, and every other product falling into the entire broad category of "financial offerings." That argument was unsuccessfully put forth twice already during claim construction – once during construction of terms in the '645 Patent and a second time during construction of terms in the '617 Patent. The Court both times correctly rejected Block's prior overreaching arguments concerning what the term "financial card" conveys.

Block's assertion that the phrase "financial offering" appears numerous times in the '617 Patent misrepresents the facts. The phrase appears only in the claims themselves. In this case, that cannot save the claims under Section 112, ¶ 1. As noted, these claims were not part of the original continuation application filed on June 1, 1999. Rather, they were added in an amendment that the U.S. Patent and Trademark Office received on February 8, 2002. As a matter of law, they cannot, therefore, provide their own support. The Federal Circuit has made clear that written description support for underlined amended claims must be found in the disclosure of the

2

application as originally filed, and that the amended claims themselves are irrelevant to the written description inquiry. *See Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1328-29 (Fed. Cir. 2000).

Even if the Court were to conclude that later-added financial offering claims are somehow valid under Section 112, ¶ 1, Block is still not entitled to the earlier priority date that it seeks. Instead, the alternative relief sought by LendingTree must be granted: the effective date of the financial offering claims must be deemed the February 8, 2002 date on which they were added to the child application. *See* LendingTree Br. at 20 n.4. [2] Notably, in its opposition papers, Block has not expressed any objection to or disagreement with February 8, 2002 as being the applicable date for the financial offering claims if they were valid under Section 112, ¶ 1 and cannot claim priority back to the parent '645 Patent.

Accordingly, the Court should grant LendingTree's motion and conclude that the financial offering claims of the '617 Patent are invalid under 35 U.S.C. § 112, ¶ 1. In the alternative, the Court should deem the effective date of the financial offering claims to be the February 8, 2002 date on which they were added through an amendment to the child application.

## II.    LendingTree's Response to Block's Statement of Uncontroverted Material Facts

### A.    Pursuant to Local Rule 56.1, the Court Should Deem All Facts in LendingTree's Opening Statement of Uncontroverted Material Facts As Admitted for Purposes of This Motion, As Block Has Not Specifically Controverted Any Of Those Facts.

In its opposition papers, Block objects to only one of the 36 facts set forth in LendingTree's Statement of Uncontroverted Material Facts, and only on the ground of

---

[2] For ease of reference, LendingTree herein will cite to its opening Suggestions in Support of LendingTree, LLC's Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. Section 112, ¶ 1 For Lack of Written Description as "LendingTree Br."

immateriality.  Because Block does not controvert any of LendingTree's facts, pursuant to Local

Rule 56.1, all of LendingTree's proffered facts shall be deemed admitted for the purpose of this

motion.  *See* Local Rule 56.1(a) ("All facts set forth in the statement of the movant shall be

deemed admitted for the purpose of summary judgment unless specifically controverted by the

opposing party.").

    **B.**    **LendingTree's Fact No. 4 Is Material To This Motion Because the Financial Offering Claims in the '617 Patent Seek Priority Back to the Filing Date of Its Parent, the Application From Which the '645 Patent Issued.**

Block's only objection to LendingTree's Statement of Uncontroverted Material

Facts concerns Fact No. 4, which stated: "The '645 Patent contains claims directed to 'financial

cards,' but has no claims using the term 'financial offerings.'"  Block does not controvert this

fact, but argues (at 3, "Counterstatement Fact No. 84") that it is immaterial because the financial

offering claims at issue on this motion are in the '617 Patent, and not in the '645 Patent.  Block's

argument is without merit because the financial offering claims are in a child application that

claims priority back to the filing date of its parent, the application from which the '645 Patent

issued.  As such, the claims of the '645 Patent are part of the original disclosure in which the

written description support for the financial offering claims must be found.  *See Univ. of*

*Rochester v. G.D. Searle & Co., Inc.*, 375 F.3d 1303, 1307 (Fed. Cir. 2004) (Lourie, J.,

concurring) ("As for the proposition that an original claim is part of the written description, that

is clear."); *see also* MPEP § 2163 ("The claims as filed in the original specification are part of

the disclosure.").  Thus, the uncontroverted fact that none of the claims in the '645 Patent uses

4

the term "financial offerings" is squarely material to this motion. For this reason, Block's immateriality objection should be overruled.[3]

### C. Block's Proposed Additional Facts Do Not Raise a Genuine Disputed Issue of Fact Material to This Motion And Are Irrelevant And/Or Would Not Be Admissible in Evidence.

Although Block refers to them as "counterstatement facts," it is clear that the 15 facts in Block's opposition papers (at 3-6) are instead additional facts that Block argues are material to this motion. As discussed in detail below, Block's additional facts raise no genuine disputed issue of fact material to this motion. Rather, they are irrelevant, improper, and/or would not be admissible in evidence.

As also noted below, Block has failed to comply with the procedural requirements of Local Rule 56.1. Many of the counterstatements set forth multiple purported facts in a single numbered paragraph, in violation of Local Rule 56.1. *See* Local Rule 56.1(a) ("Each fact in dispute shall be set forth in a separate paragraph."). Nonetheless, LendingTree will respond to Block's additional facts in the order they are presented in Block's papers.

84. Controverted and immaterial. LendingTree disputes the following purported "fact":

> In addition, both the '617 Patent and the '645 Patent discuss financial products that have financial cards associated with them. For example, the abstracts of both patents refer to financial cards as including debit cards.

