IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| BLOCK FINANCIAL CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 01-1007-CV-W-3-ODS |
| | ) | |
| LENDINGTREE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| LENDINGTREE, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 08-0164-CV-W-ODS |
| | ) | |
| BLOCK FINANCIAL CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND OPINION GRANTING LENDINGTREE LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pending is a motion for summary judgment filed by LendingTree LLC ("LT"), alleging portions of a patent owned by Block Financial Corp. ("Block") are invalid or, alternatively, are entitled to a later priority date. The motion (Doc. # 160) is granted.

### I. BACKGROUND

Two patents are at issue in this case: Patent No. 6,014,645 entitled "Real-Time Financial Card Application System" ("the '645 Patent) and Patent No. 7,310,617 entitled "Real-Time Financial Card Offer and Application System" ("the '617 Patent"). While only the '617 Patent is addressed by LT's motion, an understanding of the history of both patents is instructive.

The application for the '645 Patent was filed in April 1996 and originally consisted of 27 claims. The Patent and Trademark Office ("PTO") rejected all 27 claims because

it regarded a financial card as "an abstract concept" and "merely a representation of the abstraction and therefore merely a model." In insisting "that the distribution, review, and acceptance or rejection of financial card offers is a real world activity," Plaintiff discussed current practices in the credit card industry and noted "[i]t is very difficult for credit card companies to determine if their marketing efforts are effective and whether they are soliciting appropriate candidates." Amendment to Patent Application filed February 2, 1999. The '645 Patent, now consisting of 33 claims, was issued in January 2000.

Meanwhile, in June 1999 – after the PTO initially rejected the '645 Patent but before it acted on Block's Amendment to Patent Application – Block filed a continuing application. The materials supporting the continuing application – like those submitted in connection with the parent application – spoke extensively about the credit card industry. The continuing application consisted of nine claims, all of which reiterated, reinforced, and restated the parent application (the application for the '645 Patent). In February 2002 – approximately five months after this lawsuit was commenced – the continuing application was amended, *inter alia*, to add claims 10 through 25. These new claims – for the first time in the history of the prosecution of either patent – utilized the phrase "financial offering" instead of "financial card offering." The continuing application led to the '617 Patent, which was issued in December 2007.

Block initiated this lawsuit in September 2001. In June 2002, LT asked the PTO to re-examine the '645 Patent. In November 2006, the PTO republished the '645 Patent with certain amendments: Claims 1-10 were cancelled, Claims 11-22, 26-31, and 33 were allowed, Claims 23-25 and 32 were allowed as amended, and new Claims 34 and 35 were allowed.

## II. DISCUSSION

LT contends independent claims 11 and 19 and dependent claims 13-17 and 21-25 of the '617 Patent are invalid or, alternatively, are entitled to a later effective date.

2

LT contends these claims were added by amendment in violation of the "new matter" prohibition. The Court agrees.

### A. Validity

LT's arguments rest on the intersection of two statutes. "A patent shall be presumed valid." 35 U.S.C. § 282. However, "[n]o amendment shall introduce new matter into the disclosure of the invention." 35 U.S.C. § 132(a). "[I]n the context of a validity challenge based on new matter, the fact that the [PTO] has allowed an amendment without objection is entitled to [an] especially weighty presumption of correctness in a subsequent validity challenge based on the alleged introduction of new matter." Commonwealth Scientific and Indus. Research Organisation v. Buffalo Tech. (USA), Inc., 542 F.3d 1363, 1381 (Fed. Cir. 2008) (quotation omitted). Whether an amendment's additions constitute "new matter" is a factual inquiry, and LT must present clear and convincing evidence demonstrating that the claims at issue injected new matter. Id. at 1380; Brooktree Corp. v. Advanced Micro Devices, Inc., 977 F.2d 1555, 1574 (Fed. Cir. 1992). The presumption of validity, the need to present clear and convincing evidence, and the normal burdens associated with a summary judgment motion make LT's road rather difficult, but the Court concludes it has made the requisite showing.

