IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BLOCK FINANCIAL CORPORATION, ) ) Plaintiff, ) ) vs. ) ) LENDINGTREE, INCORPORATED, ) ) Defendant. ) | Case No. 01-1007-CV-W-ODS (Consolidated with Case No. 08-0164-CV-W-ODS) |

## ORDER AND OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON PATENT NUMBER 5,774,883

Pending is a motion for summary judgment filed by LendingTree LLC ("LT"), alleging portions of a patent owned by Block Financial Corp. ("Block") are invalid based on Patent Number 5,774,883 ("the Anderson Patent" or "Anderson"). LT alternatively asks for a ruling that, based on Block's anticipated responses, its patent does not infringe on Block's. The motion (Doc. # 199) is denied on the merits.

## I. BACKGROUND

Two patents are at issue in this case: Patent No. 6,014,645 entitled "Real-Time Financial Card Application System" ("the '645 Patent) and Patent No. 7,310,617 entitled "Real-Time Financial Card Offer and Application System" ("the '617 Patent"). Only the '617 Patent is addressed by LT's motion.

On September 10, 2009, the Court issued an Order invalidating independent claims 11 and 19 and dependent claims 13-17 and 21-25 of the '617 Patent. Alternatively, the Court held that if these claims were valid they were entitled to a priority date of February 8, 2002 (the date they were filed). In the instant motion, LT contends independent claims 11 and 19 and dependent claims 13-16 and 21-24 are also invalid because they were anticipated by the Anderson Patent.

The Anderson Patent's application was filed on April 19, 1996, and the patent was issued on December 18, 2007. Thus, the Anderson Patent's priority date predates the '617 Patent's priority date even if the Court's September 10 Order is incorrect.

The Anderson Patent is entitled "Method for Selecting a Seller's Most Profitable Financing Program." The Abstract explains that "[t]he system may be used by a vehicle dealership to evaluate a customer's credit risk, budgetary factors, and profitability of the sale during negotiations for sale a vehicle, thereby facilitating the sale from both the customer's and dealership's point of view by properly structuring the transaction." The Abstract continues by explaining that the invention "enables the dealer to pool front-end and back-end profit items to maximize profits." The Background of the Invention describes the invention's uniqueness based on its ability to "address the problem of maximizing profits on every sale while eliminating the frequent guesswork and human error in structuring the financing of sales at a dealer level. In particular, it is desired to have the ability to guarantee approval for deals made within a lender's guidelines and to have guideline interpretation capabilities that work for the dealer's benefit." The first paragraph of the Summary of the Invention describes the invention as

> a transaction management system designed specifically for the Desk Manager, alternatively the sales manager, and the F&I Manager to sell more cars, generate the greatest possible profit on each sale and guarantee purchase by a lending institution. The system is pre-programmed with various lender guidelines and rates, and based upon the borrowers [sic] credit profile, automatically selects the "best fit" or most profitable finance program available to the dealership from a master list of finance programs. The system retrieves credit bureau reports and also allows the dealer to access merged credit bureau reports (i.e., reports from two or more credit bureaus) according to the requirements of the pre-programmed lenders. This feature speeds up time spent interpreting credit bureau reports by reducing the time spent analyzing customer credit, and reduces human errors or oversights which happen during busy times at a dealership. The ability to automatically select the "best fit" finance program at anytime the dealership is open, including accurate interpretation of credit reports, leads to quick progression of the deal and delivery of the product.

Further review of the Anderson Patent confirms that the system described therein is a system to be used by the auto dealer to (1) ascertain the customer's eligibility for loans, (2) assess the profit to the seller, given all the particulars of the transaction, and (3) list (as dictated by Claim 5) the possible financing options in order of their profitability to the dealer. The invention is not used by the customer to find optimal financing from his or her point of view, nor is the invention used by the customer to identify options.

## II. DISCUSSION

### A.

Block argues the Court should not decide the instant motion and requests an award of fees to compensate it for responding to what it views as an unnecessary motion. The Court disagrees, and concludes it should address the motion's merits and that Block is not entitled to an award of fees.

Block suggests the motion is moot because the Court has already invalidated the claims at issue. However, the Court has not issued a final judgment in this case and its jurisdiction is intact. Moreover, the interest of judicial economy favors resolving as many legal issues as possible before rendering a final judgment. Block's protestations to the contrary,[1] it retains the ability to appeal the Court's September 10 Order. If it does so and the Federal Circuit reverses that decision, the case will come back and the undersigned will have to address the issues in LT's pending motion. That decision will then be subject to another appeal. Deciding both motions now will allow more issues to be resolved in a single appellate proceeding, thereby promoting judicial efficiency and

---

[1]Block suggests it has "withdrawn" the charge based on the '617 Patent, but the Court does not know what this means. Block has not surrendered its right to appeal, settled the matter, or confessed judgment. Indeed, Block's purported withdrawal clearly states that if the Court's order is reversed or vacated it intends to re-assert its claims based on the '617 Patent. Thus, there is a controversy between the parties, and the matter is not moot.

expediting the ultimate resolution of this case.  Moreover, the Court is currently enmeshed in the case, and it is more efficient and expedient to deal with all issues now.

The Court certainly has the discretion to decide not to address the current motion.  However, the Court also has the discretion to do so – and the Court elects to address the issues now.