Counterstatement Fact No. 84. By referring to a debit card as an example of "financial products that have financial cards associated with them," Block is attempting to state that debit cards inherently disclose non-card financial products. But any argument or opinion that a debit card (which is nothing more than a type of financial card) denotes non-card

---

[3] Block's objection to LendingTree's Fact No. 4 includes several additional facts that Block asserts are material to this motion. LendingTree will address those in Section II.C., above.

financial products runs afoul of the law of the case and, for that reason, should be rejected. *See* Section III.C.2., *infra*. Thus, any recitation of "debit card" in the asserted patents is immaterial to this motion. The remainder of Block's Counterstatement Fact No. 84 is argument concerning LendingTree's Fact No. 4, which is addressed in Section II.B., *supra*.

85. Controverted and immaterial. Counterstatement Fact No. 85 is improper because it contains multiple purported facts in a single numbered paragraph, in violation of Local Rule 56.1. LendingTree disputes that "[o]ne of ordinary skill in the art reading the specification of the '617 Patent would know that debit cards are, by definition, tied to an underlying financial account," which is also irrelevant to this motion. That purported "fact" is actually a legal argument that runs afoul of the Court's Claim Construction Orders and, therefore, the law of the case. Block is attempting to state that a debit card inherently discloses the broader genus of "financial offerings" and not merely the species of "financial cards." There is no dispute that the specification defines a debit card as a type of financial card. *See* '645 Patent, Abstract ("A system is disclosed for presenting financial card (e.g., credit card, debit card) offers.…"); *id.* at 1:16-17 ("Financial institutions interested in locating new customers for their financial cards (such as credit cards, debit cards, etc.) often rely on direct mailings."). Any argument, however, that a financial card denotes non-card financial products runs afoul of the law of the case and, for that reason, should be rejected. *See* Section III.C.2., *infra*. Thus, any recitation of "debit card" in the asserted patents does not create a material issue of disputed fact; it is irrelevant as a matter of law.

Block's statement that the process of opening debit card accounts "is the result of financial offers that are covered by the Block patents" simply confuses what a debit card is (a financial card) with what it might relate to (some form of account). Even if this argument had merit, it cannot contradict the Court's Claim Construction Orders. Further, it is nothing more than a conclusory expert opinion, which is insufficient to raise a genuine dispute of material fact. *See, e.g.*, *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 882 (8th Cir. 2005) ("'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'") (citations omitted).

86. Uncontroverted, but immaterial. There is no dispute that the asserted patents repeatedly refer to "financial cards." However, as explained herein, recitation of the species "financial cards" is insufficient to disclose the entire broad genus of financial offerings. Even if this argument had merit, it cannot contradict the Court's Claim Construction Orders. Thus, any recitation of "financial cards" in the asserted patents does not create a material issue of disputed fact.

87. Uncontroverted but immaterial. There is no dispute that the asserted patents repeatedly use the term "card offers." But that is immaterial because "card offers" still refers to nothing more than financial cards. As explained herein, recitation of the species "financial cards" is insufficient to disclose the entire broad genus of financial offerings. Even if this argument had merit, it cannot contradict the Court's Claim Construction Orders. Thus, any recitation of "financial cards" or "card offers" in the asserted patents does not create a material issue of disputed fact.

88. Controverted and immaterial. LendingTree disputes this fact because it is misleading, in that the only recitation of the term "financial offering(s)" is in the later-added financial

offering claims in the '617 Patent. The language of the later-added claims is immaterial to the question of whether the financial offering claims can claim priority back to the parent '645 Patent – only the disclosure in the parent '645 Patent is relevant to that inquiry. Additionally, the later-added claims themselves are immaterial to the written description inquiry because they cannot provide their own written description support. They were not original claims in the continuation application as filed, but were later added in an amendment. *See Purdue*, 230 F.3d at 1328-29.

89. Controverted and immaterial. Counterstatement Fact No. 89 is improper because it contains multiple purported facts in a single numbered paragraph, in violation of Local Rule 56.1. LendingTree disputes the statement in Counterstatement Fact No. 89 that "[o]ne of ordinary skill in the art reading the '617 Patent would know that it relates to financial products…" as it is premised on nothing more than a conclusory expert opinion, which is insufficient to create a genuine issue of material fact. *See, e.g.*, *Logan*, 416 F.3d at 882 ("'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'") (citations omitted).

      The purported "facts" in Counterstatement Fact No. 89 about debit cards actually constitute a legal argument that runs afoul of the Court's claim construction orders and, therefore, the law of the case. Block is attempting to state that a debit card inherently discloses the broader genus of "financial offerings" and not merely the species of "financial cards." There is no dispute that the specification defines a debit card as a type of financial card. *See* '645 Patent, Abstract ("A system is disclosed for presenting financial card (e.g., credit card, debit card) offers.…"); *id.* at 1:16-17 ("Financial institutions interested in locating new customers for their financial cards (such as credit

cards, debit cards, etc.) often rely on direct mailings." Any argument, however, that a financial card denotes non-card financial products runs afoul of the law of the case and, for that reason, should be rejected. *See* Section III.C.2., *infra*. Thus, any recitation of "debit card" in the asserted patents does not create a material issue of disputed fact; it is irrelevant as a matter of law. Further, the statement that "one of ordinary skill in the art would understand that debit cards are tied to an underlying financial account…" is nothing more than a conclusory expert opinion, which is insufficient to raise a genuine dispute of material fact. *See, e.g.*, *Logan*, 416 F.3d at 882 ("'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'") (citations omitted). The statement that "[a] debit card cannot exist without an underlying financial account to pull funds from" is entirely lacking in any support.