> The fundamental inquiry [under § 132] is whether the material added by amendment was inherently contained in the original application. . . . [T]he new matter prohibition is closely related to the adequate disclosure requirements of 35 U.S.C. § 112. Section 112, in turn, requires: "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art . . . to make and use the same. Thus, to avoid the new matter prohibition, an applicant must show that its original application supports the amended matter.

Schering Corp. v. Amgen Inc., 222 F.3d 1347, 1352 (Fed. Cir. 2000) (quotations and citations omitted).

3

The inquiries under sections 132 and 112 are virtually the same and usually turn on a single question: whether the amendment broadened the initial disclosure. Buffalo Tech., 542 F.3d at 1379.[1] An amendment "is not inherent to the original specification for the purposes of § 132 and § 112 if that amendment would broaden the scope of the invention beyond that which is supported in the initial disclosure." In re Lew, 257 Fed. Appx. 281, 285 (Fed. Cir. 2007); see also Schering Corp., 222 F.3d at 1352 ("The written description clarifies that Dr. Weissmann made no attempt to broaden his invention . . . ."); Stearn v. Superior Distributing Co., 674 F.2d 539, 544 (6th Cir. 1982) ("New matter is matter involving a departure from or in addition to the original disclosure.").

In applying these principles to the '617 Patent, the Court begins by acknowledging a recurring theme in this litigation: despite employing the term "financial card" and other phrases incorporating that term, Block has consistently argued the scope of its patents – and the scope of those phrases – is not limited to circumstances in which a "financial card" is involved. Just as consistently, the Court has construed the claims in a manner holding that Block's patents do not extend to the entire universe of financial transactions or even to the entire universe of loans. These holdings have been supported by a variety of considerations, including Block's heavy reliance on practices in the credit card industry as part of its efforts to reverse the PTO's initial rejection. In its Second Claim Construction Order, the Court noted

> the term "financial card" has acquired a meaning in the prior art involving the credit card industry, including (1) patents that depended on the ability to transmit or receive information from the card's magnetic strip and (2) multiple references to the credit card industry and how that industry works. Elsewhere, the Court (1) explained the PTO understood the term "loan" to be broader than the term "financial card" and (2) noted Block was required to narrow the '645 Patent to convince the PTO that it was not already

---

[1]One commentator has described the interplay between sections 112 and 132 as follows: "During prosecution of an application, claims amended with limitations that are unsupported by the original disclosure are rejected under § 112 as lacking support, while unsupported amendments to the abstract, drawing, or specification are objected to as new matter under § 132." Harmon, Patents and the Federal Circuit § 5.4(f) (2007).

4

embraced by a prior patent covering a broader universe of loan applications (the DeFranscisco Patent).

Analysis of the issue at hand requires comparing the original application for the '617 Patent with the later-filed amendment to that application. The application for the '617 Patent focuses extensively on the credit card industry and, as noted, is replete with references to "financial cards." The Description of Related Art focuses on the industry's practice of mailing credit card applications to prospective consumers and the many ways in which this practice is undesirable. The Summary of Invention declares "[t]he present invention recognizes the limitations of using direct mailings for matching financial institutions and their card offerings with new customers. The present invention . . . allows users to peruse and accept financial card offers from financial institutions interested in locating new customers who meet specific selection criteria." The broader universe of loans or other financial relationships is not described, discussed, or mentioned.

The claims added by the amendment constituted the first time "financial offers" (or derivatives of that phrase) were mentioned. In construing the phrase "financial offering data," the Second Claim Construction Order notes the parties agreed that a "financial offering" means a "financial product." Applying the ordinary meaning of these terms, one cannot help but conclude that credit cards (and other financial cards) are a subset of the larger universe of "financial products." Moreover, the addition of claims describing "financial offers" broadened the reach of the application beyond its original scope and were thus impermissible under section 132. Indeed, Block has argued that "[i]t is undisputed that 'financial cards' are an example of 'financial products.' Financial cards are a subset of financial products." Block's Suggestions in Opposition at 10.