## B.

"A patent shall be presumed valid."  35 U.S.C. § 282.  Thus, in analyzing the alleged infirmities under section 102, the Court must be mindful that the Patent and Trademark Office ("PTO") issued the '617 Patent.  However, a patent cannot be issued to anyone other than the first inventor.  Therefore, a patent is invalid if "the invention was . . . patented or described in a printed publication" or if it was described in a previously filed patent application.  Id. §§ 102(a), 102(e).  To demonstrate invalidity, LT "must show that the four corners of" the Anderson Patent "describe every element of" the contested claims.  Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1369 (Fed. Cir. 2008) (quotations omitted).  In addition, the prior publication or invention must disclose all of those elements arranged or combined in the same way as they are arranged or combined in the '617 Patent.  Id. at 1369-70.

LT overstates the similarities between the two inventions.  The '617 Patent is a system designed for use by a consumer seeking a financial card: it allows the consumer to input information (including particular features desired by the consumer), confirms financial data by examining the customer's credit report, compares all of the information to offers made by financial institutions, and shows the consumer the offers for which he or she is eligible.  The Anderson Patent is not used by the consumer: it is used by the seller of a product (here, automobiles) to maximize the dealer's overall profit and to insure the dealer does not provide the customer with financing for which he or she is not qualified.  LT stresses snippets in the Anderson Patent suggesting benefits to the consumer, but the benefit to the consumer is expressed in terms of timely and efficient financing, not in providing the consumer the ability to input data and make decisions

4

based on what is best for the consumer.  LT's argument obscures the true purpose of the invention: to maximize the dealer's profit on financing packages, not to provide easy access to financing.  The dealer considers the data in negotiations, armed with knowledge as to how the profit will be impacted.  The customer is not presented with a slate of options to chose from.  If an option provides the dealer with insufficient profit (or no profit at all), the dealer may opt not to disclose that option to the consumer – and the consumer is blissfully unaware of the lost opportunity.  The final paragraph of the Summary of the Invention summarizes the point, explaining that Anderson provides

> the desk manager tools to structure the deal under dealer and lender guidelines and at the same time calculate the dealer's true profit . . . so that it can be quickly determined if a deal is possible.  This will allow a loan to be structured as lender approved and dealer profitable before the deal proceeds into the finance department.  Thus, if the lender's guidelines are known by such a system, the desk manager knows how to get the customer's loan structured so that it will be approved. . . . Once the information has been verified, the dealer knows that the customer will be financed and that the vehicle can be delivered to the customer.  As an added benefit, a customer cannot purchase a vehicle more expensive than he or she can afford, and may obtain delivery of the vehicle at any time the dealership is open, including evenings and weekends when most lending institutions are closed.

This underscores the flaw in LT's analysis.  The options are presented to the car dealer, *not* – as is the case with the '617 patent – to the person seeking financing.  The Court concludes Claim 11 of the '617 Patent is not anticipated by Anderson because Anderson does not "present to said applicant for review at said applicant's computer at least one financial offering located for said applicant . . . ."  Similarly, Claim 19 was not anticipated because Anderson does not "present[ ] to said applicant at said computer for review selected financial offerings."[2]

These conclusions, alone, are enough to reject LT's argument.  Nonetheless, the Court points out an additional way in which Anderson does not anticipate the '617

---

[2]In addition, Anderson does not anticipate a system that allows the applicant to input data; Anderson calls for the system to be used by the dealer, and the dealer submits the information relayed by the applicant.

5

Patent: Anderson does not anticipate the use of a public network as called for in Claim 11. The term is not specifically defined in the '617 Patent, but the Detailed Description of the Preferred Embodiment(s) makes clear that applicants access the system through the world wide web and that they access the application process just as freely as they access any other website. In contrast, Anderson contemplates a network consisting of computers connected only to each other (through modems or e-mail systems) with access to the network limited to those with passwords. The "largest" network contemplated is a wide area network (WAN) connecting the dealer(s) to the financial institution(s) so that completed loan packages may be uploaded for processing. Members of the public may not freely access the network of computers comprising the system.

    LT argues that Anderson uses a public network because the WAN, modem, local area network, or other connections contemplated involved the use of the phone lines, and phone lines constitute a public network. This ignores the true issue, which is how the various computers are connected. The focus should be on how the data flows and is accessed, not on the wires that connect the computers to each other. While the computers in the Anderson Patent are connected via phone lines, that network of computers is not accessible by the public. In contrast, the network of computers comprising the system in the '617 Patent is accessible by the public, and the network in that patent is not anticipated by Anderson.

    This does not mean, however, that LT does not use a public network as described in the '617 Patent. While LT requires users to have passwords, those passwords are freely bestowed to anyone who accesses LT's site via the worldwide web. This limits customers to viewing only their own data, but it does not limit customers' access to the system in the same way access to the system described in Anderson is limited.

<u>C.</u>

For the reasons stated, the Court concludes independent claims 11 and 19 were not anticipated by the Anderson Patent. Necessarily, the dependent claims were also not anticipated. LT's motion is denied.

IT IS SO ORDERED.

                                                         /s/ <u>Ortrie D. Smith</u>
                                                         ORTRIE D. SMITH, JUDGE
DATE: January 6, 2010                          UNITED STATES DISTRICT COURT