Block's statement that "the process of opening those [debit card] accounts is the result of financial offers that are covered by the Block patents" simply confuses what a debit card is (a financial card) with what it might relate to (some form of account). Even if this argument had merit, it cannot contradict the Court's Claim Construction Orders. Further, it is nothing more than a conclusory expert opinion, which is insufficient to raise a genuine dispute of material fact. *See, e.g.*, *Logan*, 416 F.3d at 82 ("'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'") (citations omitted).

90. Uncontroverted. Counterstatement Fact No. 90 is improper because it contains multiple purported facts in a single numbered paragraph, in violation of Local Rule 56.1. There is no dispute as to the definition of the term "financial offering" or whether that definition was set forth in the Claim Construction Orders.

9

91.   Controverted and immaterial.  Counterstatement Fact No. 91 is improper because it
      contains multiple purported facts in a single numbered paragraph, in violation of Local
      Rule 56.1.  The circumstances or timing of Mr. Cunningham's deposition is irrelevant to
      this motion.  Whether or not Mr. Cunningham testified that he had understood and
      intended the claims of the '617 Patent to cover more than just financial cards is
      immaterial to the question of whether the specification actually discloses the possession
      of a "financial offerings" invention.  Whether or not Mr. Cunningham testified that he
      had understood and intended the claims of the '617 Patent to cover more than just
      financial cards is immaterial for the additional reason that the critical issue is not whether
      the inventor actually possessed the invention of the full scope of the claims in his private
      thoughts, but whether what was possessed is sufficiently set forth in the written
      description.  *See Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir.
      2002) ("Application of the written description requirement, however, is not subsumed by
      the 'possession' inquiry.  A showing of 'possession' is ancillary to the *statutory* mandate
      that 'the specification shall contain a written description of the invention,' and that
      requirement is not met if, despite a showing of possession, [t]he specification does not
      adequately describe the claimed invention.") (emphasis in original).

92.   Controverted and immaterial.  Whether or not Mr. Cunningham testified that he had
      understood and intended the claims of the '617 Patent to cover more than just financial
      cards is immaterial to the question of whether the financial offering claims can claim
      priority back to the parent '645 Patent – only the disclosure in the parent '645 Patent is
      relevant to that inquiry.  Whether or not Mr. Cunningham testified that he had understood
      and intended the claims of the '617 Patent to cover more than just financial cards is

immaterial for the additional reason that the critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

93.     Controverted and immaterial. Whether or not Mr. Cunningham met with the CEO of Countrywide Mortgage and offered a system covered by the asserted patents is immaterial because the critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

94.     Controverted and immaterial. Whether or not the LendingTree system is what Mr. Cunningham had hoped to cover in his asserted patents is irrelevant to the question of whether the financial offering claims meet the written description requirement. The critical issue is not whether the inventor actually possessed the invention of the full scope

of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

95.    Controverted and immaterial. The type of prior art that Mr. Cunningham searched is irrelevant to the question of whether the financial offering claims meet the written description requirement. The critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

96.    Controverted and immaterial. Whether or not Mr. Cunningham talked to others is irrelevant to the question of whether the financial offering claims meet the written description requirement. The critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts or shared the idea verbally with a few others prior to filing his patent application, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969

("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

97. Controverted and immaterial. Whether or not Mr. Cunningham offered to obtain his brother's and his brother's boss's testimony to corroborate his own testimony is irrelevant to the question of whether the financial offering claims meet the written description requirement. The critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description. *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry. A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original). Furthermore, the testimony of his brother and/or brother's boss likely would be inadmissible hearsay. Mr. Cunningham's own self-serving testimony itself has little weight. *See N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1577 (Fed. Cir. 1993) (stating that "after-the-fact [inventor] testimony is of little weight compared to the clear import of the patent disclosure itself").

98. Controverted and immaterial. This fact is immaterial because Mr. Cunningham's testimony goes to enablement, which is a separate statutory requirement not at issue on

this motion.  *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 921-22 (Fed. Cir. 2004) (explaining that 35 U.S.C. § 112, ¶ 1 has three separate requirements and that "an invention may be enabled even though it has not been described").  Further, even if this fact went to possession, the critical issue is not whether the inventor actually possessed the invention of the full scope of the claims in his private thoughts, but whether what was possessed is sufficiently set forth in the written description.  *See Enzo*, 323 F.3d at 969 ("Application of the written description requirement, however, is not subsumed by the 'possession' inquiry.  A showing of 'possession' is ancillary to the *statutory* mandate that 'the specification shall contain a written description of the invention,' and that requirement is not met if, despite a showing of possession, [t]he specification does not adequately describe the claimed invention.") (emphasis in original).