A comparison to other cases decided by the Federal Circuit confirms the Court's preliminary conclusion. In <u>Tronzo v. Biomet, Inc.</u>, the patent in question related to artificial hip sockets of a particular shape and configuration. More specifically, the patent disclosed a conical shaped cup "and nothing broader." 156 F.3d 1154, 1159 (Fed. Cir. 1998). The patent did not identify or discuss other equally functional shapes, and nothing in the specifications suggested "that shapes other than conical are

5

necessarily a part of the disclosure." Id. Consequently, a specification including other shapes were not inherent in the initial application.[2] In Lizardtech, Inc. v. Earh Resource Mapping, Inc., the patent described "only a single way of creating" a necessary list of data, and there was "no evidence that the specification contemplates" other ways for creating the list. 424 F.3d 1336, 1344 (Fed. Cir. 2005). The Federal Circuit ultimately held that the description of the single method did not entitle the inventor "to claim any and all means for achieving that objective." Id. at 1346. These cases are specific examples of the rule described earlier: the amendment cannot increase the breadth of the application.[3]

Block emphasizes the factual nature of the inquiry and contends there is evidence that would permit a jury to conclude the amendment did not inject new matter. Block points to the declaration of its expert, Dr. Steven Kursh. The Kursh Declaration does not create a factual dispute; if anything, it supports the Court's determination that the amendment added new matter. Dr. Kursh declares that "[o]ne of ordinary skill in the art would understand that a financial card is a type of financial product because financial cards are a subset of financial products." Kursh Declaration ¶ 61. He also avers that one skilled in the art would understand the entirety "of the '617 Patent covers financial offers as well as its subset, financial cards." Kursh Declaration ¶ 55. Thus, Dr. Kursh confirms that the amendment to the application expanded the scope of the application beyond financial cards, which is not allowed.

---

[2]Tronzo, and other cases cited herein, discussed whether a later specification was "new matter" for purposes of determining whether a continuing application was entitled to the filing date of its parent. The discussion of what is and is not "new matter" is the same in both contexts, so the cases are useful for the present discussion. E.g., Moba, B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1319 (Fed. Cir.), cert. denied, 540 U.S. 982 (2003); Kolmes v. World Fibers Corp., 107 F.3d 1534, 1539 (Fed. Cir. 1997).

[3]In opposition, Block argues these cases are not germane. The Court will not detail Block's arguments beyond declaring them unpersuasive; the Court concludes these cases address the issue at hand.

6

Block relies heavily on Dr. Kursh's statements to the effect that debit cards (a type of financial card) can be tied to a variety of financial vehicles such as checking accounts, home equity loans, and savings accounts. From this, Dr. Kursh avers that any reference to a financial card offer would automatically have been understood as being accompanied by some other financial product or offer. This may be, but the declaration misses the point. The patent's specifications of "financial card offer" may or may not include some other financial relationship, but even if it does the specification cannot support a claim for an offer to enter a financial relationship separate and apart from an offer for a financial card. For instance: an offer to open a checking account would constitute a "financial offering" as described in Claim 11. However, that offer – alone – is not a financial card offer.[4] The financial offer (the offer to open a checking account) may or may not include a financial card offer – but even if it does not the offer still qualifies as a financial offer. Thus, Claim 11 encompasses transactions and offers that do not constitute financial card offers – so it is broader than the claims originally contained in the application.[5]

Block also relies on the inventor's deposition testimony. The Court has examined the excerpts provided, but they are not helpful. For instance, on page 126 the inventor testified he "pitched it to the C.E.O. of Countrywide Mortgage," but there is no clear indication as to what "it" was. "It" may have been the idea that eventually became the

---

[4]The heart of Block's infringement claims presents a question the Court need not answer: whether a person who seeks a home equity loan and is presented with an offer for such a loan that includes a financial card as a means of accessing the loan has been presented with a "financial card offer" or can be described as a "financial card applicant." It would seem, however, that categorizing such a person as a "financial card applicant" is inappropriate given that the person was not seeking a financial card, but the Court saves this question for another day.

[5]Stated more bluntly, Block's argument is: financial card offers are related to financial offers, so the phrase "financial card offer" includes all "financial offers" regardless of whether a financial card is involved. This is faulty logic that is not supported by Dr. Kursh – and if it were, it would be contrary to the Court's legal rulings construing the patents' claims.