## III.    Argument

The financial offering claims of the '617 patent are invalid under Section 112, ¶ 1 for two reasons.  First, there is no support for those claims in the specification of the patent.  Second, the claims cannot provide their own support because they were not part of the originally filed application for that patent.  Alternatively, if for some reason the Court were to determine that the financial offering claims are valid under Section 112, ¶ 1, those claims cannot claim priority to any date prior to the date on which they were submitted as an amendment to the '617 application.   The claims constituted "new matter" as of that date, limiting the priority of the claims to the date on which they were submitted.  Finally, Block's various attempts to create a disputed issue of material fact are misplaced.  The inventor's testimony that Block cites is irrelevant.  Its expert's conclusory statements cannot contradict the Court's Claim Construction Orders.  And Block's suggestion that LendingTree is somehow seeking to renege on a claim

construction stipulation is simply a diversion.  LendingTree is seeking to apply the Court's

Orders.  Block is attempting to evade their import.

### A.     The Financial Offering Claims Are Invalid Under Section 112, ¶ 1.

#### 1.     The Specification's Disclosure Of A Purported "Financial Card" Invention Does Not Disclose A "Financial Offering" Invention.

Block's theory that the specification of the asserted patents provides support for

the financial offering claims relies on the theory that the disclosure of a financial card invention

inherently discloses an invention covering the entire genus of financial offerings.  Block's

argument that disclosure of one species, financial cards, is coextensive with disclosure of the

entire genus of financial offerings, directly contradicts both the law of the case and precedent

case law.

##### a)     The Law of The Case Is That Disclosure of Financial Cards Is Not Disclosure of Any and All Financial Products.

The specification of the patents-in-suit repeatedly refers to "financial card offers"

but never refers to "financial offerings" and never mentions any non-card financial products.

Block's opposition hinges, therefore, on the premise that the term "financial card" denotes card

financial products and non-card financial products.  That premise is nothing new, as Block has

tried to assert it twice already in this case.  The Court correctly rejected it both times previously.

As described in LendingTree's opening suggestions (at 1-2, 8-11, 18), during

claim construction of both asserted patents, Block sought an expansive construction of "financial

card."  In its first attempt, Block pushed to define "financial card" to mean "any medium issued

to a holder that provides access to financial benefits and resources."  9/27/2007 Claim

Construction Order at 4.  The Court rejected Block's overbroad definition, instead construing

"financial card" to mean "a tangible piece of plastic or similar material issued by a financial

institution that authorizes the card holder to purchase goods and services on credit or by debiting

a bank account, for example, a credit card or debit card," and concluding that the asserted patents describe only financial cards and no other financial products: "[N]ot all acquisitions of credit (or other accesses to money) are described [in the specification]; *only* those that can be accessed via the use of a 'financial card' are described." 9/27/2007 Claim Construction Order (Document No. 62) at 4-5 (emphasis added).

In its second attempt, this time during construction of terms in the '617 Patent, Block insisted that "the term 'financial card' as used in the '617 Patent is broad and can include things that are not made of plastic or similar material, such as paper." 2/19//2007 Second Claim Construction Order at 2. The Court rejected Block's renewed attempt to expand the reach of its patents, reiterating that the term "financial card' does not mean non-card financial products such as checks and concluding that Block again was overreaching:

> In the Court's view, Block is attempting to expand the reach of its patents. Distorting the definition of "financial card" beyond its typically accepted meaning is one of its methods to this end. Block was free to clearly define the term in the manner it now posits when it applied for the patent; of course, past history indicates the PTO would not have approved the patent with such an expansive definition.

2/19/2009 Second Claim Construction Order (Document No. 129) at 4. The Court held that the prosecution history of the asserted patents further evidenced that the patents only disclosed financial cards:

> Plaintiffs response to the PTO is replete with references to the "credit card industry." At no time did Plaintiff suggest its invention could be used for other financial products, nor did Plaintiff utilize a term with greater breadth than "financial card." Indeed, to now argue for a more abstract understanding of the phrase appears inconsistent with the position Plaintiff took to persuade the PTO to reverse its initial rejection of the patent.

9/27/2007 Claim Construction Order at 5.

Block's current argument that the specification's description of use of the invention to locate financial card offers reasonably conveys to one of ordinary skill in the art that the inventor had possessed an invention to locate check offers, mortgage offers, auto loan offers, student loan offers, and any and all other types of financial offerings must, therefore, be rejected as being inconsistent with the Claim Construction Orders. Those Orders are binding as the law of the case. *See Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1336 (Fed. Cir. 2004) (rejecting argument that would require departure from the trial court's claim construction, which was "the law of the case"); *Pandrol USA, LP v. Airboss Ry. Prods., Inc.*, 320 F.3d 1354, 1363 (Fed. Cir. 2003) (noting that the earlier claim construction in the case was correct and, in any event, was "binding as the law of the case"); *Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1324 (Fed. Cir. 1987) (stating that "the prior findings and the claim construction based thereon are the law of the case" and "are not available for redetermination"); *see also Am. Med. Sys., Inc. v. Biolitec, Inc.*, 603 F. Supp. 2d 251, 256 (D. Mass. 2009); *Transam. Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 910 (N.D. Iowa 2009).

For at least this reason, the present case is not a situation where disclosure of one species is sufficient to disclose the entire genus. The law of the case makes clear that disclosure of financial cards is not disclosure of all financial products.

> **b)** **The Case Law Supports a Finding that Disclosure of Financial Cards, As A Matter of Law, Is Insufficient.**

The case law further demonstrates that Block's position is without merit. Block cannot overcome the authority in LendingTree's opening suggestions (at 18-19), which demonstrates that disclosure of financial cards is not enough to overcome invalidation under Section 112. Block does not even try to distinguish *Mukherjee v. Chu*, 217 F. App'x 971, 973-75 (Fed. Cir. 2007), *LizardTech Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1339-40 (Fed. Cir.

2005), or *Turbocare Div. of Demag Delaval Turbomachinery Corp. v. Gen. Elec. Co.*, 264 F.3d 1111, 1120 (Fed. Cir. 2001). Block attempts to distinguish *Tronzo v. Biomet, Inc.*, 1561 F.3d 1154 (Fed. Cir. 1998), by asserting (at 18) that in that case, the Court's invalidation of artificial hip prosthesis claims covering the entire genus of cup shapes for lack of written description rested solely and dispositively on the fact that the specification expressly disclaimed certain other shapes in the prior art for the cup implant.

Block misrepresents the holding in *Tronzo*. There, "the district court recognized that 'the written description in the parent '589 does not attempt to identify other, equally functional shapes or talk in terms of a range of shapes….' The court concluded that 'the narrow language of the [parent] '589 application ***cannot be said to disclose expressly*** … ***the entire genus*** of cups….'" *Tronzo*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) (emphasis added). Thus, the issue on appeal was whether the district court had concluded properly that the jury's conclusion of validity was supportable because the parent specification had ***inherently*** disclosed the entire genus of cups so as to satisfy the written description requirement. *Id.*

The Federal Circuit held that there was no inherent disclosure of the entire genus of cup shapes, because the only evidence claimed as supporting inherent disclosure was expert testimony that the court found to be insufficient. *Id.* The court concluded that the "rationale of Tronzo's expert claimed to support inherency is not sufficient to support the generic claims" because his "testimony does not explain why a broader supporting disclosure is necessarily part of the [parent] '589 patent." *Id.* at 1159-60.

*Tronzo* turned on the fact that the only evidence claimed as supporting an inherent disclosure was expert testimony that the court found insufficient. *See id.* That the specification distinguished certain cup shapes in the prior art was simply an additional reason for the court's

conclusion that there was nothing in the parent specification "to suggest that shapes other than conical are necessarily a part of the disclosure." *Id.* at 1159.  Contrary to Block's suggestion, *Tronzo* turned on what was missing, rather than what was disclaimed, in the specification; the Federal Circuit's description of *Tronzo* in subsequent decisions makes this clear.  *See, e.g.*, *LizardTech*, 424 F.3d at 1345-46 ("The inadequacy of the specification in this case is similar to the failing identified in *Tronzo v. Biomet, Inc.*, 156 F.3d 1154 (Fed. Cir. 1998).… This court recognized that there was nothing in the patent's specification 'to suggest that shapes other than conical are necessarily a part of the disclosure.' *Tronzo*, 156 F.3d at 1159.  Therefore, the court held that the patent failed to provide the written description necessary to support the claims.  *Id.* at 1160.").

Thus, *Tronzo* is applicable and instructive.  Here, as Block concedes, there is no express disclosure of the entire genus of financial offerings in the parent '645 Patent.  Therefore, as in *Tronzo*, the issue here is whether there is inherent disclosure of the genus.  And as also in *Tronzo*, the only evidence claimed as supporting an inherent disclosure is expert testimony. *Tronzo* indicates that the declaratory statements of Block's expert, Dr. Kursh, are insufficient to demonstrate inherent disclosure or to create a genuine issue of disputed fact <u>because he has not explained why the entire genus of financial offerings is necessarily a part of the disclosure in the parent '645 Patent</u>.

Block cites four cases (at 14) to support its argument that disclosure of financial cards is sufficient to satisfy the written description requirement for the "financial offering" claims, but none is relevant.  Block misrepresents the facts and holding in *Cordis Corp. v. Medtronic AVE, Inc.*, 339 F.3d 1352 (Fed. Cir. 2003).  There, the claims in question were <u>not</u> broader in scope than the disclosure in the specification, as Block asserts (at 14).  Rather, the

specification labeled both "complete slots" and "half-slots" as "slots," and the court construed

the claim term "plurality of slots" to mean solely "multiple slots." *See Cordis*, 339 F.3d at 1364-

65. In other words, the court concluded that the claims did not limit the order or mixture of slots,

such that "plurality of slots" could be multiple complete slots, multiple half-slots, or a mixture of

both. *Id.* at 1365. Contrary to Block's assertion, *Cordis* did not involve genus claims and a

specification that just disclosed one species. *Cordis*, therefore, is inapposite.

    The remaining three cases on which Block relies did <u>not</u> involve any issue of

written description and, thus, are wholly irrelevant. Block's citation (at 14) of *Avidyne Corp. v.

L-3 Commc'n Avionics Sys. Inc.*, an unpublished decision from the District of Massachusetts, is

to dicta concerning claim construction. *See Avidyne Corp.*, 2008 WL 4849894 at *4 (D. Mass.

Nov. 7, 2008). *Honeywell Int'l v. Univ. Avionics Sys. Corp.*, 488 F.3d 982 (Fed. Cir. 2007),

concerned the on-sale bar and *In re Cruciferous Sprout Litigation*, 301 F.3d 1343 (Fed. Cir.

2002), concerned the importation of a limitation from the specification to limit the scope of a

claim during claim construction. In sum, Block has put forth no authority that actually supports

its contention that the parent '645 Patent inherently discloses financial offerings.

    **2. The Financial Card Claims Cannot Provide Their Own Support
Because They Were Not Part Of The Originally Filed Application.**

    Block concedes that the only references to financial offerings are in the later-

added financial offering claims themselves in the '617 Patent, but contends that those recitations

are sufficient to satisfy the written description requirement. *See* Opp. Br. at 17; *see also id.* at 4

(Counterstatement No. 88, which cites only to the financial offering claims themselves). Block's

argument fails for the simple reason that the financial offering claims were added in an

amendment to the continuation application.

The Federal Circuit has made clear that written description support for claims added in an amendment must be found in the application as originally filed, and that the amended claims themselves cannot be used to provide written description support. *See Purdue*, 230 F.3d at 1328-29; *see also* MPEP § 2163 ("[W]hen filing an amendment an applicant should show support in the original disclosure for new or amended claims…. To comply with the written description requirement of 35 U.S.C. § 112, para. 1… each claim limitation must be expressly, implicitly, or inherently supported in the originally filed disclosure…. If the originally filed disclosure does not provide support for each claim limitation… a new or amended claim must be rejected under 35 U.S.C. § 112, para. 1 as lacking adequate written description….").

Here, the applicant filed the continuation application on June 1, 1999. LendingTree Br. at 3 (Fact No. 5).[4] That application contained the same specification as in the parent '645 Patent, which did not include any reference to or support for "financial offering(s)," and claims that were directed to financial card offers only. *See id.* at 3 (Fact Nos. 5-6) and 4 (Fact Nos. 9-10). The applicant did not add the financial offering claims to the continuation application until February 8, 2002, in an amendment. *See id.* at 3 (Fact Nos. 5-6). Block does not dispute these facts. In order for the financial offering claims to satisfy the written description requirement, they must find support in the specification of the continuation application <u>as originally filed on June 1, 1999.</u> But because that specification is the same as in the parent '645 Patent, there is no support therein for the amended claims for the same reasons that those amended claims cannot claim priority back to the parent '645 Patent.

---

[4] For ease of reference, LendingTree herein will cite to its opening Suggestions in Support of LendingTree, LLC's Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. Section 112, ¶ 1 For Lack of Written Description as "LendingTree Br."

**B.** **If The Court Determines That The Financial Offering Claims Are Valid Under Section 112, ¶ 1, Their Effective Date Is February 8, 2002.**

Even if the Court were for some reason to conclude that the financial offering claims are valid under Section 112, Block cannot obtain the earlier priority date it seeks based on the parent '645 Patent. On the contrary, the alternative relief sought by LendingTree must be granted – that is, the effective date of the financial offering claims must be deemed the February 8, 2002 date on which they were added to the child application. *See* LendingTree Br. at 20 n.4.

At best for Block, the financial card claims can claim priority only to the date when they were first introduced – that is, the first date on which there is any disclosure of the purported "financial offering" invention. Where such "new matter" is introduced into the patent, the applicant cannot claim a priority date earlier than the date they were added. *See In re Curtis*, 354 F.3d 1347, 1351-53 (Fed. Cir. 2004) (deeming the filing date of the later application as the effective date of the new claims where the parent did not support the new claims); *Tronzo*, 156 F.3d at 1158-60 (same); *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1301, 1306-11 (Fed. Cir. 2008) (same); *see also Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004) (stating that "a patent cannot claim priority to earlier applications if it includes new matter not present in those earlier disclosures"). In its opposition papers, Block did not address the alternative relief that LendingTree has requested. In other words, Block does not disagree with the conclusion that if the financial offering claims cannot claim priority back to the '645 patent and are somehow found valid under Section 112, ¶ 1, then their correct priority date is February 8, 2002.

In his declaration (at ¶ 55), Block's expert Dr. Kursh opines that the specification of the <u>'617</u> Patent "covers financial offers as well as its subset, financial cards," but does <u>not</u> opine that the specification of the '645 Patent does the same. Given that the written description

of the two patents is the same, Dr. Kursh appears to be using the term "specification" to mean both the ***claims*** in the '617 Patent ***and*** the remaining part of the patent. Block does the same in its brief. *See* Opp. Br. at 4 (Counterstatement No. 88, which cites to the claims of the '617 itself as disclosing the term "financial offerings"). Block and its expert cannot (and do not) say the same about the '645 Patent, presumably because neither its claims nor its specification contains any support for financial offers.

### C. Block's Additional Rebuttal Points Fail To Raise A Dispute of Material Fact.

#### 1. Block's Accusation That LendingTree Is Trying to Renege On a Prior Stipulation And Reargue Claim Construction Has No Basis In Fact.

Unable to overcome either the lack of any disclosure of financial offerings or non-card financial products in the specification of the patents-in-suit or the binding law of the Claim Construction Orders, Block instead tries to create a diversion. Block argues (at 15-16) that LendingTree is now trying to renege on the parties' prior stipulation that the term "financial offerings" should be construed to mean "financial products" and is trying to reargue claim construction. Puzzlingly, Block accuses LendingTree of trying to reconstrue "financial offerings" so as to ***exclude*** financial cards <u>and</u> of simultaneously trying to ***limit*** the term "financial offerings" to a disclosed embodiment, namely financial cards. *Compare* Opp. Br. at 1 *with id.* at 15.[5] In reality, LendingTree is doing neither.

Indeed, the notion that LendingTree is seeking to reargue claim construction is exactly backwards. LendingTree wants to <u>enforce</u> the Claim Construction Orders. It is Block who is now advocating a position that is inconsistent with the law of the case, as the Court has

---

[5] For ease of reference, LendingTree herein will cite to Block's Suggestions in Support of Its Opposition to LendingTree's Motion for Partial Summary Judgment of Invalidity Under 35 U.S.C. § 112, ¶ 1 as "Opp. Br."

Case 4:01-cv-01007-ODS   Document 179   Filed 08/26/09   Page 27 of 34

already held that the term "financial cards" does not denote non-card financial products and the asserted patents do not disclose any type of financial product other than a financial card. *See* Section III.A.1., *supra*.

The notion that LendingTree is trying to reconstrue "financial offerings" so as to **exclude** financial cards is farfetched. There is no dispute that a financial card is a type of financial product. As explained above and in LendingTree's opening papers, that is not enough to satisfy the written requirement. Further, LendingTree is not trying to reconstrue "financial offerings" so as to limit the financial offering claims to an embodiment. Indeed, the crux of LendingTree's position is just the opposite – that financial cards are but one type of financial product that cannot and does not represent all financial products.

The written description requirement of Section 112, ¶ 1 imposes a distinct legal requirement separate and apart from the rules of claim construction. Block's financial offering claims are what they are (broad). They are not supported by any written description and, thus, are simply invalid. By arguing that LendingTree is trying to redefine the term "financial offerings," once again Block is trying to sidestep the real question, which is this: What does the term "financial cards" convey? That is, does it necessarily convey all types of financial offerings (such as home equity lines of credit, checks, mortgages, to name a few) or just financial cards? The Court has already decided this question, in response to Block's prior attempts to improperly broaden the reach of its claims. *See* 2/19/2009 Second Claim Construction Order at 4.

## 2. Dr. Kursh's Opinions Are Conclusory, Irrelevant, and/or Inconsistent With the Law of the Case.

The declaration of Block's expert, Steven R. Kursh, contributes little more than conclusory opinions that the specification of the '617 Patent covers financial offers and financial cards and that one of ordinary skill in the art would understand from reading the specification of

the patents-in-suit that the patents were directed to financial products generally. Conclusory opinions cannot create a genuine issue of material fact. *See Lockwood v. Am. Airlines Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997) ("Lockwood argues that the district court erred by looking solely at the applications themselves. We do not agree. It is the disclosures of the applications that count…. Therefore, the declaration by Lockwood's expert does not raise a genuine issue of material fact."); *Logan*, 416 F.3d at 882 ("'[C]onclusory affidavits, standing alone, cannot create a genuine issue of material fact, precluding summary judgment.'") (citations omitted); *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir. 1984) ("[C]onclusive assertions of ultimate fact are entitled to little weight."). Dr. Kursh's declaration also is improper and insufficient for the additional reasons set forth in Section II., *supra*.

Several of Dr. Kursh's opinions are simply irrelevant to this motion. Dr. Kursh opines (at ¶ 58) that "[a] person of ordinary skill in the art would be able to make and use the method in the '617 and '645 Patents without undue experimentation" and (at ¶ 60) that financial offerings "existed" before the filing date of the parent '645 Patent. In so opining, Dr. Kursh confuses written description with enablement (*i.e.*, that one skilled in the art must be enabled to make and use the invention claimed), which under the current law is an entirely separate legal requirement not at issue on this motion.[6] *See Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358

---

[6] On August 21, 2009, the Federal Circuit granted the patent holder's petition to rehear *en banc* the appeal in *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 560 F.3d 1366, 1376 n.3 (Fed. Cir. 2009) (*reh'g granted, judgment vacated by Ariad Pharms., Inc. v. Eli Lilly & Co.*, No. 2008-1248, 2009 WL 2573004 (Fed. Cir. (Mass.) Aug. 21, 2009)). The court requested that the parties file new briefs addressing the following questions: (a) whether 35 U.S.C. Section 112, paragraph 1, contains a written description requirement separate from an enablement requirement (which is the present law) and (b) if a separate written description requirements set forth in the statute, what is the scope and purpose of the requirement. Oral argument will be held at a time and date to be announced later.

F.3d 916, 921-22 (Fed. Cir. 2004) (explaining that 35 U.S.C. § 112, ¶ 1 has three separate requirements and that "an invention may be enabled even though it has not been described").

Dr. Kursh also puts forth several opinions that are inconsistent with the law of the case. He opines (at ¶¶ 53, 54, 56) that the reference to "debit card" in the Abstract and the reference to "debit cards" in one line in the specification ('645 Patent at 1:16) convey to one of ordinary skill in the art that the invention "was directed to financial products in general." Block suggests that this creates a general issue of material fact that would preclude the granting of partial summary judgment on this motion. *See* Opp. Br. at 17. Not so. In both places in the patent, the phrase "debit card(s)" is recited so as to exemplify a type of financial card. *See* '645 Patent, Abstract ("A system is disclosed for presenting financial card (e.g., credit card, debit card) offers.…"); *id.* at 1:16-17 ("Financial institutions interested in locating new customers for their financial cards (such as credit cards, debit cards, etc.) often rely on direct mailings." As explained above, the Court has already held that the term "financial card" does not encompass non-card financial products. Thus, any argument or opinion that a debit card (which is nothing more than a type of financial card, as the patents make clear) denotes non-card financial products runs afoul of the law of the case and, for that reason, should be rejected.

### 3. The Inventor Deposition Testimony Does Not Create a Genuine Dispute of Material Fact.

Block contends (at 19) that certain deposition testimony from the inventor of the asserted patents, Gordon Cotter Cunningham, creates genuine issues of disputed fact material to this motion and demonstrate that Mr. Cunningham had in fact been in possession of the full scope of his financial offering claims at the time of the filing date of the parent application.

In making this argument, Block misconstrues the test for satisfying the written description requirement. The critical issue is <u>not</u> whether the inventor actually possessed the

26

invention of the full scope of the claims in his private thoughts (or verbally shared the idea with a few others prior to the filing of the patent application), but whether what was possessed is sufficiently set forth in the written description of the patents.  As the Federal Circuit has explained:

> Application of the written description requirement, however, is not subsumed by the "possession" inquiry. A showing of "possession" is ancillary to the *statutory* mandate that "[t]he specification shall contain a written description of the invention," <u>and that requirement is not met if, despite a showing of possession, the specification does not adequately describe the claimed invention</u>. After all, as indicated above, one can show possession of an invention by means of an affidavit or declaration during prosecution, as one does in an interference or when one files an affidavit under 37 C.F.R. § 1.131 to antedate a reference. However, <u>such a showing of possession alone does not cure the lack of a written description in the specification, as required by statute.</u>

*Enzo Biochem*, 323 F.3d at 969 (emphasis added; italics emphasis in original).

At best, Mr. Cunningham's deposition testimony shows that he had been in possession of an invention used to locate financial offerings generally.  But Mr. Cunningham's deposition testimony sheds no light on whether the patents actually and clearly convey that Mr. Cunningham necessarily possessed the full scope of that invention, which is what counts. Notably, Mr. Cunningham never testified that he had actually disclosed an invention used to locate financial offerings generally in the '645 Patent (or in the '617 Patent, for that matter); furthermore, even if he had so testified, it likely would have little weight.  *N. Amer. Vaccine*, 7 F.3d at 1577 (stating that "after-the-fact [inventor] testimony is of little weight compared to the clear import of the patent disclosure itself"); *see also Lockwood*, 107 F.3d at 1571-72.

## IV.    Conclusion

For the foregoing reasons and the reasons set forth in LendingTree's opening suggestions, the Court should grant LendingTree's motion for partial summary judgment of

27

invalidity under 35 U.S.C. § 112, ¶ 1, conclude that the financial offering claims 11, 13-17, 19, and 21-25 of the '617 Patent cannot claim priority back to the '645 Patent, and either conclude that those claims are invalid under 35 U.S.C. § 112, ¶ 1 for lack of written description or, in the alternative, deem their effective date to be the February 8, 2002 date on which they were added to the child application.

Respectfully submitted,

Dated:  August 26, 2009

/s/  Robert D. Fram

Robert D. Fram (Admitted Pro Hac Vice)
Winslow B. Taub (Admitted Pro Hac Vice)
Deanna L. Kwong (Admitted Pro Hac Vice)
**COVINGTON & BURLING LLP**
One Front Street, Floor 35
San Francisco, CA 94111
Tel: (415) 591-6000 / Fax: (415) 591-6091
rfram@cov.com
wtaub@cov.com
dkwong@cov.com

Edward H. Rippey (Missouri Bar No. 46889)
**COVINGTON & BURLING LLP**
1201 Pennsylvania Avenue NW
Washington, DC 20004-2401
Tel: (202) 662-5171
Fax: (202) 778-5151
erippey@cov.com

Edward R. Spalty (Missouri Bar No. 26086)
David A. Jermann (Missouri Bar No. 51389)
**ARMSTRONG TEASDALE LLP**
2345 Grand Boulevard, Suite 2000
Kansas City, Missouri 64108-2617
Tel: (800) 243-5070 / Fax: (816) 329-5426
espalty@armstrongteasdale.com
djermann@armstrongteasdale.com

ATTORNEYS FOR LENDINGTREE, LLC

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of LENDINGTREE, LLC'S REPLY SUGGESTIONS IN SUPPORT OF LENDINGTREE, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. SECTION 112, ¶ 1 was electronically filed with the Clerk of Court on this 26th day of August, 2009 using the CM/ECF system, which sent notification of such filing to the following:

Jeffrey S. Standley
F. Michael Speed, Jr.
Mark R. Engle
STANDLEY LAW GROUP LLP
6300 Riverside Drive
Dublin, OH  43017
Tel.:  614-792-5555
Fax:  614-792-5536
jstandley@standleyllp.com
mspeed@standleyllp.com
mengle@standleyllp.com


Mark W. Brennan
BRYAN CAVE LLP
3500 One Kansas City Place
1200 Main Street, Suite 3500
Kansas City, MO  64015-2100
Tel.:  816-374-3200
Fax:  816-374-3300
mwbrennan@bryancave.com

Gary M. Hoffman (Admitted *Pro Hac Vice*)
Kenneth W. Brothers (Admitted *Pro Hac Vice*)
Kimberly R. Parke (Admitted *Pro Hac Vice*)
Thomas D. Anderson (Admitted *Pro Hac Vice*)
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
Tel.: 202-420-2200
Fax: 202-420-2201
HoffmanG@dicksteinshapiro.com

BrothersK@dicksteinshapiro.com
ParkeK@dicksteinshapiro.com
AndersonT@dicksteinshapiro.com
ATTORNEYS FOR BLOCK FINANCIAL LLC


                                        /s/  Robert D. Fram

                                 ATTORNEY FOR LENDINGTREE, LLC