7

'645 patent, or "it" may have been an idea that was different and tailored to mortgages[6] – the Court does not know.[7] Elsewhere, the inventor testified that he thought the system could be developed for other financial offers. When asked whether he had "figured out all the details of how to make this work" for mortgages when he filed the original application, the inventor testified "I think you could have done it." Cunningham Dep. at 114. He did not testify that he had done it.

In any event, the inventor's testimony is of little value. Even if the inventor had prepared a completely detailed description of a process applicable to mortgage companies, or if the inventor fully believed his invention encompasses such a process, the critical inquiry remains: what does the patent actually say? E.g., Enzo Biochem, Inc. v. Gen-Probe Inc., 323 F.3d 956, 969-70 (Fed. Cir. 2002). Testimony from the inventor about what he intended or what he thought a term meant or encompassed "is of little weight compared to the clear import of the patent disclosure itself." North American Vaccine, Inc. v. American Cyanamid Co., 7 F.3d 1571, 1577 (Fed. Cir. 1993). cert. denied, 511 U.S. 1069 (1994).

The February 2002 amendment added new matter to the pending application, which is prohibited by section 132. As those claims are not supported by the original application, they must be declared invalid. E.g., University of Rochester v. G.D. Searle & Co., 375 F.3d 1303, 1305-06 (Fed. Cir.), cert. denied, 543 U.S. 1015 (2004). Accordingly, the Court declares independent claims 11 and 19 and dependent claims 13-17 and 21-25 of the '617 Patent to be invalid.

## B. Priority Date

---

[6]Block represents that this conversation occurred in 1996 or 1997; as stated, the application for the '645 patent was filed in April 1996.

[7]The Court cannot glean a better understanding from the surrounding discussion because only excerpts have been provided.

8

LT alternatively contends that if the aforementioned claims are valid, they are entitled to a priority date of February 8, 2002 – the date the application was amended – and not the date upon which the '645 Patent was approved. Ordinarily, a valid continuing application is entitled to the effective date of the parent application. 35 U.S.C. § 120. However, one of the requirements of a valid continuing application is that the original application "provides an adequate written description of the later-filed claims under 35 U.S.C. § 112, ¶ 1." In re Curtis, 354 F.3d 1347, 1351 (Fed. Cir. 2004) (citing Tronzo, 156 F.3d at 1158). "Thus, this benefit only applies to claims that recite subject matter adequately described in an earlier application, and does not extend to claims with subject matter outside the description in the earlier application. In other words, a claim complies with 35 U.S.C. § 120 and acquires an earlier filing date if, and only if, it could have been added to an earlier application without introducing new matter." Studiengesellschaft Kohle, M.B.H. v. Shell Oil Co., 112 F.3d 1561, 1564 (Fed. Cir.), cert. denied, 522 U.S. 996 (1997). Therefore, the '617 Patent's application's amendments are entitled to the '645 Patent's filing date only if they do not contain new matter that was not contained in the application for the '645 Patent.

The '645 Patent and the original application for the '617 Patent are very similar, so the Court's analysis from the preceding section is equally applicable in this context.[8] The '645 Patent (and its application) is devoted to discussions of the financial card industry and is replete with references to "financial cards" and other terms incorporating that phrase. The phrase "financial offer" (and other terms incorporating this phrase) are not present in the '645 Patent. As stated earlier, not all financial offers are financial card offers, so the amended portion of the '617 Patent includes matter that is not contained in the '645 Patent. The amended portion of the '617 Patent is not entitled to the filing date of the '645 Patent, and is entitled (assuming it is valid) to the filing date of February 8, 2002.

---

[8]"Entitlement to priority under § 120 is a matter of law, and receives plenary review on appeal." In re Daniels, 144 F.3d 1452, 1455 (Fed. Cir. 1998).

9

## III. CONCLUSION

For these reasons, LT's motion is granted. Independent claims 11 and 19 and dependent claims 13-17 and 21-25 of the '617 Patent are invalidated. Alternatively, even if they are valid, these claims are not entitled to the filing date of the parent application for priority purposes and are entitled only to their filing date of February 8, 2002.

IT IS SO ORDERED.

DATE: September 10, 2009

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT